1   BONNETT FAIRBOURN FRIEDMAN
      & BALINT, P.C.
2   ANDREW S. FRIEDMAN (AZ005425)
    KEVIN HANGER (AZ027346)
3   2901 N. Central Avenue, Suite 1000
    Phoenix, AZ  85012
4   Telephone:  602/274-1100
    602/274-1199 (fax)
5   afriedman@bffb.com
    khanger@bffb.com
6
    [Proposed] Liaison Counsel for Plaintiff
7
    ROBBINS GELLER RUDMAN
8     & DOWD LLP
    MICHAEL J. DOWD
9   MARK SOLOMON
    DANIEL S. DROSMAN
10  JASON A. FORGE
    DANIELLE S. MYERS
11  655 West Broadway, Suite 1900
    San Diego, CA  92101
12  Telephone:  619/231-1058
    619/231-7423 (fax)
13  miked@rgrdlaw.com
    marks@rgrdlaw.com
14  dand@rgrdlaw.com
    jforge@rgrdlaw.com
15  dmyers@rgrdlaw.com

16  [Proposed] Lead Counsel for Plaintiff

17              UNITED STATES DISTRICT COURT

18                 DISTRICT OF ARIZONA

19  MARK SMILOVITS, Individually and on  )   No. 2:12-cv-00555-DGC
    Behalf of All Others Similarly Situated,  )
20                                        )   CLASS ACTION
                                Plaintiff, )
21                                        )   MINEWORKERS' PENSION SCHEME
         vs.                              )   AND BRITISH COAL STAFF
22                                        )   SUPERANNUATION SCHEME'S
    FIRST SOLAR, INC., et al.,            )   REPLY MEMORANDUM OF LAW IN
23                                        )   FURTHER SUPPORT OF THEIR
                              Defendants. )   MOTION FOR APPOINTMENT AS
24  _____ )   LEAD PLAINTIFF AND FOR
                                              APPROVAL OF LEAD PLAINTIFF'S
25                                            SELECTION OF LEAD COUNSEL

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION.................................................................................. 1

II.    ARGUMENT .................................................................................. 1

    A.    The Pension Schemes Have the Largest Financial Interest .......................... 1

         1.    As an Organic Pair of Related Funds, the Pension Schemes Are the Paradigmatic "Group" Under the PSLRA ........................... 4

         2.    The PSLRA Expressly Requires Courts to Consider a Proper Group's Financial Interest................................................... 6

    B.    The Pension Schemes Are Entirely Typical and Adequate ......................... 7

III.    CONCLUSION ..................................................................... 11

719456_1

1

**TABLE OF AUTHORITIES**

2

**Page**

3 **CASES**

4 *Apple v. LJ Int'l, Inc.*,

5     2008 U.S. Dist. LEXIS 12618 (C.D. Cal. 2008)................................................5

6 *Armour v. Network Assocs.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001) ....................................................8

7
*Berger v. Styling Tech. Corp.*,

8     No. CIV 99-2109 (D. Ariz. Aug. 25, 2000) ...............................................3

9 *Blaich v. Emp. Solutions, Inc.*,
    1997 WL 842417 (D. Ariz. 1997)...........................................................6, 7

10
*Boyd v. Novastar Fin., Inc.*,

11     2007 U.S. Dist. LEXIS 49528 (W.D. Mo. 2007)......................................3

12
*Brown v. China Integrated Energy, Inc.*,

13     2011 U.S. Dist. LEXIS 151131 (C.D. Cal. 2011) ....................................3

14 *Chan v. Orthologic Corp.*,
    1996 U.S. Dist. LEXIS 22385 (D. Ariz. 1996)........................................6, 7

15
*Crawford v. Onyx Software Corp.*,

16     2002 U.S. Dist. LEXIS 1101 (W.D. Wash. 2002) ...................................5

17 *Frias v. Dendreon Corp.*,
    2011 U.S. Dist. LEXIS 145762 (W.D. Wash. 2011) ...............................5

18

19 *Gaer v. Apollo Group, Inc., et al.*,
    No. CV-10-01735 (D. Ariz. Nov. 24, 2010) ...........................................6, 8

20
*Hall v. Medicis Pharm. Corp.*,

21     2009 U.S. Dist. LEXIS 24093 (D. Ariz. 2009).......................................3

22 *Hodges v. Akeena Solar, Inc.*,
    263 F.R.D. 528 (N.D. Cal. 2009)............................................................7

23

24 *In re Apollo Grp. Inc. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 32801 (D. Ariz. 2005).......................................3

25
*In re Cavanaugh*,

26     306 F.3d 726 (9th Cir. 2002) ........................................................... *passim*

27 *In re Cendant Corp.*,
    264 F.3d 201 (3d Cir. 2001)...................................................................11

28

- ii -

1

2                                                                                     **Page**

3   *In re Critical Path, Inc.*,
        156 F. Supp. 2d 1102 (N.D. Cal. 2001) ...................................................................3, 5
4

5   *In re Enron Corp., Sec. Litig*,
        206 F.R.D. 427 (S.D. Tex. 2002)...........................................................................9, 10
6

    *In re Netflix, Inc., Sec. Litig.*,
7       2012 U.S. Dist. LEXIS 59465 (N.D. Cal. 2012) .........................................................5

8   *In re Network Assocs. Sec. Litig.*,
        76 F. Supp. 2d 1017 (N.D. Cal. 1999) ......................................................................11
9

10  *In re Peregrine Sys., Sec. Litig.*,
        2002 U.S. Dist. LEXIS 27690 (S.D. Cal. 2002) .....................................................3, 11
11

12  *In re Satyam Computer Servs., Ltd. Sec. Litig.*,
        No. 09-md-2027 (S.D.N.Y.) ...................................................................................5, 8

13  *In re Silicon Storage Tech., Inc.*,
        2005 U.S. Dist. LEXIS 45246 (N.D. Cal. 2005) .....................................................3, 6
14

15  *In re Taser Int'l Sec. Litig.*,
        No. CV05-0115 (D. Ariz. June 29, 2005) ...................................................................3

16  *In re Vista Care, Inc. Sec. Litig.*,
        No. CIV 04-1661 (D. Ariz. Feb. 15, 2005) ................................................................3
17

18  *In re Waste Mgmt., Inc. Sec. Litig.*,
        128 F. Supp. 2d 401 (S.D. Tex. 2000) ....................................................................5, 6
19

20  *Karam v. Corinthian Colleges, Inc., et al.*,
        No. CV 10-6523 (C.D. Cal. Mar. 30, 2011) ...............................................................2

21  *Molski v. Gleich*,
        318 F.3d 937 (9th Cir. 2003) ....................................................................................11
22

23  *Richman v. Goldman Sachs Grp., Inc.*,
        274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................................2
24

25  *Ruland v. Infosonics Corp.*,
        2006 U.S. Dist. LEXIS 79144 (S.D. Cal. 2006) .....................................................3, 4

26  *Sved v. Matrixx Initiatives, Inc.*,
        No. CIV-04-0886 (D. Ariz. Jan. 18, 2005) .................................................................3
27

28

                                        - iii -

**Page**

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.,*
  2007 U.S. Dist. LEXIS 67354 (D. Ariz. 2007)..........................................................................3

*Tsirekidze v. Syntax-Brillian Corp.,*
  2008 U.S. Dist. LEXIS 118562 (D. Ariz. 2008)....................................................................3, 5

*Weisz v. Calpine Corp.,*
  2002 U.S. Dist. LEXIS 27831 (N.D. Cal. 2002) ....................................................................3

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(3)(B)(i) ......................................................................................................................6
  §78u-4(a)(3)(B)(iii)(I).............................................................................................................6, 8
  §78u-4(a)(3)(B)(iii)(II) .............................................................................................................11

Federal Rules of Civil Procedure
  Rule 23 ....................................................................................................................................6, 8

719456_1

1    **I.    INTRODUCTION**

2         The Pension Schemes, two funds with a decades-long pre-litigation collaborative

3    relationship, suffered $24 million in losses on their Class Period purchases of more than

4    211,000 First Solar shares, a financial interest which exceeds the next largest movant's

5    interest by more than 40%.   And, as sophisticated institutional investors, the Pension

6    Schemes easily satisfy the typicality and adequacy requirements at this stage.

7         Despite these facts, and that NYSTRS' counsel currently represents one of the

8    Pension Schemes as lead counsel and has vouched for its adequacy in a securities case,

9    NYSTRS misstates the law and facts in an attempt to convince the Court that the

10   presumption in favor of appointing the Pension Schemes as lead plaintiff has been rebutted.

11   It has not, as neither the law nor the facts are so malleable. Nor do NYSTRS' suppositions

12   begin to approach the requisite level of proof. The Pension Schemes' motion should be

13   granted.

14   **II.    ARGUMENT**

15        **A.    The Pension Schemes Have the Largest Financial Interest**

16        In determining which movant possesses the largest financial interest, the Ninth Circuit

17   unambiguously stated "the district court ***must*** consider the ***losses*** allegedly suffered."  *In re*

18   *Cavanaugh*, 306 F.3d 726, 729, 732 (9th Cir. 2002) (focusing on "the plaintiff with the

19   largest ***losses***").[1]  In light of this clear directive, it is not surprising that every movant here

20   clearly stated what its ***losses*** were in their opening motions.[2]  Based on these estimates, it

21   was apparent from the motions that the Pension Schemes' losses exceeded all other movants:

22
| *Movant* | *Estimated Loss* |
|---|---|
| **Pension Schemes** | **$24 million** |
| NYSTRS | $17 million |
| Global Institutional Investors Group | $15 million |

25   _____

26   [1]      Unless otherwise indicated, all emphasis is added and all citations and footnotes are omitted.

27   [2]      *See* Dkt. No. 37 at 4; Dkt. No. 33 at 2, 5 ("suffered ***losses***"); Dkt. No. 27 at 2, 7 ("suffered net ***losses***"); Dkt. No. 21 at 4 ("***lost***"); Dkt. No. 23 at 1, 8 ("total ***loss***"); Dkt. No. 31 at 2, 3, 9 ("suffered

28   estimated ***losses***"); Dkt. No. 34 at 3, 5 ("***losses***").

| Retirement Funds Group | $1.6 million |
|---|---|
| First Solar Investors Group | $1.5 million |
| Johnny Hyldmar | $587,000 |
| Wayne County Employees' Retirement System | $205,000 |

Most movants again recognized in their opposition briefs that the "presumptive lead plaintiff" is the one "with the largest financial *loss*." *See* Dkt. No. 47 at 1 (conceding that it had not "suffered the largest *loss*"); Dkt. No. 49 at 1 (same); Dkt. No. 51 at 2 (same).

Only after assessing the competing motions and realizing that the Pension Schemes suffered losses 40% greater than its own did NYSTRS conveniently switch gears and suggest that instead of losses, the Court should utilize the so-called "'determinative' net shares purchased analysis" to determine the movants' financial interest.   Dkt. No. 64 at 1. Counsel's dexterity is eerily reminiscent of what recently transpired in *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473 (S.D.N.Y. 2011), where counsel's arguments likewise "evolved during the briefing process." *Id.* at 477.  There, as here, NYSTRS' counsel "[i]nitially . . . argued that it should be selected as the lead plaintiff because it had the largest *loss*." *Id.*  But when a competing movant "showed that it had the largest loss, [NYSTRS' counsel] shifted gears" and implored the court to "focus on" the "net shares purchased and net expenditures" factors.   *Id.*   As Judge Crotty keenly observed in rejecting such machinations, "the test is changed and adjusted, depending on conditions, so that the lead plaintiff status (and the right to select counsel) may be achieved." *Id.*; *see also Karam v. Corinthian Colleges, Inc., et al.*, No. CV 10-6523, Order at 1 (C.D. Cal. Mar. 30, 2011) (noting that NYSTRS' counsel's attempt to pervert the financial interest inquiry after the motions were filed "strikes [the court] as more than a bit artificial") (Ex. A).[3]  This Court should similarly reject counsel's evolutionary approach to financial interest.

*First*, the Ninth Circuit mandates that in determining which movant possesses the largest financial interest, a "district court *must* consider the *losses* allegedly suffered." *Cavanaugh*, 306 F.3d at 729, 732.  This is why, post-*Cavanaugh*, the courts in this District –

---

[3]        All exhibits ("Ex. __") are attached hereto unless otherwise indicated.

as well as the authority NYSTRS itself relies on[4] – consider a movant's *losses* when making the largest financial interest determination.[5] Thus, *losses* are the determinative metric in this Circuit, not net shares as NYSTRS suggests.[6]

**Second**, and notably absent from NYSTRS' discussion of the "determinative" net shares method, is the fact that *every* single district court that "consider[ed] the 'number of net shares purchased'" *also "coupled [that inquiry] with the 'losses suffered*.'" *Weisz*, 2002 U.S. Dist. LEXIS 27831, at *18. For example, in *Peregrine*, the district court considered net shares purchased "*supplemented by factoring in the losses suffered" because "net loss . . . is the relevant figure*." 2002 U.S. Dist. LEXIS 27690, at *22.[7] NYSTRS' portrayal of these decisions as focusing on the net shares purchased factor to the exclusion of the losses suffered is, at best, misleading. *See* Dkt. No. 64 at 4-5. Ultimately, the debate about losses and net shares purchased is academic because the Pension Schemes have the largest financial

---

[4] *Weisz v. Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, at *18 (N.D. Cal. 2002) (considering "'*losses* suffered'"); *Boyd v. Novastar Fin., Inc.*, 2007 U.S. Dist. LEXIS 49528, at *13 (W.D. Mo. 2007) (same); *In re Critical Path, Inc.*, 156 F. Supp. 2d 1102, 1111 (N.D. Cal. 2001) (same); *In re Peregrine Sys., Sec. Litig.*, 2002 U.S. Dist. LEXIS 27690, at *11-*12 (S.D. Cal. 2002) (same); *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, at *22 (N.D. Cal. 2005) (same); *Ruland v. Infosonics Corp.*, 2006 U.S. Dist. LEXIS 79144, at *12-*16 (S.D. Cal. 2006) (same).

[5] *See In re Apollo Grp. Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 32801, at *2-*3 (D. Ariz. 2005) (Teilborg, J.) (considering "*losses*" suffered); *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 2007 U.S. Dist. LEXIS 67354, at *14 (D. Ariz. 2007) (same); *Hall v. Medicis Pharm. Corp.*, 2009 U.S. Dist. LEXIS 24093, at *5-*8 (D. Ariz. 2009) (Snow, J.) (same); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 U.S. Dist. LEXIS 118562, at *12-*15 (D. Ariz. 2008) (Martone, J.) (same); *In re Taser Int'l Sec. Litig.*, No. CV05-0115, Order at 2 (D. Ariz. June 29, 2005) (Bolton, J.) (same) (Ex. B); *In re Vista Care, Inc. Sec. Litig.*, No. CIV 04-1661, Order at 5 (D. Ariz. Feb. 15, 2005) (Martone, J.) (same) (Ex. C); *Sved v. Matrixx Initiatives, Inc.*, No. CIV-04-0886, Order at 4 (D. Ariz. Jan. 18, 2005) (Murguia, J.) (same) (Ex. D); *Berger v. Styling Tech. Corp.*, No. CIV 99-2109, Order at 3 (D. Ariz. Aug. 25, 2000) (Silver, J.) (same) (Ex. E).

[6] While the Ninth Circuit noted that "the court may select accounting methods that are both rational and consistently applied," it did *not* say district courts could ignore losses entirely by substituting another metric advanced for the first time in an opposition brief. *Cavanaugh*, 306 F.3d at 730 n.4. Moreover, net shares purchased is not an accounting method. What the Ninth Circuit was referring to was *how* losses are calculated, *i.e.*, pursuant to the FIFO or LIFO accounting methods. *See generally Brown v. China Integrated Energy, Inc.*, 2011 U.S. Dist. LEXIS 151131, at *28 (C.D. Cal. 2011) ("Courts in this circuit have widely concluded, however, that both LIFO and FIFO are appropriate methods for determining the presumptive lead plaintiff.").

[7] *See also Critical Path*, 156 F. Supp. 2d at 1111 (same); *Silicon Storage*, 2005 U.S. Dist. LEXIS 45246, at *22 (same); *Infosonics*, 2006 U.S. Dist. LEXIS 79144, at *12-*16 (same).

719456_1

interest regardless of the method used:

| Movant | Estimated Loss | Net Shares Purchased[8] |
|---|---|---|
| **Pension Schemes** | **$24 million** | **184,322** |
| NYSTRS | $17 million | 139,436 |

Implicitly recognizing this fact, NYSTRS attempts to portray the Pension Schemes' financial interest as smaller than it is by arguing that the Court should divide up the Pension Schemes and consider them separately. *See* Dkt. No. 64 at 8. Like its net shares argument, this too ignores the facts, the PSLRA, the Ninth Circuit's decision in *Cavanaugh*, NYSTRS' own authorities, and decisions throughout the Circuit expressly holding it is proper to consider the combined financial interest of movants like the Pension Schemes.

### 1.    As an Organic Pair of Related Funds, the Pension Schemes Are the Paradigmatic "Group" Under the PSLRA

NYSTRS' argument that "each investor's financial interest must be considered individually" because the Pension Schemes' "motion is lacking even a basic joint declaration" is divorced from reality. Dkt. No. 64 at 8. As the Pension Schemes' opening papers timely evidenced, ***the same executive officer signed both MPS's and BCSSS's certifications***. *See* Dkt. No. 37, Ex. 2. NYSTRS' own exhibit undermines its argument, noting that the Pension Schemes "jointly" own CPT which provides executive support services to both funds and "jointly invest in properties and partnerships." Dkt. No. 65-1 at 9; *see also* Dkt. No. 37 at 5 (explaining the Pension Schemes' pre-litigation relationship and shared executives and offices). It is nonsensical for NYSTRS to suggest that the day-to-day representative of both MPS ***and*** BCSSS was somehow required to execute a joint declaration explaining how he was "going to work collaboratively" ***with himself***. *See* Dkt. No. 64 at 8. In so arguing, NYSTRS attempts to elevate form over substance.

There simply is ***no*** authority requiring two sophisticated institutions with a substantial

---

[8]    NYSTRS also offhandedly mentions a "total shares purchased" factor. *See* Dkt. No. 64 at 7. NYSTRS failed to cite a single case that based the largest financial interest determination solely on this factor. *Id.* Moreover, NYSTRS advanced this argument by, again, misleadingly separating the Pension Schemes to make their interest appear smaller than NYSTRS'. *Id.* It is not: the Pension Schemes purchased 211,380 total First Solar shares, NYSTRS' purchased 155,629 shares.

1   50-year pre-litigation relationship who share common executives and office space and

2   routinely make joint investments to submit a detailed declaration concerning the propriety of

3   their union; *res ipsa loquitur*.  NYSTRS' own cases recognize as much.[9]  In fact, **all** of

4   NYSTRS' cases confirm that it is **applications by disparate investors** that district courts

5   have held should "justify" their groupings – **not** closely-knit funds with a decades-long

6   relationship, who share executive officers and offices and who designated the same executive

7   officer as the day-to-day representative in this litigation.  *See, e.g.*, *Frias v. Dendreon Corp.*,

8   2011 U.S. Dist. LEXIS 145762, at *17 (W.D. Wash. 2011) (group members "**admit** that they

9   had **no pre-litigation relationship** and that they were **introduced by counsel**").[10]

10          The Pension Schemes "have a long history of working collaboratively together,

11   efficiently and effectively," "jointly own several companies which act as their investing

12   entities" and share common "executive support" and "office facilities."  *See* Declaration of

13   Gerard C. Lane ("Lane Decl."), ¶5 (filed concurrently herewith).  Notably, "[p]rior to the

14   filing of this litigation, the Pension Schemes undertook deliberate steps in initiating this

15   case" as they "jointly invited and considered carefully and extensively presentations and

16   written proposals by multiple law firms."  *Id.*, ¶10.[11]  It is thus entirely proper to aggregate

17

---

18   [9]     *See also Critical Path*, 156 F. Supp. 2d at 1111 ("consider[ing] the existence of a preexisting

19   relationship to be paramount in determining whether to accept a group"); *In re Waste Mgmt., Inc.

     Sec. Litig.*, 128 F. Supp. 2d 401, 412-13 (S.D. Tex. 2000) ("a small group with the largest financial

20   interest in the outcome of the litigation and a pre-litigation relationship based on more than their

     losing investment, satisfies the terms of the PSLRA and serves the purpose behind its enactment").

21   [10]    *See also Crawford v. Onyx Software Corp.*, 2002 U.S. Dist. LEXIS 1101, at *4-*5 (W.D.

     Wash. 2002) ("**loose group of investors whose relationship was forged only in an effort to win**

22   **appointment** as lead plaintiff"); *Apple v. LJ Int'l, Inc.*, 2008 U.S. Dist. LEXIS 12618, at *14-*15

     (C.D. Cal. 2008) (the "JADE Group consists of an **unrelated group of persons** whose only

23   connection is the 'happenstance of having bought the same securities'"); *In re Netflix, Inc., Sec.

     Litig.*, 2012 U.S. Dist. LEXIS 59465, at *16 (N.D. Cal. 2012) (declining to aggregate losses by "an

24   **unrelated group of individuals**"); *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15 (group

     "consists of **three completely unrelated individuals from different parts of the country**").

25   [11]    NYSTRS' observation that MPS "moved separately for appointment of Lead Plaintiff in at

26   least two others cases" is irrelevant. Dkt. No. 64 at 9.  "Contrary to NYSTRS' conjecture,

     the BCSSS did not join the MPS in seeking appointment as lead plaintiff in a few earlier cases

27   simply because it was determined that the BCSSS' losses were insufficient to warrant the BCSSS

     moving for a lead position."  Lane Decl., ¶8.  As lead counsel for lead plaintiffs, **including MPS**, in

28   one of those actions (*Satyam*), it is troubling that NYSTRS' counsel even makes such an assertion.

the Pension Schemes' financial interest where, as here, their union "involves 'a small number of members that share such an identity of characteristics, distinct from those of almost all other class members, that they can almost be seen as being the same person.'" *Waste Mgmt.*, 128 F. Supp. 2d at 412-13.[12]

### 2. The PSLRA Expressly Requires Courts to Consider a Proper Group's Financial Interest

The PSLRA unambiguously states that the "most adequate plaintiff" is the "person *or group of persons*" that timely filed a motion, "has the largest financial interest in the relief sought by the class" and otherwise meets the Rule 23 requirements.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(i) (court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class").  Significantly, the Ninth Circuit in *Cavanaugh* instructed the district court on remand to "proceed based on the presumption that the Cavanaugh group" – a team of five individuals – "is the most adequate plaintiff."  306 F.3d at 739.  Thus, the statute and *Cavanaugh* support the propriety of the Pension Schemes' joint financial interest.

This is why courts in this District consistently reject attempts by movants with smaller losses to disaggregate a proper group.  For example, "[a]t oral argument" in *Chan v. Orthologic Corp.*, 1996 U.S. Dist. LEXIS 22385 (D. Ariz. 1996), a movant with smaller losses (like NYSTRS here) "argued, for the first time" that it was really the presumptive lead plaintiff because it "bought more shares" than the group that had "without question, the largest financial stake."  *Id.* at *7 & n.1.  Judge Broomfield rejected this late argument because the group *as a whole* purchased more shares than its competitor.  *Id.*; *see also Blaich v. Emp. Solutions, Inc.*, 1997 WL 842417, at *1 (D. Ariz. 1997) (Strand, J.) (rejecting movant's argument that group with the largest financial interest's losses should be "taken

---

[12]     *See Gaer v. Apollo Group, Inc., et al.*, No. CV-10-01735, Order (D. Ariz. Nov. 24, 2010) (Snow, J.) (appointing group of unrelated institutional investors, including MPS, as lead plaintiff) (Ex. F); *Silicon Storage*, 2005 U.S. Dist. LEXIS 45246, at *35 (finding two pension funds to be a proper pairing despite the fact that they were "not operationally related and have no previous joint involvement in legal actions" because "both entities are state employees' retirement funds that work together from time to time on pension fund-related issues in Louisiana").

separately"). NYSTRS' cases are in accord.[13] Just like in *Chan* and *Blaich*, the Pension Schemes here purchased *32% more* net shares of First Solar stock than NYSTRS did:

| | |
|---|---|
| **Pension Schemes** | **184,322** |
| NYSTRS | 139,436 |

Even if the Court was inclined to view the Pension Schemes' financial interest separately (and it should not), it would have zero effect on the largest financial interest determination because, as NYSTRS properly recognized, *one of the Pension Schemes alone (MPS) suffered greater losses than NYSTRS*. *See* Dkt. No. 64 at 1 (acknowledging that MPS's loss is "larger" than the NYSTRS' loss); *see also Akeena Solar*, 263 F.R.D. at 531-32 (appointing group of unrelated individuals with most net shares purchased and largest losses because one of the group's members alone had the largest losses of any individual movant).[14]

Neither the facts nor the law support NYSTRS' arguments that only net shares matter or that the Pension Schemes' financial interest must be viewed individually. The Pension Schemes are a proper pairing of related funds who suffered more than $24 million in losses based on their purchase of more than 211,000 First Solar shares. Under any metric, this interest far exceeds NYSTRS'. As such, the Pension Schemes have the largest financial interest in the relief sought by the class and the Court should "appoint [the Pension Schemes] as lead, unless [the Court] finds that [the Pension Schemes do] not satisfy the typicality or adequacy requirements." *Cavanaugh*, 306 F.3d at 732. Despite NYSTRS' spirited effort to demonstrate otherwise, the Pension Schemes undoubtedly meet these requirements.

### B.    The Pension Schemes Are Entirely Typical and Adequate

As previously demonstrated, the Pension Schemes meet the typicality and adequacy

---

[13]    *See Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 531-32 (N.D. Cal. 2009) (considering group's *combined* financial interest and appointing it as lead plaintiff because it purchased the most net shares and suffered the largest losses).

[14]    Relying on three out-of-Circuit decisions, NYSTRS asks this Court to ignore *Cavanaugh*'s directive on losses because MPS' losses are only "negligibl[y]" greater that its own, and this *half a million dollar difference* "should not dictate the appointment of Lead Plaintiff." Dkt. No. 64 at 6. This Court should decline that invitation. *See Cavanaugh*, 306 F.3d at 729-30.

1   requirements.  *See* Dkt. No. 37 at 4-5; Dkt. No. 63 at 3-5.  And, because they have the largest

2   financial interest in the relief sought by the class and satisfy the Rule 23 requirements at this

3   stage, the Pension Schemes have triggered the "most adequate plaintiff" presumption.  15

4   U.S.C. §78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 732.

5        While this presumption is rebuttable, as the Ninth Circuit cautioned, it "does not mean

6   that it may be set aside for any reason that the court may deem sufficient." *Cavanaugh*, 306

7   F.3d at 729 n.2.  "Rather, the statute provides that the presumption 'may be rebutted ***only***

8   ***upon proof*** . . . that the presumptively most adequate plaintiff' does not satisfy the adequacy

9   or typicality requirements . . . ." *Id.*  Thus, "[s]peculative assertions such as those offered by

10  [NYSTRS] are . . . insufficient to rebut the lead plaintiff presumption." *Armour v. Network*

11  *Assocs.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001).[15]

12       NYSTRS' counsel also points to a BCSSS trustee's comment that securities class

13  actions are "ethically wrong" as a supposed indicator of inadequacy, yet neglects to present

14  the ***full*** article with the trustees' ***full*** comments. Dkt. No. 64 at 2.  NYSTRS' proclivity to

15  ignore the full facts – first by arguing the net shares method (without considering losses) was

16  "determinative" in this Circuit, then by arguing the law requires the Pension Schemes'

17  financial interest to be considered individually, and again here – is troubling.  NYSTRS

18  "failed to mention that Mr. Read (one of eight trustees that comprise the BCSSS board) went

19  on to state that there was a difference between the risk shareholders take on knowingly as

20  part of the investing process and risks that are fraudulently concealed," and "[i]n the latter

21  case, Mr. Read reportedly said ***it is 'absolutely right' to punish the wrongdoer***." Lane

22  Decl., ¶9.  "In fact, ***no individual trustee objected to the Pension Schemes' decision to***

23

---

24  [15]      One of the Pension Schemes (MPS) is currently serving as lead plaintiff, along with two
25  other institutions, in a case pending in this District (*Gaer*, No. CV-10-1735 (Ex. F)) and with four
other institutions in *In re Satyam Computer Servs., Ltd. Sec. Litig.*, No. 09-md-2027 (S.D.N.Y.)
26  where NYSTRS' counsel serving as lead counsel.  And in seeking final approval of a partial
settlement in *Satyam*, NYSTRS' counsel stated that "[e]ach of the Lead Plaintiffs" – including one
27  of the Pension Schemes – "took an active role in this litigation" and are "sophisticated institutional
investors."  *See* Ex. G.  In light of these facts, NYSTRS' counsel's adequacy attacks on the same
28  fund it currently represents are disingenuous.

719456_1

1    *prosecute this case*." *Id.*  Thus, this trustee's full comments (which pre-date this litigation

2    by more than two years) are entirely consistent with the Pension Schemes' decision to seek

3    appointment as lead plaintiff here.[16]

4           NYSTRS next suppose that defendants "may" argue that the U.K. Department of

5    Energy and Climate Change ("DECC") controls the Pension Schemes' investments,

6    including the investment in First Solar, and that same agency "certified First Solar's products

7    as reliable and accredited their use," which exposes a "conflict of interest."  Dkt. No. 64 at 2;

8    10-13.  Not so.  First, the U.K. "government *relinquished 'control'* over its right to

9    notification of investment decisions and strategies *in 2005*."  Lane Decl., ¶12 (citing Exs. B

10   and C thereto).  "Accordingly, and contrary to the assertions made by NYSTRS, *the DECC*

11   *has no 'control' over investment decisions made by the Pension Schemes and has no*

12   *involvement with their investment strategies*."  *Id.*, ¶13.  Thus, because the DECC has

13   nothing to do with the Pension Schemes' investments generally, or more specifically, their

14   investment in First Solar, the DECC's certification of First Solar's products is entirely

15   irrelevant.[17]

16          Second, as NYSTRS' own exhibit explains, the DECC accredited First Solar's *Series*

17   *3 modules*.  Dkt. No. 65-2 at 8.  The Series 3 modules were introduced in *2011*.  *See* Ex. I.

18

---

19   [16]    It is particularly ironic for NYSTRS to attack the Pension Schemes' motion based on a stale
20   misquote considering that more than a decade ago Mr. Schneider, NYSTRS' General Counsel,
     expressed an opinion that "being lead plaintiff doesn't make much sense."  *See* Ex. H (Wayne
     Schneider, "The NAPPA Report:  An Obligation to Pursue Litigation?  Really?").

21   [17]    NYSTRS' citation to *In re Enron Corp., Sec. Litig*, 206 F.R.D. 427, 456 (S.D. Tex. 2002),
22   for the proposition that a lead plaintiff "cannot adequately represent the interests of absent class
     members if it has significant business relationships with or financial interest in the defendant" is,
23   again, misleading.  Dkt. No. 64 at 14.  In *Enron*, a lead plaintiff movant, FSBA, had an investment
     advisor, Alliance Capital Management, that was Enron's largest shareholder, and recommended that
24   FSBA purchase 2.9 million Enron shares *after* public disclosure that Enron overstated its assets.  206
     F.R.D. at 456.  Worse, an Alliance Capital partner, Frank Savage, served on Enron's Board of
25   Directors during the class period and *was a defendant*.  *Id.*  Based on these facts, "the Court [could
     not] ignore that the relationship between Alliance Capital and Enron could make FSBA subject to
26   unique defenses because knowledge, actual or constructive, of Savage and the Board of Directors
     about off-balance sheet partnerships used to hide Enron's debts and artificially inflate its earnings,
27   i.e., insider information, might be imputed to FSBA."  *Id.*  Because the DECC "has *no 'control'* over
     investment decisions made by the Pension Schemes *and has no involvement* with their investment
28   strategies," *Enron* is inapposite.  Lane Decl., ¶13.

- 9 -

719456_1

1  Yet, the warranty costs First Solar disclosed on February 28, 2012, which NYTRS claims lie

2  "at the heart of this litigation" (Dkt. No. 64 at 10), were for "remediation of a manufacturing

3  excursion that occurred between *June 2008* and *June 2009*."  *See* Ex. J.  In short, the Series

4  3 modules the DECC certified cannot be "the very same product" because the Series 3

5  modules did not exist yet.  Dkt. No. 64 at 12.  And, because the certified modules are not at

6  issue here, and the DECC does not control the Pension Schemes' investments, there simply

7  is no conflict.  NYSTRS' attempt to convince the Court otherwise is belied by the facts.

8          The final reason why NYSTRS claims to be a better applicant than the Pension

9  Schemes is that "there is no evidence that [the Pension Schemes] has negotiated a fee

10  agreement with their chosen counsel."  Dkt. No. 64 at 9.  NYSTRS is wrong again.  "[E]ven

11  before its motion was filed, the Pension Schemes understood that a lead plaintiff should

12  ensure that lead counsel efficiently handles the litigation and that any resulting fees and

13  expenses are fair and reasonable."  Lane Decl., ¶11.  In fact, "***competitive submissions from***

14  ***counsel were sought and obtained before the Schemes moved for appointment as lead***

15  ***plaintiff***."  *Id.*  "The Pension Schemes ultimately selected Robbins Geller on the basis of its

16  proven track record, its capacity to fully and effectively prosecute complex securities fraud

17  cases, ***and its willingness to agree to an attorneys' fee structure that we believe will***

18  ***generate the maximum net recovery for the class***" that is "***materially below . . . the***

19  ***benchmark in this Circuit***."  *Id.*, ¶¶10-11.  NYSTRS' "concern" rings hollow.[18]

20          The types of proof sufficient to rebut the most adequate plaintiff presumption include

21  instances where a movant's affiliates were "under investigation for criminal fraud" and the

22  affiliates' officer was "arrested for tax evasion, fraud, money laundering, conspiracy and

23  consorting with criminal elements."  *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017,

---

24

25  [18]      Undue emphasis on attorneys' fee agreements at this stage is precisely what the Ninth Circuit
found problematic in *Cavanaugh* where the district court "freed itself of the statutory presumption"

26  by "engag[ing] in a freewheeling comparison of the parties competing for lead plaintiff, questioning
them about their business acumen, their knowledge of the lawsuit and, ***especially, their fee***

27  ***arrangements with their respective lawyers*.*"  *Cavanaugh*, 306 F.3d at 732.  This was wrong
because "a straightforward application of the statutory scheme . . . provides no occasion for

28  comparing plaintiffs with each other on any basis other than their financial stake in the case."  *Id.*

719456_1

1029 (N.D. Cal. 1999).[19]  Such proof stands in stark contrast to NYSTRS' suppositions and

innuendo.[20]  Because no "proof" has been proffered, the presumption in favor of appointing

the Pension Schemes as lead plaintiff has not been rebutted.

## III.    CONCLUSION

The Pension Schemes suffered more than $24 million in losses on their Class Period

purchases of more than 211,000 shares of First Solar stock.  The funds share a decades-long,

multi-faceted  relationship  predating  this  litigation.    They  aggressively  negotiated  an

attorneys'  fee  agreement  with  counsel  ***before***  filing  their  motion.    All  of  the  reasons

NYSTRS interjects in opposition to the Pension Schemes' motion are contradicted by the

law and by the facts.  As such, it is unrealistic to suggest that the Pension Schemes would not

pursue every possible avenue to maximize the class' recovery here.  The Pension Schemes

are the most adequate plaintiff.  Their motion should be granted.

DATED:  June 11, 2012                        Respectfully submitted,

                                             ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                             MICHAEL J. DOWD
                                             MARK SOLOMON
                                             DANIEL S. DROSMAN
                                             JASON A. FORGE
                                             DANIELLE S. MYERS

                                             _____
                                                    s/ DANIELLE S. MYERS
                                                    DANIELLE S. MYERS

---

[19]     *In re Cendant Corp.*, 264 F.3d 201, 269-70 (3d Cir. 2001) ("actual proof of pay-to-play" "would constitute strong (and, quite probably, dispositive) evidence that the presumption had been rebutted" whereas mere "[a]llegations of impropriety are not proof of wrongdoing"); *Peregrine*, 2002 U.S. Dist. LEXIS 27690, at *34 (movant was inadequate because he was ***currently employed by defendant as an executive officer***).

[20]     NYSTRS' citation to *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), a non-securities case, for the proposition that the "mere appearance" of a conflict is sufficient to deny the Pension Schemes' motion is seriously flawed.  *See* Dkt. No. 64 at 13.  The PSLRA plainly requires "***proof***" – not a "mere appearance" – for the presumption to be rebutted.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *Cavanaugh*, 306 F.3d at 729 n.2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff

BONNETT FAIRBOURN FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ005425)
KEVIN HANGER (AZ027346)
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

[Proposed] Liaison Counsel for Plaintiff

719456_1

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on June 11, 2012, I authorized the electronic filing of the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification

4

of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List,

5

and I hereby certify that I caused to be mailed the foregoing document or paper via the

6

United States Postal Service to the non-CM/ECF participants indicated on the attached

7

Manual Notice List.

8

I certify under penalty of perjury under the laws of the United States of America that

9

the foregoing is true and correct.  Executed on June 11, 2012.

10

  s/ DANIELLE S. MYERS
DANIELLE S. MYERS

11

12

ROBBINS GELLER RUDMAN
    & DOWD LLP

13

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058

14

619/231-7423 (fax)

15

E-mail:   dmyers@rgrdlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

719456_1

# Mailing Information for a Case 2:12-cv-00555-DGC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **George C Aguilar**
  gaguilar@robbinsumeda.com,notice@robbinsumeda.com

- **Stephen Richard Basser**
  sbasser@barrack.com

- **Maureen Beyers**
  mbeyers@omlaw.com,ljensen@omlaw.com

- **Willie Briscoe**
  wbriscoe@thebriscoelawfirm.com

- **Luke Brooks**
  lukeb@rgrdlaw.com

- **Jeremy James Christian**
  jjc@tblaw.com,jxw@tblaw.com,sab@tblaw.com

- **Keith Michael Cochran**
  kcochran@cfsblaw.com

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com,mzehel@pomlaw.com

- **Jonathan Adam Dessaules**
  jdessaules@dessauleslaw.com,hpeters@dessauleslaw.com

- **Michael J Dowd**
  miked@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Daniel S Drosman**
  dand@rgrdlaw.com,tholindrake@rgrdlaw.com

- **Jordan Eth**
  jeth@mofo.com,adavis@mofo.com,nurbina@mofo.com

- **Jason A Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard W Gonnello**
  rgonnello@faruqilaw.com

- **Bryan Jens Gottfredson**
  Bryan.Gottfredson@sackstierney.com,karen.sorensen@sackstierney.com

- **Salvatore Jo Graziano**
  salvatore@blbglaw.com,errol.hall@blbglaw.com

- **Joseph P Guglielmo**
  jguglielmo@scott-scott.com

- **Kevin Richard Hanger**
  khanger@bffb.com,rcreech@bffb.com,nserden@bffb.com

- **Jennifer Lynn Kroll**
  jkroll@martinbonnett.com,jkroll1@cox.net

- **Jeffrey S Leonard**
  jeffrey.leonard@sackstierney.com,wendy.peterson@sackstierney.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com

- **Peter S Linden**
  plinden@kmllp.com

- **Susan Joan Martin**
  smartin@martinbonnett.com,tmahabir@martinbonnett.com,mblawfirm@aol.com

- **Michael Craig McKay**
  mmckay@schneiderwallace.com,efilings@schneiderwallace.com,egallegos@schneiderwallace.com

- **Danielle S Myers**
  danim@rgrdlaw.com

- **Patrick Powers**
  patrick@powerstaylor.com,sarah@powerstaylor.com

- **Ira Michael Press**
  ipress@kmllp.com

- **Jay N Razzouk**
  jrazzouk@robbinsumeda.com

- **Brian J Robbins**
  brobbins@robbinsumeda.com,notice@robbinsumeda.com,rsalazar@robbinsumeda.com

- **Hart Lawrence Robinovitch**
  AZDocketing@zimmreed.com,stacy.bethea@zimmreed.com

- **David R Scott**
  drscott@scott-scott.com,efile@scott-scott.com

- **Mark Solomon**
  marks@rgrdlaw.com

- **Edward M Varga , III**
  evarga@kmllp.com

- **Samuel M Ward**
  sward@barrack.com,lxlamb@barrack.com

- **Daxton Reese Watson**
  dwatson@mackazlaw.com,bcorpora@mackazlaw.com

- **Anna Erickson White**
  awhite@mofo.com,tvanvoris@mofo.com,avickery@mofo.com

- **Garrett Webster Wotkyns**
  gwotkyns@schneiderwallace.com,efilings@schneiderwallace.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)