# EXHIBIT E

RECD AUG 3 0 2000

FILED ___ LODGED
RECEIVED ___ COPY

AUG 2 5 2000

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PAUL BERGER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STYLING TECHNOLOGY CORPORATION, et al.,<br><br>Defendants. | No. CIV 99-2109-PHX-ROS<br>CIV 99-2145<br>CIV 00-0074<br>CIV 00-0075<br>(consolidated)<br><br>ORDER |

Plaintiff Paul Berger filed this action alleging that Defendants, Styling Technology Corporation ("STC"), Sam Leopold, and Richard Ross engaged in securities fraud in violation of the Securities Exchange Act of 1934. Three additional securities fraud actions against STC have been consolidated with the action captioned above pursuant to the Court's orders issued February 1, 2000, and March 10, 2000.

Pending before the Court is the Styling Technology Plaintiffs Group's Motion to Be Appointed Lead Plaintiffs, and Motion for Approval of their Choice of Co-Lead Counsel. By order issued May 8, 2000, the Court explained that, before it could dispose of the Motions, docketing and filing errors needed to be corrected and the proposed lead plaintiffs needed to supply the Court with additional information. Plaintiffs complied with the Court's request to supply items that had been filed but were not in the record, and to provide a Supplement containing additional information. A minor error remains in the docket in the

1. description of pleading number 18. Currently, it indicates that the Styling Technology Plaintiffs rather than the Shweky Plaintiffs withdrew their Motion to be Appointed Lead Plaintiffs. The docket will be corrected and the Court proceeds to address the Styling Technology Plaintiffs' Motion.

**Discussion**

I.   **Motion for Appointment of Lead Plaintiffs**

The Private Securities Litigation Reform Act ("PSLRA"), passed in 1995, establishes the requirements for selection of lead plaintiffs in private class action suits brought under the Securities and Exchange Act of 1934. Yousefi v. Lockheed Martin Corp., 70 F. Supp. 2d 1061, 1066 (C.D. Cal. 1999); Wenderhold v. Cylink Corp., 188 F.R.D. 577, 584 (N.D. Cal. 1999). The statute provides: "[T]he court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute establishes a rebuttable presumption:

> that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Therefore, the first inquiry is whether the proposed lead plaintiffs satisfy the rebuttable presumption of adequacy.

The movants requesting appointment of the lead plaintiffs are 29 individuals or other entities that purchased Defendant's stock on one or more occasions between May 5, 1998, and November 29, 1999. (See Dec. of Karen Thomas at Exh. 1, listing movants, and Exh. 2, containing certifications of movants and other stock purchasers). According to the

1  Memorandum in support of the Motion for Appointment of Lead Plaintiffs, the movants
2  request appointment of three of the 29 individuals or entities as lead plaintiffs: Matthew
3  Johnson, Elias Louridas, and the Ted Williams and Norman Miller 401K Plan. (Mem. at 1).
4  These three sustained the largest losses of the 29 movants: $281,569, $42,000, and $44,775
5  respectively, for a total of $368,344, over one-half of the approximately $713,000 in losses
6  sustained by the 29 movants as a whole.[1] Alternatively, the movants request that the entire
7  group of 29 be appointed as lead plaintiffs.
8        The three claimants with the largest losses easily satisfy two of the requirements
9  necessary to establish a rebuttable presumption of being the most adequate lead plaintiffs.
10 Specifically, they, along with the other movants, filed the Motion for Appointment of Lead
11 Plaintiffs in response to the notice required by another subsection of the PSLRA, and they
12 are the three individuals or entities, of the 29 movants, with the largest financial interest in
13 the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(bb).
14       To meet the third requirement, that of satisfying the Fed. R. Civ. P. 23 standards, the
15 three proposed lead plaintiffs need make only a preliminary showing that they satisfy the
16 typicality and adequacy standards. See Takeda v. Turbodyne Technologies, Inc., 67 F. Supp.
17 2d 1129, 1136 (C.D. Cal. 1999); Wenderhold, 188 F.R.D. at 587. Formal analysis of all the
18 elements of Rule 23 will occur when the plaintiffs move for class certification. Takeda, 67
19 F. Supp. 2d at 1136; In re Advanced Tissue Sciences Securities Litig., 184 F.R.D. 346, 349
20 (S.D. Cal. 1998).

---

[1] The 29 movants are not the only individuals who purportedly sustained losses as a result of the Defendant's alleged misrepresentations. Exhibit B to the Thomas Declaration contains certifications of losses by the 29 movants, as well as 17 other individuals or entities. The latter are not among the movants, but who sustained a total of approximately $140,000 in additional losses. Losses were also certified by the individuals or entities that filed, and then retracted, the Motion for Appointment of the Shweky Plaintiffs group. Other individuals and entities unknown to the Court likely sustained losses as well. Thus, the losses of the three proposed lead plaintiffs are merely the largest losses of the 29 movants.

1   The typicality standard is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality concerns the Defendant's actions toward the plaintiff class. Smith v. University of Wash. Law School, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998). A representative's claim is typical if it is based upon the same event or course of conduct that is the basis of the other class members' claims, as well as the same legal theory. Haley v. Medtronic, Inc., 169 F.R.D. 643, 649 (C.D. Cal. 1996). Overall, the proposed lead plaintiffs claims are "based upon the same event or course of conduct," id., specifically, Defendant's purported false and misleading statements between May, 1998 and September, 1999, which allegedly caused artificial inflation in the price of its stock. However, the proposed lead plaintiffs made purchases only between April, 1999 and October, 1999. To ensure that the proposed lead plaintiffs' claims are based on the entire course of conduct at issue, inclusion of an additional lead Plaintiff who made purchases earlier is necessary. The movant with the most sizeable 1998 purchase is Louis Pelletiere, who made his initial purchase on November, 1998. (See summary of movant's purchases, Exh. A to Thomas Dec.) Pelletiere, like the other proposed lead plaintiffs, has certified that he is willing to be a lead plaintiff. (See Pelletiere Cert., Exh. B to Thomas Dec.). With the inclusion of Pelletiere, the preliminary showing of typicality is satisfied.

Adequacy is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement helps ensure that absent class members are vigorously represented by the lead plaintiffs and counsel. See Smith, 2 F. Supp. 2d at 1343. Representation is adequate if counsel for the class is competent and qualified, and the lead plaintiffs do not have interests antagonistic to or conflicting with those of the remaining class members. See id. (citing Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir 1978)); O'Connor v. Boeing North Am., Inc. 180 F.R.D. 359, 375 (C.D. Cal. 1997). As will be discussed in greater detail below, counsel is qualified.

- 4 -

1    To satisfy adequacy and avoid conflicting interests, the representative plaintiff group
2 must include plaintiffs who purchased the security at the times it was purportedly affected
3 by alleged fraudulent statements. Ravens v. Iftikar, 174 F.R.D. 651, 663-64 (N.D. Cal.
4 1997). Therefore, the lead plaintiffs in actions such as the one at bar, in which multiple
5 fraudulent statements are alleged, should include those affected by different statements. See
6 Wenderhold, 188 F.R.D. at 586. With the inclusion of Pelletiere, the proposed lead plaintiffs
7 group includes individuals or entities that made purchases at various points between
8 November, 1998 through October, 1999, and, as a result, were affected by statements made
9 by the Defendant at different points during this time period. Therefore, the proposed lead
10 plaintiffs plus Pelletiere satisfy the preliminary showing of adequacy.
11    Having satisfied all three prerequisites, the movants have created the rebuttable
12 presumption that the proposed lead plaintiffs, along with Pelletiere, are the "most adequate."
13 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption that the proposed lead plaintiffs are the
14 most adequate may be rebutted, but:

15    only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
16
17    (aa) will not fairly and adequately protect the interests of the class; or
18    (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

19 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No member of the purported plaintiff class has attempted
20 to make the showing necessary to rebut the presumption that the proposed lead plaintiffs are
21 the most adequate. Therefore, the Court will grant the Motion for Appointment of Lead
22 Plaintiffs, and appoint the following individuals or entities: Matthew Johnson, Elias
23 Louridas, the Ted Williams and Norman Miller 401K Plan, and Louis Pelletiere.
24    In reaching this conclusion, the Court has attempted to effectuate the goals of the
25 PSLRA to the extent possible, though the pleadings do not discuss these goals and the
26 circumstances do not provide the Court the means of fully effectuating them. By passing the
27 PSLRA, Congress sought to "'empower investors so that they, not their lawyers, control
28

1  securities litigation' by transferring 'primary control of private securities litigation from
2  lawyers to investors.'" <u>Wenderhold</u>, 188 F.R.D. at 584 (quoting S. Report No. 104-98, 104th
3  Congress, <u>reprinted in</u> 1995 U.S.C.C.A.N. 679, 687-90 (1995)); <u>see also</u> <u>Aronson v.</u>
4  <u>McKesson HBOC, Inc.</u>, 79 F. Supp.2d 1146, (N.D. Cal. 1999). In creating the presumption
5  that the plaintiff with the largest financial interest is the "most adequate," Congress promoted
6  the goal of client control by establishing a preference for large, sophisticated institutional
7  investors as lead plaintiffs. <u>See</u> <u>Takeda</u>, 67 F. Supp. 2d at 1135; <u>Ravens</u>, 174 F.R.D. at 661-
8  62. However, the Court has not been presented with the option of selecting a large
9  institutional investor.

10  That counsel largely retains control over the litigation at bar is confirmed by the 29
11  movants' certifications. Nothing in the certifications indicates that the movants proposed the
12  three lead plaintiffs; rather, all 29 movants expressed a willingness to be lead plaintiff.
13  Counsel proposed that the three with the largest financial stake be selected, confirming
14  counsel's control. Nonetheless, given the options presented, selecting a small number of lead
15  plaintiffs is a better means of promoting lead plaintiffs' control of the litigation than is the
16  alternative presented, selecting all 29 movants as lead plaintiffs. <u>See</u> <u>Yousefi</u>, 70 F. Supp.
17  2d at 1068 (stating that increasing the number of lead plaintiffs reduces client control by
18  making administration of the action more complex and unwieldy); <u>see also</u> <u>Takeda</u>, 67 F.
19  Supp. 2d at 1135.

20  In the interest of fostering lead plaintiff control, some courts have rejected selection
21  of more than one lead plaintiff. <u>See</u> <u>Ravens</u>, 174 F.R.D. at 662 (quoting <u>In re Donnkenny</u>
22  <u>Inc. Securities Litig.</u>, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997)). However, this Court agrees
23  with those courts that do not completely reject aggregation of a small number of lead
24  plaintiffs in some circumstances. <u>See e.g.</u>, <u>Wenderhold</u>, 188 F.R.D. at 586. As explained
25  above, it may be difficult to meet the requirements of adequacy and typicality absent multiple
26  plaintiffs. <u>See id.</u> The selection of a small number of four lead plaintiffs in the action at bar
27
28

1 provides the best balance between the goal of fostering client control of litigation and the
2 need to satisfy adequacy and typicality requirements.

3 **II.    Motion for Approval of Counsel**

4       The PSLRA provides: "The most adequate plaintiff shall, subject to the approval of
5 the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).
6 In the Motion, counsel asserts that the lead plaintiffs "selected the law firms of Wolf Popper
7 LLP and Milberg Weiss Bershad Hynes & Lerach, LLP as Co-Lead Counsel . . . and
8 Bonnett, Fairbourn, et al. as Class Liaison Counsel." (Mem. at 12).

9       Some courts have concluded that the lead plaintiffs' choice of counsel is disturbed
10 only if necessary to "'protect the interests of the class.'" See Takeda, 67 F. Supp. 2d at 1139
11 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)); In re Advanced Tissue Sciences Securities
12 Litig., 184 F.R.D. at 353 (quoting same). However, these courts are quoting a portion of the
13 statute governing rebuttal of the presumption about the most adequate plaintiffs. See 15
14 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)). The quoted language does not pertain to choice of
15 counsel.

16       Other courts have declined to defer to the lead plaintiffs' choice of counsel. One court
17 required counsel to engage in a competitive bidding process when none of the lead plaintiffs
18 were institutional investors, to "ensur[e] that the class receives quality representation at a fair
19 price." See Wenderhold, 188 F.R.D. at 587. Another rejected a motion to have three law
20 firms serve as lead counsel, choosing instead the firm that had been most involved in the
21 litigation up to that point based on signatures on the pleadings. See Yousefi, 70 F. Supp. 2d
22 at 1072. The latter court concluded that plaintiffs would retain more control of the litigation
23 if they had to work with only one firm. See id.

24       In the action at bar, attorneys for local counsel, Bonnett, Fairbourn, et al., have
25 submitted the pleadings. Involvement of local counsel is warranted to coordinate filings with
26 this Court. It is difficult to determine which of the two proposed co-lead firms, Wolf Popper
27 or Milberg Weiss, has been more involved in the litigation to date. Wolf Popper prepared
28

1   the notice to potential plaintiffs submitted over a business wire, but a Milberg Weiss attorney
2   prepared the Declaration to which is attached, among other documents, the summary of the
3   movants' purchases and losses, and certifications by both the movants and additional
4   potential class members. (See Thomas Dec. and Notice at Exh. 3 thereto).
5          Review of the firms' resumes indicates that both Wolf Popper and Milberg Weiss are
6   experienced in litigating securities class actions on behalf of individual investors. (See id.
7   at Exhs. 21-22). The Court is satisfied that both would adequately represent the class.
8   Discerning no basis for selecting only one of the firms, the Court will grant the Motion to
9   approve both, but the Court cautions counsel to avoid duplication of effort. Cf. Aronson, 70
10  F. Supp. 2d at 1159 (providing similar caution). Attorneys' fees are limited by the PSLRA
11  to "a reasonable percentage of the amount of damages and prejudgment interest actually paid
12  to the class." 15 U.S.C. § 78u-4(a)(6). The Court will carefully scrutinize any attorneys'
13  fees award to ensure that total fees, if any, meet the statutory reasonableness standard. See
14  Takeda, 67 F. Supp. 2d at 1139.
15         Accordingly,
16         **IT IS ORDERED** that the Clerk of Court alter the description of the pleading
17  docketed as number 18 to state:
18         NOTICE OF WITHDRAWAL by Shweky Plaintiffs of Motion for
           Appointment of Lead Plaintiffs and for Approval of Lead Plaintiffs' Choice
19         of Lead Counsel. The Motion was originally filed on January 31, 2000 but not
           added to the record, and refiled and added to the record on May 17, 2000.
20         (Dkt. # 27).
21         **IT IS FURTHER ORDERED** granting the Styling Technology Group Plaintiffs
22  Motion for Appointment of Lead Plaintiffs and for Approval of Lead Plaintiffs' Choice of
23  Lead Counsel. (Dkt # 14).
24         **IT IS FURTHER ORDERED** denying as moot the identical Motion, for
25  Appointment of Lead Plaintiffs and for Approval of Lead Plaintiffs' Choice of Lead Counsel,
26  filed in the three actions that were subsequently consolidated with the action at bar. The case
27
28

1  names and numbers of the consolidated actions and docket numbers of the motions to be
2  mooted are as follows:
3      (1) <u>Blanchard v. Styling Technology</u>, CIV 99-2145, (dkt. ## 9-1, 9-2);
4      (2) <u>Mason v. Styling Technology</u>, CIV 00-0074, (dkt. ## 2-1, 2-2); and
5      (3) <u>Coleman v. Styling Technology</u>, CIV 00-0075, (dkt. ## 2-1, 2-2).
6      DATED this 24 day of August, 2000.
7
8
9                                          _____
                                            Roslyn O. Silver
10                                          United States District Judge
    copies to all counsel of record
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28