# EXHIBIT H

The NAPPA Report
## AN OBLIGATION TO PURSUE LITIGATION? REALLY?
By
Wayne Schneider, General Counsel
New York State Teachers' Retirement System*

It was suggested in this newsletter (February 1997 issue) that public employee pension plans are obligated to pursue Federal securities litigations, presumably as lead counsel under the recent amendments to the Federal securities laws.

At the outset, I agree plans ought to file proofs of claim in securities litigation. Doing so involves a small amount of effort and the return can be significant.

But do plans have an obligation to do anything more than that? The following outlines the kind of inquiry which might be made when considering whether to intervene in a Federal securities litigation.

### Why Doesn't Fidelity Sue?

The governing prudence standard, however formulated, refers one to the hypothetical "prudent person" or "prudent expert". One might observe the Fidelitys of the world almost never enter the Federal securities litigation arena. Why not? In instance after instance, they are the largest shareholders. Why aren't they exercising superior wisdom and perspicacity in deciding not to sue?

I have heard the Fidelitys of the world fear their investment departments will be turned upside down for weeks on end during discovery. This threat alone makes the thought of pursing litigation unpalatable. Shouldn't public plans have the same concern? If not, why not? Even if a plan were not concerned for its own staff, should it not be concerned where the stock at issue was purchased by an outside manager? Before urging a plan to rush to the front, aspiring plan litigation counsel, I believe, must address the concerns that keep the Fidelitys on the sidelines.

### Federal Securities Claims as Plan Assets.

Yes, a class action claim may be characterized as a plan "asset". But plan executives do not consider assets and their prospects in isolation. They make a rational calculation whether pursing one investment is better than pursing another. Isn't a plan entitled to make the same kind of calculation here?

### he Issue is Additional Incremental Return.

We all know there are any number of plaintiffs and their lawyers out there willing to bring Federal securities law claims. The question is typically not whether there will be a return, but how much better off will a plan be by taking the lead. In other words, what's the expected additional return?

It is argued one advantage of taking the lead would be to lower the attorney's cut from 30% to 25 or 20%. This is, without a doubt, a significant and welcome concession and, if widely adopted, would be of substantial benefit to all investors, not just public sector plans. Notwithstanding, from the standpoint of an individual plan in a given litigation, this concession only increases the plan's return by 7 or 14%. In other words, if a plan would "normally" net $70,000 from a class

DOCS\224967v1

action, taking the lead and obtaining the appointment of its counsel would only net an additional $5,000 or $10,000. Plan executives have to ask themselves: is that amount of additional return worth the effort?

Aspiring plan counsel will probably argue that additional incremental return will come from a larger overall settlement achieved through their superior skill and diligence. Even so, how much better do they think they can do? Suppose a plan would expect "normally" to receive a $100,000 by merely filing a proof of claim but would be willing to shoulder the burdens of becoming a lead plaintiff if it could recover an additional $100,000. Is it realistic to expect aspiring plan counsel will do 100% better job?

Presumably aspiring plan counsel would point out all the uncertainties in Federal securities class action litigation. One must frame a complaint which will pass muster under the supposedly heightened pleading requirements for Federal securities claims, just to get in the court house door. One must find defendants who are, in fact, good for the money. One must develop a case which will cause these solvent defendants to part with a good chunk of money. And finally, and perhaps most important, the plan itself must have a significant enough stake in the settlement that the increased settlement pot, in fact, results in the desired additional recovery.

By way of illustration, my plan recently received a check for approximately $118,000, representing approximately 16% of its reported loss. Suppose my plan's threshold for intervention had been $100,000, aspiring plaintiff's counsel would have had to achieve a settlement of about 30 cents on the dollar. Where would aspiring plan counsel get the additional money? Bear in mind the overall settlement fund was $55 million.

**Working for Someone Else.**

There is at least one significant difference between being lead plaintiff in a Federal securities lawsuit and almost any other kind of investment a plan might make. The plan will mostly be working for others, not the plan's participants and beneficiaries. (Most of the purported benefits to the plan from taking the lead are in "the long run.") Doesn't this raise a fiduciary issue?

**Conclusion.**

As I see it today, being lead plaintiff doesn't make much sense except possibly where the plan has sustained such a large loss that receiving even one or two cents more on the dollar would mean hundreds of thousands of dollars in additional recovery. Where have I gone wrong?

*(Editor's Note: The issue of securities litigation will be more fully explained at a workshop session entitled "Securities Litigation: A Brave New World?," at this June's NAPPA conference in Monterey. Richard Walker, General Counsel of the Securities and Exchange Commission will be the speaker.)*

\* These views expressed are solely those of the author and do not necessarily represent the views of the system for which he works.