Richard G. Himelrick (# 004738)
(rgh@tblaw.com)
J. James Christian (# 023614)
(jjc@tblaw.com)
TIFFANY & BOSCO P.A.
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016-9240
Tel: (602) 255-6000
Fax: (602) 255-0103
*Local Counsel for Plaintiff NYSTRS*

Salvatore Graziano
(salvatore@blbglaw.com)
Gerald H. Silk
(jerry@blbglaw.com)
Laura H. Gundersheim
(laurag@blbglaw.com)
BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444
*Counsel for Plaintiff NYSTRS and
Proposed Lead Counsel for the Class*

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF ARIZONA

| | |
|---|---|
| MARK SMILOVITS, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIRST SOLAR, INC., MICHAEL J. AHEARN, ROBERT J. GILLETTE, MARK R. WIDMAR, JENS MEYERHOFF, and JAMES ZHU,<br><br>Defendants. | Case No. 2:12-cv-00555-DGC<br><br>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE NEW YORK STATE TEACHERS' RETIREMENT SYSTEM'S MOTION FOR LEAD PLAINTIFF<br><br><u>ORAL ARGUMENT REQUESTED</u><br><br><u>ECF FILED</u> |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 2

    A.    New York Teachers Has The Largest Financial Interest Of Any Qualified Movant ..................................................................................... 2

    B.    Mineworkers And British Coal Suffer From Significant Rule 23 Infirmities ................................................................................................. 4

    C.    The Pension Scheme Group Has Failed To Demonstrate Cohesion And Cannot Aggregate Losses ................................................................. 9

    D.    New York Teachers Satisfies The Rule 23 Requirements ....................... 11

CONCLUSION ............................................................................................................... 11

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Apple v. LJ Int'l, Inc.*,
   No. CV 07-6076 GAF, 2008 U.S. Dist. LEXIS 12618 (C.D. Cal. Feb. 8, 2008) ..........9

*Applestein v. Medivation, Inc.*,
   No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 17,
   2010) ...................................................................................................................................4

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001)...................................................................3, 6, 7, 8

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ..........................................................................................................4

*Eichenholtz v. Verifone Holdings, Inc.*,
   No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22,
   2008) ........................................................................................................................4, 8, 9, 10

*Erikson v. Cornerstone Propane Partners L.P.*,
   2003 U.S. Dist. LEXIS 18009 (N.D. Cal. Sept. 9, 2003)..............................................3, 4

*Hall v. Medicis Pharm. Corp.*,
   Nos. CV-08-1821-PHX-GMS, CV-08-1870-PHX-DKD, 2009 U.S. Dist. LEXIS
   24093 (D. Ariz. Mar. 10, 2009) .......................................................................................7

*Hodges v. Akeena Solar, Inc.*,
   263 F.R.D. 528 (N.D. Cal. 2009) .....................................................................................3

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
   No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4,
   2009) .................................................................................................................................9

*In re Netflix, Inc. Sec. Litig.*,
   Nos. 12-0225 SC and 12-1030 LHK, 2012 U.S. Dist. LEXIS 59465 (N.D. Cal.
   Apr. 26, 2012)..................................................................................................................9

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999).........................................................................3, 6

*In re Peregrine Sys., Inc. Sec. Litig.*,
   No. 02cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690 (S.D. Cal. Oct. 9, 2002)... passim

*Ruland v. InfoSonics Corp.*,
  2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) ................................................... 3

*Schriver v. Impac Mortg. Holdings, Inc.*,
  2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ................................................... 9

*Schueneman v. Arena Pharms., Inc.*,
  2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) ................................................... 3

*In re Silicon Storage Tech., Inc. Sec. Litig.*,
  No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ............... 3

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*,
  No. 06-CV-2674-PHX-RCB, 2007 U.S. Dist. LEXIS 67354 (D. Ariz. Sept. 10, 2007) ........... 7

*Tsirekidze v. Syntax-Brillian Corp.*,
  No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 4,
  2008) ................................................................................................................ passim

*Weisz v. Calpine Corp.*,
  No. C 0-1200 SBA, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 15, 2002) .............. 3

**STATUTES**

15 U.S.C. §77z-1(a)(3)(B)(i) ................................................................................................. 2

15 U.S.C. §78u-4(a)(3)(B)(i) ................................................................................................. 2

The New York State Teachers' Retirement System ("New York Teachers") respectfully submits this reply memorandum of law in further support of its motion.

## PRELIMINARY STATEMENT

New York Teachers has the largest financial interest of any qualified lead plaintiff movant. Its adequacy, typicality, and ability to represent the Class have not been disputed by any party.[1] While Mineworkers' Pension Scheme ("Mineworkers") and British Coal Staff Superannuation Scheme ("British Coal") improperly combine their losses to claim a greater aggregate financial interest than New York Teachers as measured by the first-in first-out ("FIFO") method of calculating losses, New York Teachers has more net shares purchased – the "determinative" financial interest metric – particularly in a case where, as here, the movants' individual FIFO losses are so close.

Further, both Mineworkers and British Coal suffer from multiple and serious defects that render each incapable of satisfying Rule 23. Specifically, New York Teachers has proffered proof – not speculation – that both Mineworkers and British Coal suffer from a conflict of interest because their financial guarantor, the United Kingdom's Department of Energy and Climate Change, which has control over Mineworkers and British Coal and their investment decisions, accredited and approved the First Solar products during the Class Period that are the very subject of this litigation. As a direct result, Mineworkers and British Coal will be subject to credible and unique challenges concerning their guarantor's specialized (and different) knowledge regarding First Solar's products, potentially giving rise to satellite and international discovery disputes and proceedings in the United Kingdom. The fact that Mineworkers and British Coal may proffer excuses for why this entanglement may not ultimately result in a final adjudication regarding their adequacy and typicality "is of no matter." *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690, at *33 (S.D. Cal. Oct. 9, 2002). It is well-established that "the fact that plaintiffs will be ***subject to***

---

[1] Any challenges raised to New York Teachers' adequacy, typicality or ability to represent the Class by the "Pension Scheme Group" for the first time on reply would be untimely and unfair, denying New York Teachers the ability to respond.

such defenses renders their claims atypical of other class members." *Id*. (emphasis added). In addition, the two funds close relationship with the Department of Energy and Climate Change raise significant questions regarding whether they will vigorously prosecute this action. Indeed, the British Coal Chairman's statement that class actions "steal[] from existing shareholders" only exacerbates this specter.

Mineworkers and British Coal still have not even demonstrated that their so-called "Pension Schemes Group" is anything more than two separate funds formed by their attorneys to obtain control of the litigation. In neither their opening papers nor their opposition papers, did Mineworkers and British Coal proffer any evidence of how, why, or when their "group" was formed, how the group would work together, or that the members of Mineworkers and British Coal had ever communicated with one another or even knew about their joint submission. Courts routinely refuse to appoint groups of investors as lead plaintiffs where the group has not demonstrated its cohesiveness. *See e.g., Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 4, 2008). To the extent Mineworkers and British Coal belatedly attempt to cure these deficiencies for the first time in their reply papers, that should be rejected. Courts have repeatedly refused to credit such belated proffers. Accordingly, New York Teachers should be appointed as Lead Plaintiff.

## ARGUMENT

### A. New York Teachers Has The Largest Financial Interest Of Any Qualified Movant

The record demonstrates that New York Teachers has the largest financial interest as measured by net shares purchased of any qualified movant. New York Teachers' 139,436 net shares purchased exceeds that of the next largest individual movant by nearly 5,000 shares. In light of New York Teachers' financial interest in the litigation and the fact that no movant has challenged its ability to satisfy Rule 23's "adequacy" and "typicality" requirements, New York Teachers is the presumptive Lead Plaintiff under the PSLRA. 15 U.S.C. §77z-1(a)(3)(B)(i); 15 U.S.C. §78u-4(a)(3)(B)(i).

Mineworkers and British Coal likely will attempt to convince this Court that the widely accepted "determinative" net shares purchased metric is not sufficient. A review of the relevant case law and the trend in the Ninth Circuit, however, shows that net shares purchased is one of the most accepted standards for measuring the financial interest of lead plaintiff movants in the Ninth Circuit. *See, e.g., Hodges v. Akeena Solar, Inc.,* 263 F.R.D. 528, 531 (N.D. Cal. 2009); *In re Silicon Storage Tech., Inc. Sec. Litig.*, No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246, at *21-22 (N.D. Cal. May 3, 2005); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (number of net shares purchased is "determinative" of financial interest); *Schueneman v. Arena Pharms., Inc*., 2011 U.S. Dist. LEXIS 87373, at *15-16 (S.D. Cal. Aug. 8, 2011) (placing the greatest weight on the number of net shares purchased); *Ruland v. InfoSonics Corp.*, 2006 U.S. Dist. LEXIS 79144, at *16 (S.D. Cal. Oct. 23, 2006) ("[T]he candidate with the most net shares purchased will normally have the largest potential damage recovery."); *Weisz v. Calpine Corp*., No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 15, 2002) (appointing candidate with largest number of net shares purchased); *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (concluding net shares purchased should be used to determine financial interest). These courts have held that the net shares purchased analysis is preferable to a FIFO loss analysis because it excludes losses incurred on shares sold prior to the corrective disclosure which were not proximately caused by the fraud, and excludes losses caused by unrelated fluctuations in the market price of the security at issue. Unlike FIFO loss estimates – which can be heavily impacted by an investor's pre-class holdings – the net shares purchased metric focuses exclusively on an investor's net purchases transactions.

Mineworkers and British Coal cite several cases to support their contention that the movant with the greatest FIFO losses necessarily has the largest financial interest in the relief sought. However, these cases are factually distinguishable. For example, in *Erikson v. Cornerstone Propane Partners L.P.*, 2003 U.S. Dist. LEXIS 18009, at *7 (N.D. Cal. Sept. 9, 2003), the movant claiming the largest FIFO loss was unopposed and

the court simply accepted that it had the largest financial interest. Furthermore, in other more recent lead plaintiff opinions, Judge Patel – the same judge as in *Erikson* – used a retained shares analysis to determine which movant has the largest financial interest. *See e.g., Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *10-11 (N.D. Cal. Aug. 22, 2008); *Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *6 (N.D. Cal. Sept. 17, 2010). A retained shares analysis "primarily looks to shares bought during the class period that are retained at the end of the class period." *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *10. Similar to a net shares purchased analysis, a retained shares analysis excludes losses that "would later be considered uncompensable" under *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), since it would be "difficult, if not impossible, to demonstrate loss causation for shares bought *and* sold before the disclosure of the misstatements or omissions." *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *12. Under a retained shares analysis, New York Teachers also has the largest individual financial interest. Specifically, at the end of the Class Period, New York Teachers retained 148,636 shares, whereas Mineworkers retained only 134,600 shares and British Coal retained only 62,922 or 49,722 shares, using either FIFO or LIFO.

In this case, particularly given that the difference between the asserted FIFO losses of New York Teachers and Mineworkers is negligible, the Court should look to the "determinative" metric of net shares purchased or even a retained shares analysis as the most appropriate method for distinguishing the movants' financial interest and appoint New York Teachers as Lead Plaintiff.

**B.     Mineworkers And British Coal Suffer From Significant Infirmities**

Prospective lead plaintiffs must satisfy the typicality and adequacy requirements of Federal Rules of Civil Procedure 23. *Tsirekidze,* 2008 U.S. Dist. LEXIS 118562, at *10-11 (citing *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002)). A proposed lead plaintiff cannot satisfy the typicality requirement if it is "subject to a unique defense, which could become the focus of the litigation." *See id.* at *17. Further, "it is axiomatic

1  that a putative representative cannot adequately protect the class if the representative's
2  interests are antagonistic to or in conflict with the objectives of those being represented."
3  7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1768 (3d
4  ed. 1998).  The mere appearance of such a conflict is sufficient to warrant denial of a
5  motion for appointment as lead plaintiff.  *In re Peregrine Sys., Inc.*, 2002 U.S. Dist.
6  LEXIS 27690, at *33 ("[W]hether these defenses will be successful is of no matter.").

7  Even if Mineworkers and British Coal had established themselves as the presumptive lead plaintiffs (which they have not), there is significant proof that neither fund is typical and adequate and that both funds suffer from significant conflicts of interest.  Specifically, Mineworkers and British Coal suffer from conflicts of interest and are atypical based on the following facts:[2]

- The Department of Energy and Climate Change is a guarantor for both the Mineworkers' and British Coal's investment losses.  The Department of Energy and Climate Change thus ensures that the cash value of the Mineworkers' and British Coal's pension "cannot fall."  Any loss incurred by Mineworkers and British Coal is borne by the Department of Energy and Climate Change.  *See* New York Teachers' Opposition (docket #64) at 11.

- Mineworkers and British Coal concede that the guarantor relationship between the Department of Energy and Climate Change and Mineworkers and between the Department of Energy and Climate Change and British Coal gives rise to a conflict of interest for both Mineworkers and British Coal.  *Id.* at 11.

- The same Department of Energy and Climate Change authorizes, contracts and oversees the U.K.'s Microgeneration Certification Scheme ("MCS") which accredited and validated the quality and reliability of the very First Solar during the Class Period products whose quality is at issue in this litigation.  *Id.* at 11-12.

- For First Solar, accreditation through MCS was "a key prerequisite to serving the U.K. market."  *Id.* at 12.

- The Department of Energy and Climate Change had the express power to guide Mineworkers' and British Coal's investment strategies, including their investments in First Solar, because it stood to share in the gains and losses of those investments as a guarantor through a unique, complex contractual agreement.  *Id.* at 13.

- The appointments of the Mineworkers' Chairman and Chairman of the Investment Sub-committee and British Coal's Chairman and Chairman of

---

[2] A "district court has latitude as to what information it will consider in determining typicality and adequacy."  *Tsirekidze,* 2008 U.S. Dist. LEXIS 118562, at *14.

> the Investment Sub-committee require the consent of the Department of Energy and Climate Change. *See* Declaration of J. James Christian filed herewith at Exhibits A, B.

- The terms of appointment and the rate of remuneration for Mineworkers' and British Coal's trustee are set by the Department of Energy and Climate Change. *Id*.

- The Department of Energy and Climate Change has the right to remove a Mineworker or British Coal trustee from their respective Committees of Management. *Id*. at Exhibits B and C at § 5A.

Given the significant entwinement of the Department of Energy and Climate Change and Mineworkers and British Coal, as well as the Department of Energy and Climate Change's oversight over the accreditation of First Solar's products, Defendants will have a very credible argument at class certification and trial that Mineworkers and British Coal are atypical because their guarantor had specialized and different knowledge regarding First Solar's products and product problems, and thus they did not rely solely on the market price and public statements of First Solar in making their investments. At a minimum, Mineworkers and British Coal will have to devote substantial resources and time to rebutting this unique defense, which potentially gives rise to international discovery disputes and proceedings. The fact that Mineworkers and British Coal are subject to this unique defense alone is sufficient to reject them as lead plaintiffs. *In re Critical Path, Inc.*, 156 F. Supp. 2d at 1111 ("[A]lthough the [movant] has many desirable characteristics, such as its large financial interest and the fact that it took steps to interview various firms before selecting its counsel, the Court declines to appoint it as lead plaintiff. Exposure to the concerns raised by a private transaction would disserve the class that the Court is charged with protecting."); *Tsirekidze,* 2008 WL 942273, at *4; *In re Network Assocs.,* 76 F. Supp. 2d at 1030 (presumptive lead plaintiff not adequate because it "would be encumbered with the unique question whether it acquired its [] shares on better terms than the investing public and not fully in reliance on the market price."); *In re Peregrine Sys., Inc.*, 2002 U.S. Dist. LEXIS 27690, at 33 (same).[3]

---

[3] *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc*., No. 06-CV-2674-PHX-RCB, 2007 U.S. Dist. LEXIS 67354, at *7 (D. Ariz. Sept. 10, 2007) and *Hall v. Medicis Pharm. Corp*., Nos. CV-08-1821-PHX-GMS, CV-08-1870-PHX-DKD, and CV-

Mineworkers and British Coal likely will argue that their close relationship with the Department of Energy and Climate Control does not prove that they had access to or traded on non-public information provided by First Solar to the Department of Energy and Climate Change or MCS. Such proof is not required. What is required – and what New York Teachers has established – is that Mineworkers and British Coal had access to such information through their unique relationship with the Department of Energy and Climate Change. As the court explained in *In re Peregrine Systems, Inc.*:

> Whether the information to which these individuals had access would be relevant to a decision to purchase [] securities, and whether plaintiffs actually relied on such information in their decision to purchase, are difficult factual questions which cannot be resolved at this stage of the litigation. However, whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members.

2002 U.S. Dist. LEXIS 27690, at *33. Furthermore, any belated attempt by Mineworkers and British Coal to resolve this issue by submitting a declaration attesting to the purported fact that they did not rely on nonpublic information and were not influenced by the Department of Energy in purchasing First Solar securities is insufficient to cure the funds' atypicality. As the court explained in *In re Critical Path, Inc.*:

> The [movant's] conclusory statement that it did not rely on nonpublic information, made without elaboration and buttressed by insistence that the Court conduct only a cursory Rule 23 examination, fails to satisfy the Court. Appointing as lead plaintiff one who acquired its shares in a private transaction invites lengthy litigation both at the class certification stage and thereafter of whether that plaintiff is subject to unique defenses. Certainly, the Court should not appoint as lead plaintiff one who appointment will invite scrutiny of the details of a private transaction.

156 F. Supp. 2d at 1110-1111. Indeed, the "lengthy litigation" regarding Mineworkers and British Coal unique issues would be particularly costly, difficult and time-consuming

---

08-1964-PHX-JAT, 2009 U.S. Dist. LEXIS 24093 (D. Ariz. Mar. 10, 2009) (Pension Scheme Group Opp. at 3-4 (docket #63)) are inapposite. Unlike here, in *Teamsters*, there was "no evidence" that the presumptive lead plaintiff was "in any way antagonistic to, or ha[d] a conflict with, any putative member of the class." *Teamsters,* 2007 U.S. Dist. LEXIS 67354, at *19. *See also, id*. at *20 ("The record in the present case is completely void of any [] proof" that the presumptive lead plaintiff was atypical or inadequate.). Similarly, in *Hall*, there was "no conflict of interest" between the presumptive lead plaintiff and other class members, and there was "likewise no indication that [the presumptive lead plaintiff] or his counsel, will not vigorously prosecute the action on behalf of the class." *Hall*, 2009 U.S. Dist. LEXIS 24093, at *10.

for the Class, given that both funds are located in the United Kingdom and the Department of Energy and Climate Change is a British governmental agency.[4]

The relationship between the Department of Energy and Climate Change and the two United Kingdom funds also raises the issue of whether the funds have a conflict of interest with the Class and whether they will vigorously prosecute this action against a company their guarantor championed, certified, and actively encouraged as a reliable business during the Class Period. Mineworkers and British Coal likely will contend that their relationship with the Department of Energy and Climate Change is not particularly relevant, and, as such, they have no incentive not to vigorously prosecute this action. However, the evidence makes clear that the Department of Energy and Climate Change and the two funds are closely intertwined and the two funds are heavily dependent on the Department of Energy and Climate Change through a complex contractual arrangement. "[A]t the very least, [the relationship] creates the appearance that they are not able to adequately investigate and prosecute this action on behalf of the absent members of the Class . . . and are not able to act as lead plaintiffs in representing remaining class members. *In re Peregrine Systems, Inc.,* 2002 U.S. Dist. LEXIS 27690, at *34-38.

British Coal is also exposed to an obvious adequacy challenge based on the statements of its current Chairman, Phillip Read, at a National Association of Pension Funds annual conference in Liverpool in October of 2010. At that conference, Read stated that U.S. class actions are "stealing from existing shareholders" and described such actions as "ethically wrong." New York Teachers' Opp. at 15. Read went on to state that British Coal "***will not be lead plaintiffs in this kind of action***." *Id.* Read's statements affirmatively disavow the commitment made by British Coal in its Lead Plaintiff certification that it will adequately represent the interest of the Class, and significantly

---

[4] While Defendants have taken no position as to any of the movants, they have noted that there will be inherent difficulties in conducting international discovery if the two United Kingdom funds are appointed as lead plaintiffs. Docket #62, at 3; *see also Eichenholtz,* 2008 U.S. Dist. LEXIS 64633, at *32 (finding that a proposed lead plaintiff group's "physical distance from th[e] forum may create practical difficulties that may make it difficult for it to be the class representative."). This argument failed to anticipate international discovery proceedings of the funds' guarantor, a U.K. governmental entity.

call into question whether British Coal is a willing and knowing participant in this Action. At a minimum, these statements raise significant concerns regarding British Coal's desire and ability to vigorously prosecute this matter.

### C. The Pension Scheme Group Has Failed To Demonstrate Cohesion And Cannot Aggregate Losses

In light of the PSLRA's goal to limit "lawyer-driven litigation," courts in this district and throughout the country have rejected the appointment of "groups" of investors proffered by their attorneys when they have provided no evidence of how the intend to operate cohesively, and not permitted them to aggregate losses. *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15-16; *see also Apple v. LJ Int'l, Inc.*, No. CV 07-6076 GAF (JWJx), 2008 U.S. Dist. LEXIS 12618, at *12 (C.D. Cal. Feb. 8, 2008); *In re Netflix, Inc. Sec. Litig.*, Nos. 12-0225 SC and 12-1030 LHK, 2012 U.S. Dist. LEXIS 59465, at *16 (N.D. Cal. Apr. 26, 2012). Importantly, the burden is on those seeking to aggregate their losses to demonstrate that their formation was not lawyer-driven and that they form a cohesive group capable of controlling counsel and directing the litigation. *Schriver v. Impac Mortg. Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, at *25 (C.D. Cal. May 1, 2006). Further, evidence of cohesion must be submitted with a group's *opening* motion. *See id.* at *28 n. 10; *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at *16 (D. Colo. May 4, 2009).[5]

The so-called "Pension Schemes Group" has now twice failed to satisfy its burden of establishing its cohesiveness and any submission made for *the first time* on reply would be untimely. *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140-MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) is instructive. In *Eichenholtz*, three competing movants sought lead plaintiff status, two of which were groups alleging higher cumulative losses than the third, a single institutional investor. The court rejected the group alleging the largest financial interest because their joint declaration "d[id] not state any pre-existing relationships nor d[id] it clarify how the group will tackle the massive

---

[5] Relatedly, a "willingness to abandon the group only suggests how loosely it was put together." *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15-16.

coordination and strategic issues that are certain to arise in this litigation. Simply stated, this conclusory declaration has little or no substance." *Id*. at 28. The court further noted that the problems in coordinating the group would be "further compounded by language barriers, esoteric United States securities laws and problems inherent in communicating across continents." *Id.* at 30. The court likewise rejected as lead plaintiff the group alleging the second largest financial interest due to the fact that the group had provided only "scant evidence" regarding "the pre-existing relationship, the leadership and the decision-making structure of the group."[6] *Id*. at 33. Instead, the court appointed a single fund with the third largest financial interest as lead plaintiff. *Id*. at 37-38.

As in *Eichenholtz*, Mineworkers and British Coal have failed to satisfy their burden of demonstrating that they are a cohesive group capable of controlling their counsel and directing the litigation. Mineworkers and British Coal have provided no evidence – despite two separate opportunities to do so – that their "group" is capable of jointly overseeing this litigation or explained why they filed jointly now, having moved apart in other cases. Mineworkers and British Coal have not even bothered to submit a declaration detailing how they plan to tackle the massive coordination and strategic issues that are certain to arise in this litigation. For instance, they have failed to indicate how they will resolve differences among the group effectively to avoid impasse, how often they plan to meet to discuss the litigation, whether and who from the funds will attend hearings and meetings in the United States, and how and when they will communicate with U.S. counsel. This failure is particularly acute here given that Mineworkers has moved for appointment as lead plaintiff on a number of occasions without British Coal and there is no evidence that Mineworkers or British Coal have *jointly* negotiated a fee agreement with their chosen counsel. *See* New York Teachers' Opposition at 9-10.

Mineworkers and British Coal may attempt to argue (belatedly) that their "Pension Scheme Group" is appropriate because they share certain characteristics, including that

---

[6] The court also noted that one of the members of this group may be subject to a unique defense due to a lack of reliance on the defendant company's statements and the market price of the defendant company's stock. *Id*. at 33-34.

1 they share certain staff and trustees, are both U.K. coal pension schemes and are both
2 guaranteed and controlled by the Department of Energy and Climate Change. However,
3 these shared characteristics do not explain how Mineworkers and British Coal plan to
4 jointly oversee or handle divergent views regarding *this litigation*. *See e.g., In re*
5 *Peregrine Sys., Inc.*, 2002 U.S. Dist. LEXIS 27690, at *33 ("The declaration[] offered
6 here … [is] insufficient to demonstrate the absence of issues unique to it which may
7 sidetrack litigation at a later stage."). As explained in New York Teachers' Opposition
8 and above, certain of Mineworkers and British Coal's shared characteristics – including
9 that they are both guaranteed and controlled by the Department of Energy and Climate
10 Change – actually result in both Mineworkers and British Coal's being atypical.
11 Moreover, these shares characteristics do not ameliorate the undeniable conflict between
12 Mineworkers and British Coal regarding the utility of class actions such as this one.
13 Specifically, as discussed above, British Coal has unequivocally stated its opposition to
14 U.S. securities class action litigation and has publicly declared that such actions are
15 "ethically wrong," while conversely Mineworkers has moved for appointment as lead
16 plaintiffs on a number of occasions. Given this divergence of opinion regarding the
17 utility of class actions, it will be extremely difficult, if not impossible, for Mineworkers
18 and British Coal to effectively and efficiently handle the prosecution of this Action. No
19 amount of shared characteristics can overcome such a critical divergence of opinion.

20     **D.**     **New York Teachers Satisfies The Rule 23 Requirements**

21     None of the other movants have offered any proof – or even challenged – New
22 York Teachers' typicality and adequacy. Accordingly, New York Teachers respectfully
23 submits that it should be appointed as Lead Plaintiff.

24 **CONCLUSION**

25     New York Teachers has the largest individual financial interest of any qualified
26 movant in this Action and satisfies the adequacy and typicality requirements of Rule 23.
27 Accordingly, New York Teachers is entitled to the presumption of Lead Plaintiff.
28

| | | |
|---|---|---|
| 1 | Dated: June 11, 2012 | Respectfully submitted, |
| 2 | | TIFFANY & BOSCO P.A. |
| 3 | | */s/ J. James Christian* |
| 4 | | Richard G. Himelrick (# 004738) (rgh@tblaw.com) |
| 5 | | J. James Christian (# 023614) (jjc@tblaw.com) |
| 6 | | Third Floor Camelback Esplanade II 2525 East Camelback Road |
| 7 | | Phoenix, AZ 85016-9240 Tel: (602) 255-6000 |
| 8 | | Fax: (602) 255-0103 |
| 9 | | Salvatore Graziano |
| 10 | | (salvatore@blbglaw.com) Gerald H. Silk |
| 11 | | (jerry@blbglaw.com) Laura H. Gundersheim |
| 12 | | (laurag@blbglaw.com) 1285 Avenue of the Americas, 38th Floor |
| 13 | | New York, NY 10019 Tel:   (212) 554-1400 |
| 14 | | Fax:   (212) 554-1444 |
| 15 | | *Counsel for NYSTRS and Proposed Lead Counsel for the Class* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I will mail the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.  I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ J. James Christian*
J. James Christian