**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Smilovits, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>First Solar, Inc., Michael J. Ahearn, Robert J. Gillette, Mark R. Widmar, Jens Meyerhoff, and James Zhu,<br><br>Defendants. | No. CV12-0555 PHX DGC<br><br>**ORDER** |

This is a securities fraud class action brought on behalf of all persons who purchased the common stock of Defendant First Solar, Inc. between April 30, 2008 and February 28, 2012. Various potential lead plaintiffs have filed motions to be appointed lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The motions have been fully briefed, and the Court held a hearing on July 17, 2012. For the reasons that follow, the lead plaintiffs in this case will be Mineworkers' Pension Scheme and British Coal Staff Superannuation Scheme (collectively "Pension Schemes," individually "Mineworkers" and "British Coal").

**I.  Procedure.**

The PSLRA instructs district courts to select the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The statute makes clear that the most capable plaintiff is the one who has the greatest financial stake in the outcome of the case and who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Ninth Circuit has identified a three-step process for selecting a lead plaintiff.  *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).

First, the pendency of the action, the claims made in the action, and the proposed class period must be published in a national business-oriented publication or wire service.  15 U.S.C. § 78u-4(a)(3)(A)(i).  The notice must state that any member of the proposed class may file a motion to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Second, the district court must consider the losses allegedly suffered by the various proposed lead plaintiffs and identify the one who has "the largest financial interest in the relief sought by the class" and who "otherwise satisfies the requirements of Rule 23[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This plaintiff presumptively becomes the most adequate plaintiff.  *Id.*

Third, the district court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements."  *Cavanaugh*, 306 F.3d at 730.  The statute makes clear that more than arguments are required to rebut the presumption – it may be rebutted "only upon *proof* by a member of the purported plaintiff class" that the presumptive plaintiff will not adequately and fairly protect the interests of the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).

**II.     Step One.**

All parties agree that the notification requirement of the statute has been satisfied.  The notice was published on March 16, 2012.  In response, seven plaintiffs filed motions to be designated lead plaintiff.

After reviewing each other's submissions, five of the proposed lead plaintiffs conceded that they did not have the largest financial interest in the case and therefore effectively withdrew their motions (Docs. 21, 23, 27, 31, 34).  As a result, these motions

will be denied.

### III. Step Two.

#### A. Largest Financial Interest.

Two plaintiffs or groups of plaintiffs remain, each claiming to be the presumptive lead plaintiff in this case. Pension Schemes assert that they lost more than $24 million as a result of the alleged securities fraud. Pension Schemes have submitted the certification required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(2)(A). Pension Schemes have also identified the law firms of Robbins, Geller, Rudman & Dowd, LLP as lead counsel and Bonnett Fairbourn Friedman & Balint, P.C. as liaison counsel, asserting that both firms possess substantial class litigation experience and expertise.

Plaintiff New York State Teachers' Retirement System ("Retirement System") asserts that it lost approximately $17.4 million as a result of the alleged securities fraud. Retirement System has also provided the certification required by the PSLRA, and has identified the law firms of Bernstein Litowitz Berger & Grossman, LLP as lead counsel and Tiffany & Bosco, P.A. as local counsel, asserting that these firms also have substantial securities fraud litigation experience and expertise.

Although at first blush it would appear that Pension Schemes have the largest financial stake in this class action, Retirement System makes a number of arguments against this conclusion. Retirement System argues that the Court should not aggregate the losses suffered by Mineworkers and British Coal, but should consider their losses separately. If this is done, the loss of Mineworkers still exceeds the loss of Retirement System by more than $500,000 – $17,883,926 for Mineworkers and $17,381,426 for Retirement System. Noting that the difference between these losses amounts to only 2.9%, Retirement System argues that the losses are essentially equal and that Mineworkers therefore does not have the greatest financial interest in this litigation.

Retirement System then argues that a more accurate measure of financial exposure in this case is the "net shares purchased," which amounts to the total shares purchased by a plaintiff during the class period minus shares sold by that plaintiff during the same

period. Under this measure, Retirement System asserts that it has 139,436 in net shares purchased compared to 134,600 for Mineworkers and 53,682 for British Coal. Using these numbers, and separating the holdings of Pension Schemes, Retirement System argues that it has the greatest financial interest in the litigation and should be the presumptive lead plaintiff.

The Court is not persuaded. The PSLRA specifically states that the presumptive lead plaintiff shall be "the person *or group of persons* that . . . has the largest financial interest in the relief sought by the class" and that "otherwise satisfies the requirements of Rule 23[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). Thus, the statute itself makes clear that the losses of a group may be considered in determining the largest financial interest. Retirement System cites no authority from the Ninth Circuit, or any other Court of Appeals for that matter, suggesting that the losses of a group of persons cannot be aggregated for purposes of identifying a lead plaintiff under the PSLRA. When aggregated, Pension Schemes' losses and net shares purchased exceed the losses and net shares purchased of Retirement System by a considerable margin ($24 million in losses to $17.4 million, 188,282 net shares to 139,436). Thus, under the second step identified in *Cavanaugh*, the Court concludes that Pension Schemes have the largest financial interest in the relief sought by the class and therefore constitute the presumptive lead plaintiffs under the statute.[1]

### B.     Rule 23 Requirements.

At step two, a potential lead plaintiff must make a prima facie showing that it satisfies the typicality and adequacy requirements of Rule 23. *Cavanaugh*, 306 F.3d at 730, 731 n. 6. The test for typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named

---

[1] Retirement System cites several district court cases which rejected proposed groups of lead plaintiffs because those groups were not shown to be cohesive and capable of managing class litigation. *See* Doc. 64 at 13-14. Retirement System argues that Mineworkers and British Coal have divergent interests and inherent conflicts that make them an inappropriate group as well. The Court disagrees with this assertion for reasons explained later in this order.

plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). By showing that they purchased publicly traded shares of First Solar during the class period, Pension Schemes has made a prima facie showing of typicality. The test for adequacy asks whether conflicts exist between the representative and class interests and whether the representative and its attorneys are able to prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Pension Schemes has made a prima facie showing of adequacy by their public purchases of First Solar stock during the class period, a fact which places them on the same footing as other members of the class, and by retaining highly experienced securities fraud and class litigation counsel.

### C.    Step Two Conclusion.

Pension Schemes have the largest financial interest in the relief sought by the class and satisfy the relevant requirements of Rule 23. As a result, Pension Schemes are the presumptively most adequate plaintiffs under the statute. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

## IV.    Step Three.

Retirement System makes several arguments in support of its claim that Pension Schemes "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses that render [them] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Court will address these arguments separately.

### A.    Allegedly Divergent Interests.

Retirement System cites a statement made by the chairman of British Coal's board of trustees at a 2010 conference suggesting that U.S. securities class actions are ethically wrong and amount to stealing from existing shareholders. Attributing this view to all of British Coal, Retirement System suggests that British Coal will be a reluctant participant in this litigation and may well have divergent views from Mineworkers when it comes to managing the litigation. Retirement System also argues that Mineworkers and British Coal have never joined forces to act as lead plaintiffs before and that these entities have

- 5 -

failed to provide any evidence they can work well together.

Pension Schemes responds by arguing that the statement attributed to a member of British Coal's board of trustees is taken out of context by Retirement System. At the same 2010 conference, the quoted trustee stated that he recognized a difference between the risks shareholders take as part of the normal "investing process" and "concealed risk – such as fraudulent activity." Doc. 73-1 at 2.[2] The trustee asserted that "it is absolutely right to punish any wrongdoing" when fraudulent activity occurs. *Id.* Retirement System's counsel argued at the hearing that this statement refers to punishment through government regulatory activity, not civil securities fraud litigation, but he admitted that he has no further context for the statement and he cited no further evidence to support his interpretation. Thus, the Court is left with a somewhat ambiguous statement made by one trustee of British Coal. This ambiguous statement does not, in the Court's view, amount to proof that British Coal as an enterprise is disinterested in this litigation or will pursue a strategy divergent from Mineworkers. Indeed, a declaration provided by Pension Schemes in response to these arguments explains that the trustee who spoke at the 2010 conference is one of eight trustees on British Coal's board, and that no individual trustee on that board objected to the Pension Schemes' decision to prosecute this case. Doc. 73 at 4.

The same declaration also explains that Mineworkers and British Coal are closely related and coordinated entities; that they are occupational pension schemes established more than 50 years ago for employees of the United Kingdom coal mining industry; that they jointly own the Coal Pension Trustees Services Limited ("CPT"), which serves as the joint executive for Mineworkers and British Coal; that CPT provides both entities with executive support, risk management, accounting, strategic advice, and management of legal advisors; and that these executive functions are performed in the same offices for both entities. Doc. 73 at 2-3. Given this unrebutted evidence of a close relationship and

---

[2] Citations are to page numbers at the top of the Court's CMECF documents as they appear in the Court's docket, not to page numbers on the original document.

- 6 -

joint management, the Court cannot conclude that Mineworkers and British Coal are incapable of working together in the prosecution of this case or that their interests are so divergent as to suggest they cannot adequately represent the class.

### B.     Alleged Non-Market Information.

In its initial opposition papers, Retirement System argued that the United Kingdom's Department of Energy and Climate Change ("DECC") "controls" Pension Schemes "and their investment strategy." Doc. 64 at 15. Retirement System also argued that DECC "publicly certified the reliability of the very product at the heart of this litigation." *Id.* Specifically, Retirement System argued that DECC certified the First Solar product that allegedly caused the warranty losses in this case. *Id.*

Pension Schemes responded in their memorandum and at the hearing with evidence that DECC has had no investment control over Mineworkers or British Coal since 2005; that DECC did not certify any First Solar product, but that the certification instead was done by MCS, an industry-related group governed by a 24-person steering group, only two of whom were from DECC; and that the First Solar product certified was not produced until 2011, well after the 2008-2009 products at issue in this litigation. Doc. 71 at 14-15.

In reply, Retirement System shifted its argument. It asserted at the hearing that Mineworkers purchased most of its First Solar stock in March of 2011, only three months before the First Solar products were certified, and implied that First Solar made this purchase on the basis of information it received from MCS about the impending certification of First Solar products. Retirement System argues that Defendants will be able to argue that Mineworkers relied on non-market information and therefore cannot assert a fraud-on-the-market claim like the rest of the class.

This argument asks the Court to assume too much. Retirement System has provided no evidence that Mineworkers had inside information, or any other form of non-public information, about the MCS certification of First Solar products that occurred in 2011. To the contrary, counsel for Pension Schemes, after consulting with his client in

the courtroom, avowed that no representative of Pension Schemes sits on the MCS steering group or on the MCS group that certified the First Solar products. The Court cannot assume from the mere timing of Mineworkers' stock purchases that it was acting on the basis of non-public information.

In response to Pension Scheme's evidence that the certification related to a 2011 product and not to the 2008-2009 products identified in the complaint, counsel for Retirement System asserted that the certification included other products, the dates of which he could not precisely identify, but that the complaint in this case would be expanded in any event to include all products manufactured by First Solar. In making the lead plaintiff determination, however, the Court must be guided by the allegations of the current complaint. The Court cannot conclude that the presumptive lead plaintiff is an inadequate representative because a would-be lead plaintiff speculates about possible expansion of the complaint.

In short, Retirement System has failed to provide "proof" as required by the PSLRA that Pension Schemes would inadequately represent the class, or that its claims are not typical of the class. Speculation does not satisfy an objector's burden in overcoming the presumption established by the PSLRA. *In re Regions Morgan Keegan Closed-End Fund Litigation*, 2010 WL 5173851 at \*6 (W.D. Tenn. Dec. 15, 2010) ("The statute's language requires any objector to present 'proof' of these deficiencies, emphasizing that speculative defects are not enough to defeat the presumption.").

### C. Fee Agreement.

Retirement System argued in its opposition papers that Pension Schemes had presented no evidence that it had entered into a fee agreement with its counsel prior to applying for the role of lead plaintiff. Pension Schemes responded by presenting a declaration that they had in fact negotiated and executed a fee agreement with counsel before the motion for appointment as lead plaintiff was filed, and that the fee agreement is structured to generate the maximum recovery for the plaintiff class. Doc. 73 at 4. In light of this evidence, Retirement System did not press this point at the hearing.

### D. Comparative Arguments.

Throughout its papers, Retirement System makes various arguments to suggest that it would be a superior lead plaintiff. It asserts, for example, that it purchased more First Solar stock in the aggregate than Pension Schemes, that it manages a much larger portfolio than Pension Schemes, that it is located in the United States and therefore is readily accessible to the Court, and that it will not present the issues described above. As the Ninth Circuit has explained, however, once the presumption is triggered, "'the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a "fair and adequate" job.'" *Cavanaugh*, 306 F.3d at 732 n.10 (quoting *In Re Cendant Corp. Litigation*, 264 F.3d 201, 268 (3rd Cir. 2001)) (brackets and ellipses omitted; emphasis in original). Thus, the question to be answered by the Court is not whether Retirement System would be a better lead plaintiff than Pension Schemes, but whether Retirement System has presented proof to overcome the presumption established by the PSLRA. For reasons described above, the Court concludes that it has not.

**IT IS ORDERED:**

1. Pension Scheme's motion for appointment as lead plaintiff (Doc. 36) is **granted**.
2. All other motions for appointment of lead plaintiffs (Docs. 21, 23, 27, 31, 33, 34) are **denied**.
3. On or before **August 17, 2012**, lead plaintiff shall file an amended complaint. On or before **September 14, 2012**, Defendants may file a motion to dismiss. Briefing on the motion to dismiss shall proceed in accordance with the Court's Local Rules.
4. Counsel for lead plaintiff and counsel for Defendants shall confer and, on or before **August 17, 2012**, advise the Court concerning which of the

attached lists of cost-saving steps the parties will adopt in this case.

Dated this 23rd day of July, 2012.

_____
David G. Campbell
United States District Judge

Possible Cost Saving Measures

1. As to any discovery dispute, the lead lawyers will try to resolve by phone and no one will write letters to the other, only e-mails and phone calls.

2. Depositions will be taken by agreement, with both sides alternating and trying in advance to agree upon the dates for depositions, even before the deponents are identified.

3. The parties will use the same court reporter/videographer, who agrees to provide specified services at discounted prices for the right to transcribe all depositions.

4. All papers will be served on the opposing party by e-mail.

5. Documents will be produced on a rolling basis as soon as they have been located and numbered; if copies are produced, the originals will be made available for inspection upon request.

6. If agreement cannot be reached on the form of a protective order within 48 hours of the time they are exchanged, the parties will call the Court and, without argument, ask Court to select one or the other.

7. All deposition exhibits will be numbered sequentially regardless of the identity of the deponent or the side introducing the exhibit and the same numbers will be used in pretrial motions and at trial.

8. The parties will share the expense of imaging all deposition exhibits.

9. If issues arise regarding privilege logs, each side will have the right to select 10 documents from the other's privilege list for submission to the court for in camera inspection.