Jordan Eth (CA SBN 121617) *(Admitted pro hac vice)*
Anna Erickson White (CA SBN 161385) *(Admitted pro hac vice)*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000
JEth@mofo.com
AWhite@mofo.com

Maureen Beyers, Arizona Attorney No. 017134
OSBORN MALEDON, P.A.
2929 North Central Avenue
Phoenix, AZ 85012-2793
(602) 640-9000
mbeyers@omlaw.com

Attorneys for Defendants
First Solar, Inc., Michael J. Ahearn, Robert J. Gillette,
Mark R. Widmar, Jens Meyerhoff, James Zhu,
Bruce Sohn, and David Eaglesham

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Smilovits, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>First Solar, Inc., Michael J. Ahearn, Robert J. Gillette, Mark R. Widmar, Jens Meyerhoff, James Zhu, Bruce Sohn, and David Eaglesham,<br><br>Defendants. | Case No.   CV12-00555-PHX-DGC<br><br><br>**OPPOSITION TO LEAD PLAINTIFFS' MOTION TO LIMIT CONFIDENTIALITY AGREEMENTS**<br><br>**(Oral Argument Requested)** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................. 5

I.  PLAINTIFFS LACK STANDING AND SEEK AN
    IMPERMISSIBLE ADVISORY OPINION. .................................................... 5

    A.  Plaintiffs Lack Standing To Bring This Motion............................... 5

    B.  Plaintiffs Seek An Impermissible Advisory Opinion....................... 8

II. PLAINTIFFS' REQUESTED RELIEF IGNORES RULE 4.2. .......................... 9

    A.  Arizona Rule of Professional Conduct 4.2 Prohibits *Ex Parte*
        Communications With Some Former Employees. ............................ 9

    B.  First Solar Properly Advised Its Former Employees. ................... 10

III. FIRST SOLAR'S CONFIDENTIALITY AGREEMENTS AND
     LETTER DO NOT VIOLATE PUBLIC POLICY. ................................. 12

    A.  Plaintiffs' Argument Ignores the Reform Act. ............................. 12

    B.  Plaintiffs' Remaining "Public Policy" Arguments Are
        Irrelevant. ..................................................................................... 15

CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Wright,*
    468 U.S. 737 (1984) ................................................................................................ 7

*Amari Co., Inc. v. Burgess,*
    546 F. Supp. 2d 571 (N.D. Ill. 2008) ........................................................... 16

*Arizona v. Countrywide Fin. Corp.*
    No. CV 2010-033580 (Ariz. Sup. Ct. Aug. 10, 2011) ................................. 10

*Belmont Holdings Corp. v. Suntrust Banks, Inc.,*
    No. 09-1185, 2012 U.S. Dist. LEXIS 135749 (N.D. Ga. Aug. 28, 2012) .................. 14

*Campo v. Sears Holdings Corp.,*
    635 F. Supp. 2d 323 (S.D.N.Y. 2009) .......................................................... 14

*Chambers v. Capitol Cities/ABC,*
    159 F.R.D. 441 (S.D.N.Y. 1995) ...................................................... 7, 12, 17

*City of Livonia Emps.' Ret. Sys. v. Boeing Co.,*
    No. 09-7143, 2011 U.S. Dist. LEXIS 22347 (N.D. Ill. Mar. 7, 2011) ...................... 14

*Cooper Tire & Rubber Co. v. Farese,*
    423 F.3d 446 (5th Cir. 2005) ......................................................................... 16

*Gugle v. Loeser,*
    143 Ohio St. 362 (1944) ................................................................................ 15

*Higginbotham v. Baxter Int'l Inc.,*
    495 F.3d 753 (7th Cir. 2007) ........................................................................ 13

*Hoffman v. Sbarro, Inc.,*
    No. 97-4484, 1997 U.S. Dist. LEXIS 18908 (S.D.N.Y. Nov. 26, 1997) .................... 12

*In re CFS-Related Sec. Fraud Litig.,*
    179 F. Supp. 2d 1260 (N.D. Okla. 2001) ..................................................... 15

*In re Flir Sys., Inc. Sec. Litig.,*
    No. 00-360, 2000 U.S. Dist. LEXIS 19391 (D. Or. Dec. 13, 2000) .......................... 15

*In re JDS Uniphase Corp. Sec. Litig.,*
    238 F. Supp. 2d 1127 (N.D. Cal. 2002) .............................................. 7, 14, 17

ii

*In re Par Pharm. Sec. Litig.*,
  No. 06-3226, 2009 U.S. Dist. LEXIS 90602 (D.N.J. Sept. 30, 2009) ........................ 14

*In re Rigel Pharms., Inc. Sec. Litig.*,
  No. 10-17619, 2012 U.S. App. LEXIS 18743 (9th Cir. Sept. 6, 2012) ........................ 8

*In re Spectrum Brands, Inc. Sec. Litig.*,
  No. 05-2494, 2007 U.S. Dist. LEXIS 36568 (N.D. Ga. May 18, 2007)................. 9, 12

*In re Star Gas Sec. Litig.*,
  745 F. Supp. 2d 26 (D. Conn. 2010) ........................................................................ 14

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
  537 F.3d 527 (5th Cir. 2008) ...................................................................................... 13

*Kaiser v. Am. Telephone & Telegraph*,
  No. 00-724, 2002 U.S. Dist. LEXIS 25768 (D. Ariz. Apr. 5, 2002) .......................... 10

*Kensington Int'l Ltd. v. Republic of Congo*,
  No. 03-4578, 2007 WL 2456993 (S.D.N.Y. Aug. 24, 2007)...................................... 11

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
  674 F. Supp. 2d 483 (S.D.N.Y. 2009)................................................................*passim*

*Lang v. Superior Court*,
  170 Ariz. 602 (1992) .................................................................................................... 9

*Lifschitz v. Nextwave Wireless, Inc.*,
  No. 08-1697, 2011 U.S. Dist. LEXIS 26910 (S.D. Cal. Mar. 16, 2011) .................... 13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................. 5, 6

*McGrane v. Reader's Digest Ass'n Inc.*,
  822 F. Supp. 1044 (S.D.N.Y. 1993)........................................................................... 12

*Nalco Chem. Co. v. Hydro Techs. Inc.*,
  984 F.2d 801 (7th Cir. 1993) ...................................................................................... 16

*North Carolina v. Rice*,
  404 U.S. 244 (1971) ..................................................................................................... 8

*Patton v. Cox*,
  276 F.3d 493 (9th Cir. 2002) ...................................................................................... 16

*PepsiCo, Inc. v. Redmond*,
  54 F.3d 1262 (7th Cir. 1995) ...................................................................................... 15

iii

*Powers v. Eichen*,
 961 F. Supp. 233 (S.D. Cal. 1997) ............................................................................. 13

*Revere Transducers, Inc. v. Deere & Co.*
 595 N.W.2d 751 (Iowa 1999) ..................................................................................... 16

*SG Cowen Sec. Corp. v. U.S.D.C.*,
 189 F.3d 909 (9th Cir. 1999) ............................................................................... 12, 15

*Structural Dynamics Research Corp. v. Engineering Mechs. Research Corp.*,
 401 F. Supp. 1102 (E.D. Mich. 1975) ....................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) .................................................................................................... 13

*Uniroyal Goodrich Tire Co. v. Hudson*,
 No. 95-1130, 1996 U.S. App. LEXIS 25322 (6th Cir. Sept. 12, 1996) ...................... 15

*Upjohn Co. v. Aetna Cas. & Sur. Co.*,
 768 F. Supp. 1186 (W.D. Mich. 1991) ...................................................................... 11

*Williams v. Hewitt Assocs., LLC*,
 No. 02-3562, 2003 U.S. Dist. LEXIS 20310 (N.D. Ill. Nov. 7, 2003) ....................... 11

*Winston Research Corp. v. Minn. Mining & Mfg. Co.*,
 350 F.2d 134 (9th Cir. 1965) ..................................................................................... 15

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ............................................................................... 13, 14

iv

**STATUTES, & REGULATIONS & RULES**

15 U.S.C. § 78u-4(b) ......................................................................... 12

76 Fed. Reg. 34300-01,
    SEC Release No. 64545, 2011 WL 2045838 (May 25, 2011).................................. 17

Arizona Rules of Professional Conduct
    Rule 3.4 ......................................................................................... 11
    Rule 4.2 .................................................................................... 1, 9, 10

Model Rules of Professional Conduct
    Rule 3.4 ......................................................................................... 10

LRCiv
    Rule 7.2 ........................................................................................... 5
    Rule 83.1 ......................................................................................... 9
    Rule 83.2 ......................................................................................... 9

*All quotations and internal citations are omitted unless otherwise indicated.

# INTRODUCTION

Six months after the initial complaint was filed in this action, five months after hiring a private investigator, three weeks after filing their First Amended Complaint ("FAC"), and three days before Defendants filed their motion to dismiss, Plaintiffs brought this motion to limit First Solar's confidentiality agreements with its former employees, alleging "time is of the essence."

Plaintiffs claim their investigator spoke to "approximately" 51 former First Solar employees.  Of those, "approximately" seven former employees—only one of whom they identify—allegedly would not agree to speak with Plaintiffs because of letters received from First Solar or confidentiality agreements that those employees had entered into with First Solar.  On that basis alone, Plaintiffs seek an order limiting the scope of *all* of First Solar's confidentiality agreements so as to permit *any* former employee to discuss the allegations of the complaint with Plaintiffs.  Plaintiffs' motion fails for at least three reasons.

First, Plaintiffs—who are not parties to the agreements—do not have standing to challenge the scope of the confidentiality agreements.  Plaintiffs fail to meet their burden of providing admissible evidence to support a showing that they have suffered any actual injury.  Although they submit one confidentiality agreement, they redact information showing when it was entered into or who signed it, if anyone.  Plaintiffs also ask this Court to issue an impermissible advisory opinion based upon a hypothetical set of facts.

Second, by requesting a broad order invalidating confidentiality agreements as to all former First Solar employees, Plaintiffs seek to circumvent Arizona Rule of Professional Conduct 4.2.  Rule 4.2, as interpreted by Arizona courts, prohibits *ex parte* communications with a former employee if "the acts or omissions of the former employee gave rise to the underlying litigation."  A ruling from this Court, allowing Plaintiffs' counsel to talk to any former employee irrespective of position or role at First Solar, would contravene Rule 4.2.

Finally, the purpose of the Private Securities Litigation Reform Act's heightened

1

1   pleading standards and discovery stay is to deter the filing of frivolous lawsuits with the

2   hope of later finding a basis for a sustainable claim.  Especially given that Plaintiffs have

3   failed to allege anything even approaching securities fraud, there is no policy basis for this

4   Court to limit all of First Solar's confidentiality agreements, with all of its former

5   employees, as they relate to the allegations in the FAC.

6   **BACKGROUND**

7        On February 28, 2012, First Solar announced its results for the fourth quarter 2011.

8   Among other things, the Company announced lower-than-expected revenue and earnings

9   and reduced 2012 revenue guidance below analyst estimates in light of the decline of the

10   entire solar industry.  The Company also announced a $125.8 million charge to reflect an

11   updated estimate of costs related to its efforts to remediate a manufacturing excursion that

12   had occurred in 2008 and 2009, and a $37.8 million charge to its warranty reserve to

13   account for potentially increased failure rates in hot climates.[1]  The Company's stock

14   dropped 11% the next day.  (FAC (Dkt. No. 93) ¶ 238.)

15        Just two weeks later, on March 15, 2012, a securities class action complaint was

16   filed in this Court, alleging that First Solar and several of its current and former officers

17   had engaged in a four-year scheme to defraud investors.  (Dkt. No. 1.)  The complaint did

18   not include a single particularized allegation of wrongdoing, nor did it include allegations

19   from any confidential witnesses.  (*Id.*)

20        After learning that private investigators had already started to contact its former

21   employees, First Solar sent a letter to certain of its former employees on March 28, 2012.

22   (Declaration of Jason A. Forge (Dkt. No. 101) Exhibit 1 ("Forge Decl. Ex. __").)  The

23   letter—addressed to non-lawyers—explained that they may be contacted by lawyers

24   interested in suing First Solar and by private investigators hired by them, but that they

25   were not required to speak with them.  (*Id.*)  The letter reminded the former employees

26    

27       [1] Additional background information is contained in First Solar's Motion to Dismiss the First Amended Complaint.  (Dkt. No. 102.)

28    

2

1   that "[i]f [they] do happen to speak to" the "lawyers or investigators," they could not

2   disclose confidential, proprietary, trade secret, or privileged information regarding First

3   Solar pursuant to their confidentiality agreements.  (*Id*.)  The letter informed these

4   employees that the same restrictions applied if they received press inquiries.  (*Id*.)

5   **The FAC**

6          Two weeks after the initial complaint was filed, on or about March 30, 2012,

7   Plaintiffs' counsel retained L.R. Hodges & Associates, Ltd. ("LRH&A") "to assist its

8   investigation of" First Solar.  (Forge Decl. Ex. 6 ¶ 2.)  Over a five-and-a-half-month

9   period, LRH&A contacted "approximately" 51 former First Solar employees,

10  "approximately" 25 of whom were willing to speak to Plaintiffs' investigators.  (*Id*. ¶ 3.)

11         On August 17, 2012, Plaintiffs filed the FAC.  According to Plaintiffs, the warranty

12  charges announced on February 28 revealed a four-year fraud, orchestrated by First Solar

13  and seven of its current and former officers (the "Individual Defendants") to understate

14  and misrepresent the Company's warranty reserves and to improperly recognize revenue.

15  (FAC ¶¶ 20-48.)  Plaintiffs claim that the entire "scheme" was designed to manipulate a

16  non-GAAP metric known as cost-per-watt.

17         The FAC includes allegations from only ten of the former employees Plaintiffs

18  contacted.  As Defendants explain in their Motion to Dismiss, not one of the former

19  employees claims that any of First Solar's publicly reported numbers was inaccurate.

20  Moreover, six of the ten former employees fail even to mention the Individual

21  Defendants.  Of the remaining four, none alleges that any Individual Defendant possessed

22  any information that contradicted any of the Company's public statements.

23  **Plaintiffs' Present Motion**

24         On Thursday, September 6, a week before First Solar's motion to dismiss the FAC

25  was due, and *more than five months* after LHR&A started contacting former First Solar

26  employees, counsel for First Solar received an email from Plaintiffs' counsel requesting a

27  letter from the Company that "expressly permits former employees to discuss with

28  representatives of Lead Plaintiffs" the allegations set forth in the FAC.  (Forge Decl.

3

1    Ex. 3.)  Plaintiffs' counsel requested a response by the close of business *the following*

2    *day*.  (*Id*.)  According to Plaintiffs' counsel, "time [was] of the essence" "[i]n light of First

3    Solar's impending motion to dismiss."  (*Id*.)

4         On Tuesday, September 11, without attempting to call First Solar's counsel or have

5    any further communications with them, Plaintiffs filed this Motion "to limit

6    confidentiality agreements" (the "Motion").  Plaintiffs include only one redacted

7    confidentiality agreement.  (Forge Decl. Ex. 2.)  They do not identify which former

8    employee signed the agreement, what that employee's role was, when that employee

9    worked at First Solar, or when the agreement was executed.

10        Plaintiffs submit a declaration from a private investigator claiming that

11   "approximately" seven former employees were "interested in talking to [him] about First

12   Solar," but declined to do so "due to their confidentiality agreements with, *and/or* letters

13   they had received from, First Solar."  (Forge Decl. Ex. 6 ¶ 3 (emphasis added).)  The

14   declaration provides no details regarding who those former employees are, or what

15   information those former employees could provide.

16        Plaintiffs also include a declaration submitted by Georgette Gillen, "First Solar's

17   Financial Planning and Analysis Manager from September 2008 through August 2011."

18   (Forge Decl. Ex. 5.)  Ms. Gillen claims that "she was responsible for calculating the cost-

19   per-watt calculations," and that she "possess[es] information that is relevant to certain of

20   the allegations" in the FAC.  (*Id*. ¶¶ 1, 6.)  Neither Ms. Gillen nor Plaintiffs address

21   whether the information she would provide is confidential or proprietary.  Plaintiffs do not

22   attach her confidentiality agreement.  Ms. Gillen is currently represented by counsel, who

23   apparently has advised her not to speak with Plaintiffs' counsel in light of her agreement

24   with First Solar.  (Forge Decl. ¶ 2.)  Ms. Gillen has not initiated any proceeding to limit

25   the scope of her confidentiality agreement.

26        Based upon this, Plaintiffs ask the Court for a broad order limiting the scope of all

27   of First Solar's confidentiality agreements with all former employees to allow Plaintiffs'

28   counsel to speak with all former employees freely about the FAC's wide-ranging

4

1  allegations.  The only limitation Plaintiffs propose is an order preventing them from

2  publicly disclosing any of the information they obtain.

3                                        **ARGUMENT**

4          Plaintiffs claim that First Solar's confidentiality agreements are contrary to public

5  policy because they prevent former employees from voluntarily disclosing facts relating to

6  the alleged fraud.  Plaintiffs are wrong for three independent reasons.  First, Plaintiffs

7  have not met basic threshold requirements to bring this Motion.  Second, they ignore

8  controlling Arizona law, which prohibits *ex parte* contacts with persons whose acts or

9  omissions in connection with the matter may be imputed to the organization.  Third,

10  confidentiality agreements are routinely upheld, and there is no public policy reason

11  sufficient to invalidate them, particularly in the context of the Reform Act.

12  **I.     PLAINTIFFS LACK STANDING AND SEEK AN IMPERMISSIBLE
        ADVISORY OPINION.**

13

14          Plaintiffs have failed to provide any admissible evidence to support a showing that

15  they have suffered any injury, and thus lack standing.  In addition, by failing to identify

16  the terms of the various confidentiality agreements that First Solar's employees may have

17  signed, Plaintiffs ask this Court to issue an advisory opinion based upon a hypothetical set

18  of facts.  Plaintiffs' overbroad request should be denied on those bases alone.[2]

19          **A.     Plaintiffs Lack Standing To Bring This Motion.**

20          To establish standing, Plaintiffs must have suffered an "injury in fact," which is

21  "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

22  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  It also must be "likely" that a

23  favorable decision by the court will redress the injury.  *Id.* at 561.  Plaintiffs bear the

---

25          [2] The Court can dispose of this Motion on other grounds as well.  First, the Motion
26  violates LRCiv 7.2(e) in that it exceeds seventeen pages, allowing this Court to "dispose
    of the motion summarily."  LRCiv 7.2(i).  Second, to the extent the Court deems this a
    discovery motion, it violates LRCiv 7.2(j), as Plaintiffs failed to make "personal
27  consultation and sincere efforts" to resolve the matter.  One email establishing a 27-hour
    deadline to respond does not constitute a "sincere effort."  *Id.*

28

sf-3199827

1    burden of establishing standing, and "cannot rely on mere allegations; there must be

2    admissible evidence to adequately support standing." *Kuriakose v. Fed. Home Loan*

3    *Mortg. Co.*, 674 F. Supp. 2d 483, 491 (S.D.N.Y. 2009) (addressing standing in this same

4    context). *See also Lujan*, 504 U.S. at 561.

5         With the exception of Ms. Gillen, Plaintiffs do not even attempt to allege any

6    actual injury they would suffer, as opposed to speculative or hypothetical injury.

7    Plaintiffs, instead, provide the declaration of their private investigator stating that, out of

8    the more than fifty former employees he believes he contacted, "approximately 7

9    individuals said that they were interested in talking to [him] about First Solar, but felt

10   prohibited from doing so due to their confidentiality agreements with, *and/or* letters they

11   had received from, First Solar." (Forge Decl. Ex. 6 ¶ 3 (emphasis added).) Plaintiffs'

12   investigator does not say that any of those former employees would not speak with him

13   *but for* the confidentiality agreements, instead suggesting that it could have been for any

14   number of the reasons identified in First Solar's letter. Plaintiffs also provide no

15   indication regarding what information those other former employees would add, instead

16   just speculating that they may provide more. This is insufficient under on-point case law.

17   *Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d at 486.

18         Plaintiffs fail to even cite *Kuriakose*, despite the fact that it is the most recent

19   decision addressing this issue. In *Kuriakose*, like here, plaintiffs hired investigators to

20   contact former employees to solicit information relating to plaintiffs' allegations that

21   defendants had violated the securities laws. *Id*. Plaintiffs submitted declarations from

22   four investigators stating that twenty-two former employees declined to speak to them due

23   to a non-participation provision. *Id*. The court initially noted that there "are endless

24   reasons why a former employee may decline an interview: the employee may have a

25   sense of loyalty to the former employer; he may be hesitant to become entangled in a legal

26   dispute; he may just not care." *Id*. at 492. The court went on to find that the declarations

27   did not establish standing: "[i]t may be that the former employees indeed told the

28   investigators as such, but these hearsay statements are not admissible for the truth of the

1   matter asserted." *Id*.  The court concluded that because "Plaintiffs' alleged injury is based

2   on nothing more than hearsay and speculation . . . this Court is restrained from allowing

3   Plaintiffs to step into the shoes of these former employees to challenge the validity of the

4   contractual provision." *Id*.  *See also Allen v. Wright*, 468 U.S. 737, 751 (1984) ("Standing

5   doctrine embraces several judicially self-imposed limits on the exercise of federal

6   jurisdiction, such as the general prohibition on a litigant's raising another person's legal

7   rights.").

8        In so holding, the *Kuriakose* court addressed and distinguished the very cases that

9   Plaintiffs principally rely on here—*In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d

10  1127 (N.D. Cal. 2002), and *Chambers v. Capitol Cities/ABC*, 159 F.R.D. 441 (S.D.N.Y.

11  1995).  As the *Kuriakose* court explained, "[t]he court in *JDS Uniphase* did not address

12  standing at all."  674 F. Supp. 2d at 491.[3]  As for *Chambers*, which was not a Reform Act

13  case, the plaintiffs had standing to challenge the agreements specifically because it was in

14  the context of a discovery dispute.  159 F.R.D. at 444 (stating that the agreements "are

15  presented solely in the context of the extent to which such agreements may or may not be

16  used in a manner precluding discovery procedures in this federal litigation").  Discovery

17  in the present action, of course, is stayed under the Reform Act.

18        As to Ms. Gillen, despite her declaration, Plaintiffs have also failed to meet their

19  burden of establishing "actual or imminent injury."  Ms. Gillen claims that "she was

20  responsible for calculating the cost-per-watt calculations," and that she "possess[es]

21  information that is relevant to certain of the allegations" in the FAC.  (Forge Decl. Ex. 5

22  ¶¶ 1, 6.)  Plaintiffs speculate that "Ms. Gillen may well be the whistleblower who reported

23

24        [3] In *JDS Uniphase*, the court also found compelling the fact that one of the several
    agreements that had been put before the court restricted former employees from making
25  "any disparaging statement" about the company, with no regard to whether the
    information was confidential or proprietary.  In addition, rather than being voluntary, the
26  agreement was "imposed on a former employee in a mass layoff as a condition of
    receiving severance benefits."  238 F. Supp. 2d at 1137.  *JDS Uniphase* also did not
27  involve Arizona's interpretation of Arizona Rule of Professional Conduct 4.2.  (*Infra*
    Section II.)

28

7

1   being directed by [the FP&A manager] to manipulate First Solar's cost-per-watt metric,"

2   and allude to "the vulnerability that Ms. Gillen represents." (Lead Plaintiffs'

3   Memorandum of Points and Authorities (Dkt. No. 100) ("Plaintiffs' MPA") at 5.)

4         As Defendants explain in their Motion to Dismiss, however, this entire theory of

5   fraud makes no sense.  Because Plaintiffs do not allege that Defendants misrepresented

6   the methodology they used, but instead "criticize[] only the . . . methodology employed,"

7   they cannot plead falsity with respect to their claims.  *In re Rigel Pharms., Inc. Sec. Litig.*,

8   No. 10-17619, 2012 U.S. App. LEXIS 18743, at *23-24 (9th Cir. Sept. 6, 2012).  In

9   addition, no CW alleges that the reported cost-per-watt metric was inaccurate at any time

10  over the four-year Class Period, much less that any of the Individual Defendants believed

11  that the Company had disclosed false cost-per-watt figures.  Nor has First Solar ever

12  revised its previously issued cost-per-watt metric or disclosed in any way that the metric

13  was inaccurate.  Contrary to what Plaintiffs seem to suggest, the filing of a whistleblower

14  complaint at the Company—which was allegedly elevated to the CFO and for which

15  corrective action was taken—does not equate to securities fraud.  Thus, even if Ms. Gillen

16  did corroborate the FAC's allegations, it would add nothing to Plaintiffs' claims.

17        **B.    Plaintiffs Seek An Impermissible Advisory Opinion.**

18        "To be cognizable in a federal court, a suit must be definite and concrete, touching

19  the legal relations of the parties having adverse legal interests."  *Kuriakose*, 674 F. Supp.

20  2d at 492.  As the Supreme Court has explained, the lawsuit "must be a real and

21  substantial controversy admitting of specific relief through a decree of a conclusive

22  character, as distinguished from an opinion advising what the law would be upon a

23  hypothetical state of facts."  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

24        Plaintiffs have attached a redacted "Employee Technology and Confidentiality

25  Agreement."  Their sole description is that it is "[a] First Solar Confidentiality Agreement

26  one of its former employees voluntarily provided."  (Forge Decl. ¶ 3.)  They do not

27  identify which employees signed this agreement, what their job titles were, when they

28  worked at First Solar, and what the circumstances of their departures were.  "Without

8

1   these and other details, Plaintiffs essentially ask the Court to find this contractual language

2   void regardless of the circumstances." *Kuriakose*, 674 F. Supp. 2d at 492.  As the court in

3   *Kuriakose* held, "[t]he Court [should] not risk issuing an advisory opinion on a

4   hypothetical set of facts." *Id.  See also In re Spectrum Brands, Inc. Sec. Litig.*, No. 05-

5   2494, 2007 U.S. Dist. LEXIS 36568, at *10 (N.D. Ga. May 18, 2007) (declining motion

6   for restriction of confidentiality agreement because "[t]he terms of the confidentiality

7   agreement alleged to hinder Plaintiffs' investigation have not been brought before this

8   Court").

9       In short, Plaintiffs here seek an impermissible advisory opinion allowing them to

10   engage in a Court-sponsored battery of contacts with non-lawyer former employees to

11   attempt to find support for their claims.

12   **II.     PLAINTIFFS' REQUESTED RELIEF IGNORES RULE 4.2.**

13       **A.     Arizona Rule Of Professional Conduct 4.2 Prohibits *Ex Parte***

14           **Communications With Some Former Employees.**

15   Arizona Rule of Professional Conduct 4.2 ("ER 4.2")—which Plaintiffs fail even to

16   mention—prohibits a lawyer from communicating "about the subject of the representation

17   with a party the lawyer knows to be represented by another lawyer in the matter."[4]

18       As explained in *Lang v. Superior Court*, 170 Ariz. 602, 607 (1992), in the case of

19   an organization, this prohibition on *ex parte* contact extends to some former employees,

20   because allowing communications with all former employees "does not comply with the

21   requirements of ER 4.2 of prohibiting *ex parte* contacts with persons whose acts or

22   omissions in connection with the matter may be imputed to the organization."  *Id.*  Under

23   *Lang*, although ER 4.2 imposes no blanket ban on *ex parte* communications with former

24   employees, in Arizona it prohibits communications if "the acts or omissions of the former

25   employee gave rise to the underlying litigation."  *Id.*

---

26

27   [4] Plaintiffs cite to the Model Rules of Professional Conduct, but their counsel's *pro hac* admissions require that they follow the Rules of Professional Conduct as adopted by the Arizona Supreme Court.  LRCiv 83.1(b)(2), 83.2(e).

28

1    Other courts have applied these principles to prohibit *ex parte* contacts with former

2    employees.  For instance, in *Kaiser v. American Telephone & Telegraph*, No. 00-724,

3    2002 U.S. Dist. LEXIS 25768 (D. Ariz. Apr. 5, 2002), the court found that *ex parte*

4    contacts with former employees were improper because the former employees' acts and

5    omissions were directly related to and gave rise to the plaintiff's claims.  *Id.* at *22-23.

6    The court reasoned, "[g]iven the obvious concern that confidential and privileged

7    information should be protected, it makes no sense as a matter of law or policy to leave

8    this important consideration under the exclusive control of a former employee (who may

9    often be characterized as a 'disgruntled' former employee) and opposing counsel." *Id.* at

10   *20.  *See also Arizona v. Countrywide Fin. Corp.*, No. CV 2010-033580 (Ariz. Sup. Ct.

11   Aug. 10, 2011 Order) (ruling that the state's *ex parte* interviews of Countrywide's former

12   call center employees violated ER 4.2 because "the acts or omissions of the former

13   employees gave rise to the underlying litigation") (Declaration of Anna Erickson White

14   Exhibit 1).

15   The relief requested by Plaintiffs—an indiscriminate order allowing them to

16   contact *any* former employee, undoubtedly some of whom are covered by ER 4.2—

17   conflicts with the limitations that Arizona's ethical rules place on contacts with former

18   employees.  For that reason alone, the Motion should be denied.  As for Ms. Gillen,

19   Plaintiffs claim that she "was responsible for performing First Solar's cost-per-watt

20   calculation," which they claim was the "linchpin" of the alleged fraud.  (Plaintiffs' MPA

21   at 3, 5.)  Thus, under Plaintiffs' theory, Ms. Gillen's own calculations are an essential

22   element of their claim.  In addition, to the extent Plaintiffs seek to impute Ms. Gillen's

23   conduct to First Solar, any communication with her would violate ER 4.2.

24   **B.     First Solar Properly Advised Its Former Employees.**

25   Plaintiffs argue that First Solar's letter to its former employees violated Rule 3.4(f)

26   of the Model Rules of Professional Conduct, which restricts a lawyer from "request[ing] a

27   person other than a client to refrain from voluntarily giving relevant information to

28

10

1    another party . . . ." (Plaintiffs' MPA at 15.)[5]  Plaintiffs do not—because they cannot—

2    claim that First Solar ever directed any of its former employees to refrain from voluntarily

3    giving information to another party.  Nothing in the letter prohibited the former employees

4    from speaking to Plaintiffs' private investigators.  Instead, it informed them that they "are

5    not required to speak to any lawyers or investigators who may contact you."  (Forge Decl.

6    Ex. 1.)  Further, it contemplated that the former employees may speak with the lawyers or

7    investigators, stating, "[i]f you do happen to speak to one of them . . . ."  (*Id.*)

8          As other courts have found in addressing similar types of communications, First

9    Solar's letter did not violate Rule 3.4(f).  *E.g.*, *Upjohn Co. v. Aetna Cas. & Sur. Co.*, 768

10   F. Supp. 1186, 1217 (W.D. Mich. 1991) ("I find that the letter is a clear statement defining

11   the reader's options and does not constitute an inducement not to voluntarily provide

12   information.").  Indeed, courts have even found that clauses in settlement agreements

13   specifically prohibiting former employees from voluntarily cooperating in litigation do not

14   violate Rule 3.4(f).  *E.g.*, *Williams v. Hewitt Assocs., LLC*, No. 02-3562, 2003 U.S. Dist.

15   LEXIS 20310, at *8-10 (N.D. Ill. Nov. 7, 2003) ("[N]o court has ever held that a typical

16   confidentiality/non-disparagement clause in a settlement agreement is an ethical violation

17   by the drafting lawyers.").

18         The one case on which Plaintiffs rely, *Kensington Int'l Ltd. v. Republic of Congo*,

19   No. 03-4578, 2007 WL 2456993 (S.D.N.Y. Aug. 24, 2007), is readily distinguishable.

20   (Plaintiffs' MPA at 15-17.)  In *Kensington*, an attorney specifically directed a third-party

21   witness with whom he had no relationship not to attend a deposition for which the witness

22   had been subpoenaed.  2007 WL 2456993, at *8.  In finding that the lawyer had violated

23   his ethical obligations, the court relied on testimony of the third-party witness—"which

24   the Court [found] to be truthful and accurate"—that the attorney told the individual "not

25

26   _____

27         [5] Although Plaintiffs do not cite it, Arizona's ethics rule, ER 3.4, includes the same
     restrictions.
28

1  [to] participate in this kind of game because it is a bad thing for your country" and "not to

2  attend the deposition." *Id.*

3  **III.    FIRST SOLAR'S CONFIDENTIALITY AGREEMENTS AND LETTER DO**
         **NOT VIOLATE PUBLIC POLICY.**

4

5          Plaintiffs' principal argument in support of their Motion is that the enforcement of

6  First Solar's confidentiality agreements violates "public policy" because it prevents

7  them—private attorneys representing private litigants—from investigating allegations of

8  securities fraud. (Plaintiffs' MPA at 8-15.) This argument fails.

9          **A.    Plaintiffs' Argument Ignores The Reform Act.**

10         Plaintiffs cite a number of different cases in support of their argument that the

11  enforcement of the confidentiality agreements violates public policy. (Plaintiffs' MPA at

12  8-14.) The majority of these cases, however—which address a general policy against

13  allowing companies to contract to conceal illegal activity—were not decided in the

14  context of the Reform Act. *See Chambers*, 159 F.R.D. at 442; *McGrane v. Reader's*

15  *Digest Ass'n Inc.*, 822 F. Supp. 1044 (S.D.N.Y. 1993); *Hoffman v. Sbarro, Inc.*, No. 97-

16  4484, 1997 U.S. Dist. LEXIS 18908, at *4-5 (S.D.N.Y. Nov. 26, 1997). Thus, they have

17  no bearing on this Court's enforcement of First Solar's confidentiality agreements in this

18  case, which was brought pursuant to, and is subject to the restrictions of, the Reform Act.

19  *See Spectrum Brands*, 2007 U.S. Dist. LEXIS 36568, at *13-14.

20         To deter frivolous securities lawsuits, Congress intentionally chose to raise the

21  barrier for pleading securities fraud when it enacted the Reform Act. Among other things,

22  the Reform Act (1) imposes stringent requirements for pleading securities fraud and

23  (2) mandates a stay of "all discovery and other proceedings" until the complaint

24  withstands a motion to dismiss. 15 U.S.C. § 78u-4(b). As the Ninth Circuit explained, the

25  purpose of the Reform Act was to restrict abuses in securities class action litigation,

26  including "the practice of filing lawsuits against issuers of securities in response to any

27  significant change in stock price, regardless of defendants' culpability." *SG Cowen Sec.*

28  *Corp. v. U.S.D.C.*, 189 F.3d 909, 911 (9th Cir. 1999). By prohibiting discovery until after

the complaint withstands a motion to dismiss, the discovery stay is intended to deter the practice of filing "frivolous lawsuits in order to conduct discovery in the hopes of finding a sustainable claim." *Powers v. Eichen*, 961 F. Supp. 233, 235-36 (S.D. Cal. 1997).

Here, the first complaint was filed just two weeks after First Solar's February 28 press release. And two weeks after that, Plaintiffs hired an investigator to contact former employees in an attempt to provide some support for the complaint's allegations. Although they admit to having had substantive conversations with no less than 25 of First Solar's former employees, allegations from only 10 of those former employees were included in the FAC. None of them even come close to providing the required specificity to establish that the alleged misstatements were fraudulent.

Recognizing the inherent unreliability of statements attributed to confidential witnesses, a number of courts have determined that those statements must be discounted in performing the "holistic" analysis described in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). As the Seventh Circuit explained in *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007), "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist." *See also Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008) ("Following *Tellabs*, courts must discount allegations from confidential sources."); *Lifschitz v. Nextwave Wireless, Inc.*, No. 08-1697, 2011 U.S. Dist. LEXIS 26910, at *6-7 (S.D. Cal. Mar. 16, 2011) ("It's true that confidential witness allegations have popped up in securities class actions with increasing frequency since Congress enacted the PSLRA, but courts have also grown to regard them with a good amount of skepticism.").

For example, in *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009)—a case involving a company that had admitted the falsity of its earlier financial statements by restating them—the CWs recounted explicit instructions from the individual defendants to make the accounting adjustments that violated GAAP. *Id*. at 992-95. Even

13

1   then, the *Zucco* court discounted the CW allegations, concluding that the CW statements

2   "are not sufficient to create a strong inference of scienter, since they fail to establish that

3   the witness reporting them has reliable personal knowledge of defendants' mental state."

4   *Id*. at 998.

5       The only remotely analogous Reform Act case that Plaintiffs cite is *JDS Uniphase*.

6   238 F. Supp. 2d 1127 (N.D. Cal. 2002).  As pointed out in *Kuriakose*, *JDS Uniphase* did

7   not address the issue of standing.  674 F. Supp. 2d at 491.  In addition, *JDS Uniphase*

8   predated many of the recent decisions regarding the misuse of confidential witnesses in

9   securities class actions.

10      Indeed, multiple reported cases involving various plaintiffs' counsel have recently

11  found that companies have been forced to defend frivolous securities class actions that

12  proceed beyond the motion to dismiss stage solely on the basis of manipulated or falsified

13  testimony of former employees.  *See Belmont Holdings Corp. v. Suntrust Banks, Inc.*,

14  No. 09-1185, 2012 U.S. Dist. LEXIS 135749, at *60 (N.D. Ga. Aug. 28, 2012) (reversing

15  previous decision on motion to dismiss because allegations in the complaint based on

16  CWs "were misleading or, at least, unsupported"); *City of Livonia Emps.' Ret. Sys. v.*

17  *Boeing Co.*, No. 09-7143, 2011 U.S. Dist. LEXIS 22347, at *12 (N.D. Ill. Mar. 7, 2011)

18  (reversing denial of defendants' motion to dismiss after determining that "the

19  informational basis for [the paragraphs relied upon by the Court] is at best unreliable and

20  at worst fraudulent, whether it is [the CW] or plaintiffs' investigators who are lying"); *In*

21  *re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26, 35-36 (D. Conn. 2010) (finding Rule 11

22  violation for misusing CW statements); *Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d

23  323, 335 (S.D.N.Y. 2009) ("[P]laintiffs rely in large part on the supposed direct personal

24  knowledge of three confidential witnesses.  These individuals do not, however, support

25  plaintiffs' allegations."); *In re Par Pharm. Sec. Litig.*, No. 06-3226, 2009 U.S. Dist.

26  LEXIS 90602, at *34 (D.N.J. Sept. 30, 2009) (CW declaration stating that complaint

27

28

14

1  "[m]isquoted her, took information out of context, and ignored other information provided

2  by her").[6]

3        **B.**      **Plaintiffs' Remaining "Public Policy" Arguments Are Irrelevant.**

4        Contrary to Plaintiffs' assertions, the confidentiality agreements do not violate

5  public policy.  As courts regularly find, confidentiality agreements with employees are

6  routine, enforceable contracts.  *E.g.*, *Uniroyal Goodrich Tire Co. v. Hudson*, No. 95-1130,

7  1996 U.S. App. LEXIS 25322, at *31 (6th Cir. Sept. 12, 1996) (unpublished) (affirming

8  the district court's enforcement of a former employee's confidentiality agreement and

9  stating "that public policy supports the enforcement of valid contractual agreements

10  belabors the obvious"); *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1271 (7th Cir. 1995).

11   *See generally Winston Research Corp. v. Minn. Mining & Mfg. Co.*, 350 F.2d 134, 138

12  (9th Cir. 1965) (an employer may restrict an employee's disclosure of information

13  "developed as a result of the employer's initiative . . . [and] entrusted to the employee in

14  confidence").[7]

15        Moreover, Plaintiffs do not address how the information that they seek—which

16  includes proprietary information about, among other things, First Solar's wattage rating

17  

18        [6] The holding in *In re Flir Sys., Inc. Sec. Litig.*, No. 00-360, 2000 U.S. Dist. LEXIS 19391 (D. Or. Dec. 13, 2000), has nothing to do with this case, as that case involved the deposition of a former employee at which counsel would be present.  That former employee had also personally filed a complaint in state court alleging fraud against his former employer.  In any event, *Flir* is inconsistent with Ninth Circuit precedent, *SG Cowen*, 189 F.3d 909, as the plaintiffs in *Flir* were attempting to lift the Reform Act's stay of discovery to proceed with formal discovery.  *E.g.*, *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1266 n.5 (N.D. Okla. 2001) (noting that *Flir* is "in substantial conflict with the Ninth Circuit's holding in [*SG Cowen*]").

23        [7] The one confidentiality agreement that Plaintiffs do include is expressly governed by Ohio law.  And yet, Plaintiffs fail to include any authority to suggest why this contract would be unenforceable for public policy reasons under Ohio law.  *E.g., Structural Dynamics Research Corp. v. Engineering Mechs. Research Corp.*, 401 F. Supp. 1102, 1114 (E.D. Mich. 1975) (noting that "Ohio permits its courts to enforce covenants not to use or disclose confidential information"); *Gugle v. Loeser*, 143 Ohio St. 362, 366-67 (1944) ("The general rule is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in courts.  The principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reasons on which that doctrine rests.").

28

1   and details about First Solar's manufacturing process—is not properly protected

2   confidential information.  It is simply not for Plaintiffs' counsel to make the determination

3   as to what information these employees learned at First Solar—a leader in a rapidly

4   evolving and technology-driven industry—is and is not confidential and/or proprietary.

5   And, contrary to Plaintiffs' claims, confidentiality agreements between employers and

6   employees remain enforceable in the context of private, civil litigation.  *See, e.g.*,

7   *Patton v. Cox*, 276 F.3d 493, 498 (9th Cir. 2002) (noting that "the privilege of witness

8   immunity is not absolute such as to override any and all competing interests"); *Cooper*

9   *Tire & Rubber Co. v. Farese*, 423 F.3d 446, 457-58 (5th Cir. 2005) (non-disparagement

10  agreement was neither illegal nor unconscionable because it served "a valid legal

11  purpose").[8]

12      Plaintiffs assert that "public policy" prohibits First Solar's confidentiality

13  agreements from being used to conceal information relevant to the commission of a

14  crime.  (Plaintiffs' MPA at 10.)  Plaintiffs' counsel do not represent the government, and

15  this is not a criminal proceeding.  More importantly, despite already having conducted an

16  extensive investigation, interviewed more than 25 former First Solar employees, and filed

17  two complaints, Plaintiffs have not even come close to meeting the requirements for

18  pleading that anyone at First Solar violated civil statutes, much less committed a crime.

19  Nor is there any indication by anyone other than Plaintiffs—not the SEC, PwC (the

20  Company's auditor), or anybody else—that First Solar committed any wrongdoing.  *See*

21  *Amari Co., Inc. v. Burgess*, 546 F. Supp. 2d 571, 583 (N.D. Ill. 2008) (enforcing

23      [8] Plaintiffs cite *Nalco Chem. Co. v. Hydro Techs., Inc.*, 984 F.2d 801 (7th Cir.
24  1993), for the proposition that confidentiality agreements containing broad provisions
    protecting non-trade secret information are "suspect."  (Plaintiffs' MPA at 9.)  *Nalco*,
25  which was a non-Reform Act case decided under Wisconsin law, did not say that such
    agreements were "suspect," but instead only that they must be reasonable in duration.  984
26  F.2d at 803.  And, even on that point, courts in other jurisdictions regularly disagree,
    observing that "imposition of geographic or durational limitations would defeat the entire
27  purpose of restricting disclosure, since confidentiality knows no temporal or geographical
    boundaries."  *E.g.*, *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 761 (Iowa
28  1999).

16

sf-3199827

confidentiality agreements in case involving private litigants in part because, as opposed to actions initiated by government agency, "there is less reason to assume that former employees will have evidence of unlawful conduct by the employer").

Finally, Plaintiffs claim that "sound public policy is to encourage whistleblowers," pointing to provisions of Sarbanes-Oxley.  (Plaintiffs' MPA at 10.)  Sarbanes-Oxley, by its own terms, protects *current* employees from retaliation by their employers for reporting unlawful acts.  (*Id.*)  It has nothing to do with private plaintiffs' discussions with First Solar's former employees.  If Congress wanted to protect the plaintiffs' informal interviews with former employees in securities class actions, it could have made that clear in the Reform Act.[9]

## CONCLUSION

For the foregoing reasons, Defendants request that the Court deny Plaintiffs' Motion.

Dated:  September 28, 2012

By: s/Anna Erickson White

Jordan Eth
Anna Erickson White
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482

OSBORN MALEDON, P.A.
Maureen Beyers
2929 N. Central Ave.
Phoenix, AZ 85012-2793

Attorneys for Defendants
First Solar, Inc., Michael J. Ahearn,
Robert J. Gillette, Mark R. Widmar,
Jens Meyerhoff, James Zhu, Bruce
Sohn, and David Eaglesham

---

[9] Plaintiffs also state that the SEC recently "endorsed *JDS Uniphase* and *Chambers* to justify their new whistleblower regulations."  (Plaintiffs' MPA at 12 n.5.)  As the Release makes clear, however, the SEC rule applied to "communications with *Commission staff* about a possible securities law violation," not communications with private investigators on behalf of plaintiffs' counsel in private civil actions.  76 Fed. Reg. 34300-01, SEC Release No. 64545, 2011 WL 2045838 (May 25, 2011) (emphasis added).

sf-3199827

1

## **CERTIFICATE OF SERVICE**

2
3
4

     I hereby certify that on September 28, 2012, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

5

s/ Andrea M. Vickery

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

sf-3199827