James P. Bennett (*Admitted pro hac vice*)
JBennett@mofo.com
Paul Flum (*Admitted pro hac vice*)
PaulFlum@mofo.com
Jordan Eth (*Admitted pro hac vice*)
JEth@mofo.com
Judson E. Lobdell (*Admitted pro hac vice*)
JLobdell@mofo.com
Anna Erickson White (*Admitted pro hac vice*)
AWhite@mofo.com
Philip T. Besirof (*Admitted pro hac vice*)
PBesirof@mofo.com
Mark R.S. Foster (*Admitted pro hac vice*)
MFoster@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
(415) 268-7000

Maureen Beyers, Arizona Attorney No. 017134
MBeyers@omlaw.com
Joseph N. Roth, Arizona Attorney No. 025725
JRoth@omlaw.com
OSBORN MALEDON, P.A.
2929 North Central Avenue
Phoenix, Arizona 85012-2793
(602) 640-9000

Attorneys for Defendants
First Solar, Inc., Michael J. Ahearn, Robert J. Gillette,
Mark R. Widmar, Jens Meyerhoff, James Zhu,
Bruce Sohn, and David Eaglesham

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Smilovits, individually and on behalf of all other persons similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>First Solar, Inc., Michael J. Ahearn, Robert J. Gillette, Mark R. Widmar, Jens Meyerhoff, James Zhu, Bruce Sohn, and David Eaglesham,<br><br>            Defendants. | CASE NO.   CV12-00555-PHX-DGC<br><br>**DECLARATION OF JAMES ZHU IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

I, JAMES ZHU, declare as follows:

1. I am a defendant in the above-captioned action. I submit this Declaration in support of the motion for summary judgment filed on behalf of myself and the other defendants. I make this Declaration on personal knowledge. Unless I state otherwise, all of my statements in this Declaration refer to the time period between April 30, 2008, and February 28, 2012 (the "Class Period"). If called as a witness, I could testify to the following facts:

**Education and Experience**

2. In 1987, I graduated from Guangxi University in Guangxi Province, China, with a BA degree in Political Economics. In 1994, I received an MBA degree in Accounting and Finance from Golden Gate University in San Francisco, California. I have also been a licensed Certified Public Accountant in California since September 2006.

3. I served as First Solar's Chief Accounting Officer ("CAO") from November 2009 through December 2011, and as interim Chief Financial Officer ("CFO") from January 1, 2011, to April 4, 2011. I also served as First Solar's Vice President and Corporate Controller from June 2007 through December 2011. From January 1, 2012, to May 2012, I served in an advisory capacity to the Company. I left First Solar in May 2012.

4. From June 2007 to December 2010, I reported to CFO Jens Meyerhoff. From January 1, 2011, to April 4, 2011, I reported to CEO Robert Gillette. From April 5, 2011, through the end of the Class Period, I reported to CFO Mark Widmar.

5. Prior to joining First Solar, I served as a Vice President and Corporate Controller at Salesforce.com from May 2004 to May 2007. From 1999 to 2004, I was an Associate Director at Chiron Corporation. From 1996 to 1999, I had an Assurance practice at KPMG and Raychem Corporation.

6. I am currently the CFO of VoloAgri Group, Inc., a plant breeding and plant genetics company in the San Francisco Bay Area.

**First Solar's Process for Preparing Its Financial Statements and SEC Filings**

7.      In my capacity as CAO and interim CFO, I signed First Solar's quarterly and annual reports filed with the SEC on Forms 10-Q and 10-K.

8.      Since before the beginning of the Class Period, the Company had in place an extensive set of processes for the preparation of its financial statements and quarterly and annual reports filed with the SEC.  Based on my involvement in the design and implementation of these processes as CAO, interim CFO, and Corporate Controller, and feedback received from internal and outside auditors, I believe that First Solar's processes and controls were effective and reliable.

9.      Among other things, these processes required First Solar's finance and accounting groups to perform monthly and quarterly worldwide consolidations and reconciliations of accounts maintained by the Company and its subsidiaries.  As part of these processes, the Controller's organization, including the SEC Reporting department, and the Financial Planning and Analysis ("FP&A") organization performed rigorous analyses and reviews designed to ensure the accuracy of First Solar's balance sheet accounts, income statement accounts, and other financial metrics, including the standard warranty accrual and Low Power Module ("LPM") remediation accrual.  These analyses were discussed with the CFO, and any issues that were raised were resolved by subject matter experts within the Company.

10.      Through December 2011, I also maintained regular contact with the Company's independent auditors, PricewaterhouseCoopers ("PwC"), who performed quarterly reviews and annual audits of the Company's financial statements.  Consistent with First Solar's policies, my team and I maintained an open and forthright dialogue with PwC to ensure they could accurately perform their work.  Each quarter, we would provide PwC with all material information that was necessary for them to evaluate the financial statements, including details concerning the LPM manufacturing excursion and the associated accrual as well as any other information that PwC requested.  We would also meet with PwC before each filing to resolve any issues they raised.

11. The numbers included in First Solar's consolidated financial statements that appeared in the Company's SEC filings and related earnings releases were the product of a quarterly and annual financial reporting process. Based on my direct participation in the financial reporting process as CAO, interim CFO, and Corporate Controller, my knowledge of the individuals involved in preparing and reviewing the results, and my understanding of the processes and analyses that take place as part of the financial reporting, I believed that the financial results that appeared in First Solar's financial statements accurately reflected the financial conditions of the Company in all material respects.

12. As Corporate Controller, I was also a member of the Disclosure Committee, which was charged with ensuring that the internal control procedures relating to public disclosures were properly implemented and followed; reviewing the information flowing into the financial statements and SEC filings; and making balanced and informed recommendations regarding First Solar's disclosures and SEC filings. I personally read each quarterly and annual SEC filing in its entirety, and raised any issues identified through these reviews with the Disclosure Committee or the relevant subject matter experts in the Company.

13. Based on my participation in the disclosure process, at no time did I believe that any of our reported financial results or the public statements that First Solar or I made during the Class Period were false, inaccurate, or misleading. I believed that the information contained in First Solar's SEC filings accurately reflected the financial conditions of the business in all material respects, and that First Solar's internal controls were effective.

**February 24, 2011 Earnings Call Statement**

14. In my capacity as CAO and interim CFO, I presented First Solar's 2010 fourth quarter and full-year financial performance during a February 24, 2011 earnings call.

15. On the call, I noted that the Company had "concluded a claims process" during the fourth quarter of 2010. I was involved in drafting this language along with Ted Meyer, First Solar's Vice President of Corporate Communications. TK Kallenbach—the executive in charge of the LPM remediation program—specifically approved the "concluded a claims process" language in an email that I received on February 24, 2011, and that appears as Exhibit 66 to the Appendix.

16. My statement that the Company had concluded a claims process referred to the expiration of a deadline for customers to submit claims under the Company's LPM remediation program. That deadline had initially been set at September 30, 2010. It was subsequently extended to November 30, 2010. Customers that did not submit claims by the November 30 deadline did not qualify for participation in the Company's LPM remediation program.

17. Based on the context of my statement that the Company had "concluded a claims process," I believed it was clear that I was not stating or implying that we had concluded the additional work of analyzing the claims and remediating the sites that might ultimately be approved for remediation. Our financial statements included an accrual of many millions of dollars reflecting the estimated future costs of site remediation. By maintaining this accrual on our books, we were clearly advising investors that the process of analyzing claims and remediating sites was ongoing. At the time of my statement, the Company's website included an FAQ that explained that the Company was in the process of validating and verifying claims submitted by the November 30 deadline.

**Sales of First Solar Stock**

18. When I joined First Solar in June 2007, I was awarded stock options that vested approximately 25 shares monthly until July 1, 2010, and thereafter 50 shares monthly until July 1, 2011. My options were subject to an initial one-year waiting period during which I could not exercise any options. I never exercised any options during the Class Period.

19.    As an executive officer I also participated in First Solar's long-term equity incentive plan, under which I received an annual grant of Restricted Stock Units ("RSUs"). A portion of these RSUs vested annually in each of the four years following the grant.

20.    In November 2009, I was promoted to Chief Accounting Officer and began the process of creating plans under section c of SEC Rule 10b5-1 to sell a specified number of shares of stock at predetermined times in the future. Once these plans were in place, I had no control over the sales of shares of First Solar stock under the plans. I entered into three such plans during the Class Period, all during the Company's open trading windows. Only two plans involved sales of stock for nontax withholding purposes. The third 10b5-1 plan only involved sales of shares to the extent necessary to satisfy tax withholding obligations at the time my RSUs vested.

21.    Prior to finalizing my first 10b5-1 plan, I sold 500 shares of First Solar stock on November 16, 2009. These sales resulted in gross proceeds of approximately $62,000. I was not aware of any material non-public information when I sold these shares.

22.    I finalized my first 10b5-1 plan on February 25, 2010. Pursuant to that plan, the plan administrator sold 4,062 shares of First Solar stock on my behalf on April 30, 2010. These sales resulted in gross proceeds of approximately $603,000.

23.    I entered into a second 10b5-1 plan on November 23, 2010. Under this plan, the plan administrator sold 3,322 shares of First Solar stock on my behalf on February 28, 2011. These sales resulted in gross proceeds of approximately $506,000.

24.    In total, approximately 94% of my First Solar stock sales during the Class Period were made pursuant to Rule 10b5-1 plans.

25.    All of my stock sales were consistent with my investment goals and were never influenced by any information that I had, but that the public and First Solar's shareholders did not. My stock sales were also not motivated or influenced by specific movements in First Solar's stock price. I did not seek advice on my stock sales from

other First Solar executives, nor did I ask other executives to buy or sell stock. In accordance with First Solar's Insider Trading Policy, I pre-cleared all of my stock transactions, including implementation of my 10b5-1 plans, with First Solar's General Counsel before executing the transactions.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24 day of _Mᴀʀᴄʜ_ in _Sᴀɴ Fʀᴀɴᴄɪsᴄᴏ Cᴀʟɪғᴏʀɴɪᴀ_

_____
JAMES ZHU

# **CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


s/*Rosemary Barajas*
**Rosemary Barajas**