James P. Bennett (*Admitted pro hac vice*)
JBennett@mofo.com
Paul Flum (*Admitted pro hac vice*)
PaulFlum@mofo.com
Jordan Eth (*Admitted pro hac vice*)
JEth@mofo.com
Judson E. Lobdell (*Admitted pro hac vice*)
JLobdell@mofo.com
Anna Erickson White (*Admitted pro hac vice*)
AWhite@mofo.com
Philip T. Besirof (*Admitted pro hac vice*)
PBesirof@mofo.com
Mark R.S. Foster (*Admitted pro hac vice*)
MFoster@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
(415) 268-7000

Maureen Beyers, Arizona Attorney No. 017134
MBeyers@omlaw.com
Joseph N. Roth, Arizona Attorney No. 025725
JRoth@omlaw.com
OSBORN MALEDON, P.A.
2929 North Central Avenue
Phoenix, Arizona 85012-2793
(602) 640-9000

Attorneys for Defendants
First Solar, Inc., Michael J. Ahearn, Robert J. Gillette,
Mark R. Widmar, Jens Meyerhoff, James Zhu,
Bruce Sohn, and David Eaglesham

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Mark Smilovits, individually and on behalf of all other persons similarly situated, | CASE NO.   CV12-00555-PHX-DGC |
|---|---|
| Plaintiff, | **DECLARATION OF ADAM D'ANGELO IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| First Solar, Inc., Michael J. Ahearn, Robert J. Gillette, Mark R. Widmar, Jens Meyerhoff, James Zhu, Bruce Sohn, and David Eaglesham, | |
| Defendants. | |

I, ADAM D'ANGELO, declare as follows:

1.     I submit this Declaration in support of the Defendants' motion for summary judgment.  I make this Declaration on personal knowledge, except as to items stated on information and belief.  Unless I state otherwise, all of my statements in this Declaration refer to the time period between April 30, 2008, and February 28, 2012, which I understand to be the period at issue in this case.  If called as a witness, I could testify to the following facts:

**Background**

2.     I am a certified public accountant licensed in the States of Arizona, Connecticut, New Jersey, and New York, and I am a Partner at PricewaterhouseCoopers LLP ("PwC").  I have held this position since 2007 and have been practicing public accounting since 1996.

3.     PwC served as the registered independent accounting firm, often referred to as the external auditor, for First Solar, Inc. ("First Solar" or the "Company") throughout the class period.  PwC was retained by, and reported directly to, the Audit Committee of First Solar's Board of Directors ("Audit Committee").  PwC continues to serve in this capacity today.

4.     Beginning in 2009, I served as the engagement partner for First Solar.  As the engagement partner, I had ultimate responsibility for PwC's services to First Solar, and I was responsible for supervising the PwC accountants and other personnel who worked on the annual audits, quarterly reviews, and related services.  I completed my responsibilities as the engagement partner for First Solar in 2013 after signing the opinion letter on the 2012 financial statements.

**The First Solar Engagement**

5.     As First Solar's external auditor, PwC was engaged to provide reports that opined on the fair presentation of First Solar's annual financial statements and the Company's system of internal controls.  To that end, PwC performed annual audits of the

Company's financial statements and internal controls. PwC also performed reviews of interim financial information released by the Company.

6. The purpose of PwC's annual audit of First Solar's financial statements was to form and express an opinion regarding the fairness of the annual financial statements, which required us to obtain reasonable assurance that the statements were free of material misstatement. To do this, we examined, on a test basis, evidence supporting the amounts and disclosures in the financial statements, and assessed the accounting principles used and significant estimates made by the Company. As part of the audit process, we considered whether information obtained during the audit suggested the Company's previously issued quarterly financial statements were materially misstated.

7. PwC's audits of First Solar's internal controls took place concurrently with its audits of First Solar's financial statements. The purpose of PwC's audit of internal controls was to form and express an opinion regarding the effectiveness of the Company's internal controls over financial reporting. In order to do that, we obtained an understanding of First Solar's internal controls that existed over the annual financial statements, assessed the risk that a material weakness could exist as of each year end audited, tested and evaluated the design and operating effectiveness of the internal controls based on the assessed risk, and performed other procedures we considered necessary. If we had identified a material weakness, we would have advised the Audit Committee and included a description of the material weakness in our written report on the Company's financial statements.

8. During PwC's quarterly review process, PwC, in accordance with Public Company Accounting Oversight Board standards governing interim reviews, reviewed draft financial statements (included in each 10-Q), performed analyses, and made inquiries of responsible financial, accounting, operational, and legal personnel within the Company.

9. Several times before each set of financial statements was filed, I and other PwC personnel met with First Solar management to review the draft financial statements

and to provide comments to management on the draft.  In the final week leading up to an SEC filing, I along with other PwC personnel attended a meeting with the Company's Audit Committee to provide feedback and commentary on the filing.  These meetings included closed executive sessions, at which I and other PwC personnel often met with the Audit Committee outside of the presence of the Company's management and internal auditors.  At the end of every audit, PwC provided an audit opinion letter to the full Board of Directors setting out the results of its audit.  First Solar included these opinion letters as exhibits to the Company's SEC filings.  I have reviewed Exhibit 5, and it appears to be a true and correct copy of the opinion letter for 2008.[1]  Exhibits 6-9 contain true and correct copies of opinion letters from 2009 through 2012, which I reviewed and approved at the time they were issued.  If PwC had identified a material error in the Company's financial statements or a material weakness in First Solar's system of internal controls, it would have been reported in writing to the Audit Committee.

10.    Throughout the engagement, PwC had access to First Solar employees, documents, and systems that we deemed necessary to do our work.  I and other PwC personnel had designated onsite office space at First Solar, which we used for days or weeks at a time while our reviews and audits were active.

11.    I and other PwC personnel collected and created thousands of work papers over the course of our reviews and audits of First Solar.  It is the regular practice of PwC to create such work papers while a review or audit is taking place, and these work papers are kept in the normal course of PwC's business.  PwC partners and employees rely on these work papers to contemporaneously document our procedures over the financial statements including our more significant judgments.  All of the work papers discussed in this declaration were generated or collected and filed by people working under my supervision while I was the engagement partner for First Solar.  I am informed and believe

[1] All references to exhibits are to the Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment.

that they were produced during the course of this litigation from PwC's collection of files from the First Solar engagement.

12.     PwC did not identify any material errors in or propose any material adjustments to First Solar financial statements for 2009, 2010, 2011 and 2012.  Nor did PwC identify any material errors that would require a restatement of any of the interim financial reports.  PwC did not identify any material weaknesses in First Solar's system of internal controls that existed during this period.  True and correct copies of, and/or excerpts of, PwC's work papers relating to our audits of the Company's 2009-2012 financial statements and reviews of the Company's interim financial statements appear in Exhibits 10-23 and 25-33.

**Low Power Modules**

13.     In 2009, First Solar informed me and other PwC personnel of an issue related to low power modules (referred to as LPM) that was caused by a manufacturing excursion that took place between June 2008 and June 2009.

14.     In 2009, PwC considered the LPM issue in conjunction with its review of the Company's warranty reserve.  Starting in 2010, PwC's audit included testing of First Solar's LPM accruals.  In connection with its audits of First Solar's 2010 and 2011 financial statements, PwC found that the Company's accounting treatment and calculation of these LPM remediation accruals appeared reasonable.  Exhibits 10-23 contain true and correct excerpts and/or copies of work papers (as described in paragraph 11) that reflect, among other things, PwC's assessment of the Company's LPM remediation accruals.

15.     In particular, during our 2011 audit, PwC examined the charges associated with the LPM issue or remediation program in 4Q11, which totaled $125.7 million (including power compensation).  As part of our audit, PwC found that the estimated balance recorded, and the disclosure of the estimated range of loss, appeared reasonable. A true and correct copy of a presentation that I and other PwC personnel presented to the Audit Committee is contained in Exhibit 24.

16.     As part of our audit of First Solar's 2012 financial statements, PwC considered these issues in light of the allegations raised in the Complaint filed in this action.  This process did not reveal facts that made us question the sufficiency of PwC's prior reviews or audits, nor did it reveal any circumstances that would require revisions to prior financial statements.  A true and correct copy of a work paper documenting this process is contained in Exhibit 25.

**The "Hot Climate" Issue**

17.     In 2011, First Solar informed PwC of an issue related to the rate of initial degradation of modules installed in hot climates.  Before the issuance of the Form 10-Q for 1Q11, the Audit Committee asked PwC to review management's conclusion that no adjustments to the financial statements were required in light of this issue.  My team met with members of the Company's engineering team and reviewed the underlying engineering data.  I advised the Audit Committee that management's accounting conclusions and estimates appeared reasonable.  Exhibits 26 & 27 contain true and correct copies of PwC's work papers (as described in paragraph 11) and documentation reflecting the Audit Committee's request and our response.

18.     During the remainder of 2011, First Solar provided PwC with information regarding additional sites that it had committed to remediate because of hot climate stabilization issues, and PwC reviewed the accruals associated with this remediation.  When First Solar determined it was appropriate to adjust its warranty accrual rate in the fourth quarter of 2011, citing among other factors the increasing number of installations in non-temperate climates, PwC reviewed the change, recalculated the return rate for remaining warranty modules, and performed stress tests.  PwC found that the adjustment to the warranty accrual rate appeared reasonable.  Exhibits 20 & 28 contain true and correct copies of PwC's work papers (as described in paragraph 11) and documentation reflecting PwC's consideration of the hot climate stabilization issues and warranty accrual rate increase.

**Standard Warranty Accrual**

19.  PwC considered and tested First Solar's standard warranty accrual as part of our reviews and audits. Each year, we found that the Company's methodology, accrual rate, and the amount of the accrual appeared reasonable and that controls related to the standard warranty accrual appeared to be operating effectively.

**Revenue Recognition**

20.  PwC considered First Solar's revenue recognition policies and practices as part of its audits. As part of our audits of the Company's 2009-2012 financial statements, PwC found that the Company's revenue recognition policies and practices appeared reasonable, and we did not identify any material errors in revenue reported by the Company. Exhibit 29 is a true and correct copy of a PwC work paper (as described in paragraph 11) related to revenue recognition from our audit of First Solar's 2011 financial statements.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25 day of March, 2015, in New York, New York.

_____
ADAM D'ANGELO

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


s/*Rosemary Barajas*
**Rosemary Barajas**