1    **WO**

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

9    Mark Smilovits, individually and on behalf        No. CV12-0555-PHX-DGC
10   of all others similarly situated,
                                                       **ORDER**
11                              Plaintiffs,

12   v.

13   First Solar, Inc.; Michael J. Ahearn; Robert
     J. Gillette; Mark R. Widmar; Jens
14   Meyerhoff; James Zhu; Bruce Sohn; and
     David Eaglesham,

17        The parties have filed many motions in limine ("MILs").  The Court previously

18   ruled on Plaintiffs' MILs 1 and 10.  *See* Docs. 547 and 548.  This order will rule on the

19   remaining MILs.[1]

20        **Plaintiffs' MIL 2 (Doc. 492).**  Plaintiffs ask the Court to preclude Defendants from

21   introducing: (1) an "intervening or superseding acts of third parties" defense, and (2) a

22   "reliance on others" defense because Defendants failed to provide Plaintiffs information

23   required by discovery requests.  But these defenses have been withdrawn by Defendants

---

[1] The parties have filed multiple motions to file documents under seal, which the
Court will address in a separate order.  *See* Docs. 468, 511, 551, 589, 639, 649.  The parties
have lodged the proposed sealed versions of the documents on the Court's electronic case
filing ("ECF") system pending rulings on the motions to seal, and have also filed redacted
public versions of the documents on the ECF system.  *See* LRCiv 5.6(b)-(c).  Where
appropriate, and as noted below, this order cites to some of the lodged documents, which
will be filed on the ECF system (either under seal or in the public record) once the Court
rules on the motions to seal.  Where the Court cites to a sealed version of a MIL, it will
also provide a citation to the redacted public version.

and were stricken by the Court with Defendants' consent. Doc. 401 at 46-47. As a result, these affirmative defenses are not part of this case and will not be presented to the jury in argument or instructions. Plaintiffs' MIL does not ask that any other evidence be precluded, and therefore is **denied as moot**.[2]

**Plaintiffs' MIL 3 (Doc. 493).** Plaintiffs seek to preclude Defendants from introducing: (1) a "truth-on-the-market" defense, and (2) a "safe harbor" or "bespeaks caution" defense because Defendants failed to provide Plaintiffs information required by discovery requests. These defenses have also been withdrawn by Defendants and were stricken by the Court with Defendants' consent. Doc. 401 at 46-47. As a result, these affirmative defenses are not part of this case and will not be presented to the jury in argument or instructions. Plaintiffs' MIL does not ask that any other evidence be precluded, and therefore is **denied as moot**.[3]

**Plaintiffs' MIL 4 (Docs. 474 (lodged sealed version), 494 (public redacted copy)).** Plaintiffs ask the Court to preclude defendants from introducing evidence or testimony at trial that: (1) they received, considered, or relied on the advice of counsel during the Class Period; (2) lawyers reviewed or approved Defendants' public disclosures or insider sales of First Solar stock during the Class Period; or (3) Defendants relied on lawyers' involvement in any such review or approval processes during the Class Period. Plaintiffs contend that Defendants waived the advice-of-counsel defense by withholding thousands of documents on the basis of the attorney-client privilege, including documents related to disclosure issues, and by instructing witnesses not to disclose attorney-client communications in depositions. Defendants respond that they "will not assert an 'advice of counsel' defense or present evidence about the content of legal advice." Doc. 592 at 2.

---

[2] To the extent Plaintiffs attempt in this motion to preclude Defendant from presenting evidence that counters Plaintiffs' proof of their claims, the motion is denied. Plaintiffs discovery requests focused on affirmative defenses, which have been withdrawn. The requests did not seek evidence unrelated to affirmative defenses, and Plaintiffs never asked the Court to require Defendants to produce any other specific evidence in response to their request. Rule 37 sanctions would be unwarranted in such a situation.

[3] Same point as footnote 1.

The Court rules as follows: (1) Defendants cannot present at trial any attorney-client communication they refused to disclose during discovery on privilege grounds. (2) There will be no advice-of-counsel defense. Such a defense will not be presented to the jury through argument or instructions. (3) The Court cannot conclude, however, that Defendants' refusal to disclose the contents of specific communications should preclude them from making any reference to counsel in their evidence and arguments at trial. The Court must draw precise lines during trial, but its current view is that Defendants may present evidence that counsel reviewed corporate disclosures and stock-sale plans or attended meetings, but may not present evidence that counsel approved the disclosures or plans or that Defendants relied on what the lawyers said about the disclosures or plans. Presenting evidence of lawyer approval or Defendant reliance while withholding the actual communications that constituted the approval or resulted in the reliance would be unfair to Plaintiffs. It would leave the impression that the lawyers provided unqualified approval of all that Defendants did, without actually disclosing what the lawyers said or did not say and without affording Plaintiffs the opportunity to know, test, or address the actual communications. Plaintiffs' MIL 4 is **granted in part and denied in part** as set forth above.

**Plaintiffs' MIL 5 (Docs. 475 (lodged), 495 (public)).** Plaintiffs seek to preclude Defendants from introducing evidence, questions, or argument concerning Plaintiffs' experts' compensation in this case. Plaintiffs base this request on the fact that a defense expert refused to provide total compensation information. Defendants assert that Plaintiffs took the same position in a deposition, but the transcript does not support their position. *See* Doc. 594-2 at 4. The rule at trial will be the same for both parties. Unless the parties reach a different agreement, both sides will be limited to eliciting the following compensation information: (a) the hourly rate paid for the expert's time and the time of any of the expert's staff members, and (b) the total hours incurred by the expert and his or her staff members on this case. Experts should come to trial prepared to answer these questions

– the Court will not accept an assertion that the expert does not know this information. With this order in place, the MIL is **denied**.

**Plaintiffs' MIL 6 (Doc. 496).** Plaintiffs ask the Court to preclude Defendants' from calling Bernhard Beck to testify at trial because Defendants never disclosed him as required by Rule 26(a)(1)(A). Defendants do not dispute that they failed to disclose Mr. Beck under Rule 26(a)(1)(A) or in a supplement under Rule 26(e), but they oppose the motion.

Defendants first assert that Rule 26 disclosure was not required because Mr. Beck's role as a key German customer of First Solar with involvement in the LPM issue was well known to Plaintiffs through the production of many documents, some of which are now listed on Plaintiffs' exhibit list. But none of these documents satisfied a primary purpose of Rule 26(a)(1)(A) – to inform Plaintiffs that Defendants might call Mr. Beck as a witness at trial. Plaintiffs are "entitled to rely on the 'critical' purpose of Rule 26(a)(1)(A) – 'to inform them which witnesses [] the disclosing party may use to support its claims or defenses.'" *McCollum v. UPS Ground Freight Inc*., 2013 WL 105225, at *1-2 (D. Ariz. Jan. 9, 2013) (citation omitted). This disclosure obligation continues throughout the litigation under Rule 26(e). A party who fails to timely identify a witness as required by Rule 26(a)(1)(A) "is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Defendants have not shown that the failure to identify Beck as a potential witness was substantially justified.

Defendants argue that they complied with Rule 26(a)(3) by disclosing Beck more than 30 days before trial. True, but Rule 26(a)(3) is a "pretrial" disclosure, not a discovery disclosure. It is made in preparation for trial and expressly states that it is "*[i]n addition to* the requirements in Rule 26(a)(1)." Fed. R. Civ. P. 26(a)(3)(A) (emphasis added). It neither trumps nor satisfies the Rule 26(a)(1)(A) disclosure obligation during discovery and the Rule 26(e) duty to timely supplement.[4] In this highly complex case, a

---

[4] The two district court cases cited by Defendants (Docs. 596, 597 at 3) are not controlling authority, and *Sarantis v. ADP, Inc.*, No. CV-06-2153-PHX-LOA, 2008 WL 4057007, at *6 (D. Ariz. Aug. 28, 2008), is distinguishable as it concerned rebuttal and impeachment witnesses disclosed in response to supplemental disclosures from the

September 13, 2019 disclosure, less than three months before trial and several years after the close of fact discovery, is not harmless. Plaintiffs may have known Beck's role in some events related to this case, but they did not know that Defendants might call him to testify and they lost the opportunity during discovery to depose him or inquire further concerning his anticipated testimony.

Because Defendants failure to disclose Beck as required by Rule 26(a)(1)(A) was not substantially justified or harmless, Beck may not testify at trial. Fed. R. Civ. P. 37(c)(1). The MIL is **granted**.

**Plaintiffs' MIL 7 (Docs. 476 (lodged), 497 (public)).** Plaintiffs seek to preclude Defendants from presenting evidence and argument regarding the impact of a purported 5% measurement tolerance on First Solar's 10-year performance warranty. Plaintiffs first note that Defendants admitted in their answer that First Solar warranted that solar modules installed in accordance with agreed-upon specifications will produce at least 90% of their initial nameplate power output rating during the first 10 years, and at least 80% during the following 15 years. Plaintiffs assert that this admission precludes Defendants from now contending that the warranty has a 5% measurement tolerance and that this tolerance means the warranty is not triggered until 85% power production.

But the 5% measurement tolerance is in the warranty itself, immediately following the 90% and 80% warranties. *See* Doc. 598 at 2. Whether that measurement tolerance has the effect Defendants claim is a factual issue for trial. Defendant's answer, which mirrors the actual language from the warranty, does not foreclose an argument about how the 90% and 80% warranties are to be measured.

Nor is the issue foreclosed by Defendants' withholding of privileged documents that might bear on the measurement tolerance issue. Plaintiffs do not contend that Defendants incorrectly claimed that the relevant documents are privileged. (If Plaintiffs believed the

---

opposing party. Defendants reliance on *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006), is not persuasive because the Ninth Circuit merely found that the trial court did not abuse its discretion in permitting the testimony of late-disclosed witnesses. It also found the late disclosure harmless. *Id.* at 1000 ("Even had it been error for the district court to admit these witnesses, there is nothing to suggest that Lehman was significantly hampered in its ability to prepare for trial or to examine these witnesses.").

privilege was wrongly invoked, they should have raised the issue with the Court long ago.) Doc. 598 at 3-4. And if the documents are properly privileged, then withholding them does not foreclose the parties from litigating an issue on which they bear. Privileged communications often bear on factual issues in a dispute. Plaintiffs argue that Defendants cannot use the privilege as a sword and a shield, but Defendants are not using the privilege as a sword. They avow that they will not base their 5% measurement tolerance position on legal advice from counsel. Doc. 598 at 2.

Finally, Plaintiffs suggest that the 5% measurement tolerance is a recently-raised defense, but, as noted above, the measurement tolerance is in the warranty itself. And Defendants identify documents and deposition testimony produced during discovery that reflect Defendants' measurement tolerance position. The MIL is **denied**.

**Plaintiffs' MIL 8 (Doc. 498).** Plaintiffs seek to preclude Defendants from introducing evidence or argument at trial regarding the lack of a restatement or government investigation of First Solar's financial results. Plaintiffs assert that such evidence is irrelevant and would serve no purpose other than to mislead the jury about the legal standards for a civil securities fraud suit. The Court disagrees. While the lack of a restatement of the financials and an SEC investigation do not establish the absence of fraud as a matter of law, they are relevant facts in this case that the jury may consider in deciding whether Defendants made material misstatements or omissions with scienter. Plaintiffs, of course, are free to counter this evidence by showing that Defendants must approve any restatement of the financials and that the SEC might decline an enforcement action for any number of reasons. The Court does not conclude that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, jury confusion, or waste of time. Fed. R. Evid. 403. Plaintiffs may object or seek a clarifying instruction if they believe this or any other evidence is improper or unduly prejudicial at trial. The MIL is **denied**.

**Plaintiffs' MIL 9 (Docs. 477 (lodged), 499 (public)).** Plaintiffs seek to preclude Defendants from introducing evidence of, or opinions or argument relating to, events that

post-date the Class Period, including First Solar's post-Class Period stock price movements. The MIL sweeps too broadly and is an improper attempt to pre-try the case. Plaintiffs may object at trial to evidence they believe is irrelevant or inadmissible under Rule 403. The Court will be far better equipped to rule on specific evidence issues at that time.

The only specific evidence Plaintiffs identify are the post-Class-Period prices of Defendants' stock. Plaintiffs suggest that any such evidence would be an indirect attempt to persuade the jury that Plaintiffs have not been damaged. But the Court will instruct the jury on the proper measure of damages, and Defendants note that their own damages expert, Dr. Kleidon, does not calculate damages using post-Class-Period share prices. Doc. 600 at 4. Defendants also note that they do not intend to argue that damages should be reduced by stock-price movements after the 90-day PSLRA period. *Id.* The Court will consider any objections or requests for clarifying instruction Plaintiffs assert during trial. This MIL is **denied**.

**Plaintiffs' MIL 11 (Docs. 478 (lodged), 501 (public)).** Plaintiffs seek to preclude Defendants from offering evidence, argument, or testimony regarding a memorandum prepared by its independent auditor, PricewaterhouseCoopers, LLP ("PwC"), nearly a year after the Class Period ended. Plaintiffs argue that the evidence is an irrelevant, after-the-fact effort by PwC to justify its own auditing work, and that any testimony about the memorandum would constitute improper lay opinion evidence.

The Court cannot conclude at this point that evidence regarding the memorandum should be excluded. Its relevancy or lack of relevancy will be clearer during trial. And whether testimony about the memorandum will be admissible under Rule 701 will also be clearer. The Court therefore **denies** the MIL. To avoid the possibility of unfair prejudice, however, Defendants are instructed not to mention the memorandum in their opening statement or in evidence without first raising this issue with the Court. This should be done at a time when the Court and the parties can discuss the evidence without keeping the jury waiting.

**Plaintiffs' MIL 12 (Docs. 479 (lodged), 502 (public)).**  Plaintiffs seek to preclude Defendants from offering evidence, argument, or opinions related to China's participation in the solar energy industry, asserting that such evidence is irrelevant and inadmissible under Rule 403.  The Court **denies** the motion.  The effect of Chineses competition on First Solar's business, market share, and stock price is relevant to loss causation – whether the stock price drops identified by Plaintiffs were due to Defendants' fraud or other market forces.  The Court cannot conclude that the evidence will improperly waste time or confuse issues under Rule 403.

**Plaintiffs' MIL 13 (Docs. 480 (lodged), 503 (public)).**  Plaintiffs seek to preclude Defendants from arguing or introducing evidence that First Solar did not develop, or could not develop, a correlation between STBi and field power loss prior to April 1, 2008.  This request is based on the assertion that Defendants did not produce documents created before April 1, 2008, and thereby precluded Plaintiffs from countering Defendants' assertion that the correlation was not possible until 2010.  Plaintiffs cite only Defendants' initial discovery response in support of this argument.  They do not assert that they ever raised this specific issue with Defendants, and they did not raise it with the Court despite the fact that the Court made itself available for discovery conference calls and held many with the parties.  The Court's Case Management Order stated that, "[a]bsent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery."  Doc. 131 at 2.  What is more, documents dated April 1, 2008 and later give Plaintiffs two years of information before the alleged correlation was developed in 2010, and yet Plaintiffs cite no such document to support their assertion that the correlation could have been made earlier.  The MIL is **denied**.

**Plaintiffs' MIL 14 (Docs. 481 (lodged), 504 (public)).**  Plaintiffs seeks to preclude defense experts William W. Holder and John J. Huber from presenting overlapping and duplicative testimony.  The Court's Scheduling Order states:  "Each side shall be limited to one retained or specially employed expert witness per issue."  Doc. 438 at 1 n.1.  The Court will not permit overlapping and duplicative expert testimony at trial.  The Court

cannot conclude at this time, however, that Plaintiffs' MIL should be granted. Defendants assert that they do not intend to present duplicative testimony, but instead require two experts to address the distinct GAAP and MD&A opinions of Plaintiffs' expert, Paul Regan. This issue may be addressed, if necessary, after Plaintiffs' expert has testified and in light of the testimony Defendants propose to elicit from their experts. The MIL is **denied**.

**Plaintiffs' MIL 15 (Docs. 482 (lodged), 505 (public)).** Plaintiffs seek to preclude Defendants from offering evidence of, or argument relating to, the aggregate damages suffered by the Class. Plaintiffs contend that damages will be calculated on a per-share basis, not on an aggregate basis, and that any argument or evidence regarding aggregate class damages would be irrelevant and unfairly prejudicial. Defendants agree that damages will be calculated on a per-share basis and assert that they do not intend to present any aggregate damages figure estimating what the overall recovery would be for the Class. Defendants expect that the verdict form will ask jurors to decide per-share damages. In light of this agreement between the parties, the Court **denies** Plaintiffs' MIL as moot. Should any party conclude during trial that the aggregate class recovery should be mentioned in any way, counsel should raise the issue with the Court before mentioning it to the jury.

The Court will not preclude the parties from presenting evidence or argument comparing LPM or hot climate-related costs (or lost revenue) to First Solar's loss in market value on relevant disclosure dates. That analysis is used by experts from both sides and provides an important basis for per-share loss calculations and comparisons between the experts' opinions.

**Plaintiffs' MIL 16 (Doc. 506).** Plaintiffs seek to preclude Defendants from calling Plaintiffs to testify through live testimony or deposition or introducing class members' trading records at trial. Plaintiffs contend that this is a class action on behalf of all persons who purchased First Solar stock during the Class Period, proceeding on the fraud-on-the-market theory of reliance, that the jury will be tasked with adjudicating Defendants' class-

wide liability, and that Plaintiffs' transactions, conduct, or knowledge, like those of every other Class member, are only relevant to individualized issues.

Defendants respond that they do not intend to introduce evidence about absent class members, but that they do intend to call the Lead Plaintiffs and their investment manager and introduce their investment documents. Defendants note, correctly, that the presumption of reliance created by the fraud-on-the-market theory is rebuttable. *Basic v. Levinson*, 485 U.S. 224, 245-47 (1988). They assert that the trial must address the claims of the Lead Plaintiffs, and that their testimony will be relevant to rebut the presumption of reliance.

Of all the cases cited by the parties, the Court finds the discussion in *In re Vivendi Universal, S.A. Securities Litigation*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011), to be the most relevant and helpful. The Court will paraphrase that discussion.

The fraud-on-the-market theory can give rise to a presumption of reliance. *Id.* at 583. The theory applies to well-developed securities markets and assumes that the market price of a stock reflects all available public information, including material mis-representations and omissions, and that investors in an efficient securities market reasonably rely on the integrity of the market price. Therefore, parties who purchase securities in an efficient market need not prove that they directly relied on or even knew about the alleged misrepresentations; reliance is assumed once the materiality of a misrepresentation or omission is established. *Id.*

The presumption of reliance that arises from the fraud-on-the-market theory may be rebutted. As the Supreme Court stated in *Basic*, "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." 485 U.S. at 248. The Supreme Court identified several ways in which a defendant could rebut the presumption:

> For example, if petitioners could show that the "market makers" were privy to the truth . . . and thus that the market price would not have been affected by their misrepresentations, the causal connection could be broken: the basis

for finding that the fraud had been transmitted through market price would be gone. Similarly, if, despite petitioners' allegedly fraudulent attempt to manipulate market price, news [of the allegedly concealed information] credibly entered the market and dissipated the effects of the misstatements, those who traded Basic shares after the corrective statements would have no direct or indirect connection with the fraud. Petitioners also could rebut the presumption of reliance as to plaintiffs who would have divested themselves of their Basic shares without relying on the integrity of the market. For example, a plaintiff who believed that Basic's statements were false . . . and who consequently believed that Basic stock was artificially underpriced, but sold his shares nevertheless because of other unrelated concerns, e.g., potential antitrust problems, or political pressures to divest from shares of certain businesses, could not be said to have relied on the integrity of a price he knew had been manipulated.

*Id*. at 248-49.

This excerpt suggests that some of the means of rebutting the presumption of reliance can be proven on a class-wide basis, and some necessarily require individualized inquiry. For example, a party may rebut the presumption of reliance by showing that the market already knew the truth that was allegedly omitted from a company's statements, such that any omissions could not have been material. Or a defendant may show that the market is not efficient and therefore cannot be assumed to reflect information known about a security. These rebuttals are properly attempted on a class-wide basis because they concern market matters common to all class members. *Vivendi*, 765 F. Supp. 2d at 584.

On the other hand, certain means of rebutting the presumption of reliance require an individualized inquiry into the buying and selling decisions of particular class members. For example, the Supreme Court stated in *Basic* that the presumption of reliance would be rebutted if the defendant could show that a particular investor would have purchased a company's stock even if she had known of the fraud. 485 U.S. at 248. Alternatively, if a particular investor relied on information not generally available to the public, it may be argued that the investor did not rely on the integrity of the market. Logically, any attempt to rebut the presumption of reliance on such grounds would call for separate inquiries into the individual circumstances of particular class members. *Vivendi*, 765 F. Supp. 2d at 584.

"For this reason, courts in securities fraud actions have consistently recognized that issues of individual reliance can and should be addressed after a class-wide trial, through separate jury trials if necessary." *Id.* at 584-85 (citing six cases).

Defendants seek "to introduce evidence that Lead Plaintiffs traded 'without relying on the integrity of the market.'" Doc. 610 at 2 (quoting *Basic,* 485 U.S. at 249). This is a Plaintiff-specific defense to the fraud-on-the-market presumption of reliance – an attempt to show that these particular Plaintiffs cannot rely on the presumption. As *Vivendi* rightly concludes, this is an individualized issue, not a class issue, and should be addressed after a class-wide trial.

Defendants acknowledge that "[i]ssues of individual reliance for absent class members . . . naturally must follow trial." *Id.* at 2 n.2. Yet if Defendants' were permitted to present evidence that Lead Plaintiffs did not rely on the market and the jury were to agree and enter a defense verdict, then what? Because individual reliance by absent class members would not have been adjudicated, and those members would still be entitled to the presumption of the fraud-on-the-market theory if Defendants could not rebut it in their cases, judgment against them would not be appropriate. The case would need to be tried again on a class-wide basis, or would proceed class-member-by-class-member contrary to the Court's class certification. The purpose of this trial is to resolve class-wide issues. Individual issues, such as Lead Plaintiffs possible individual lack of reliance on the market, must be addressed after the class trial.

Defendants also argue that Lead Plaintiffs' testimony is relevant to materiality. Defendants acknowledge that materiality looks to a hypothetical reasonable investor, but quote *Branch-Hess Vending Services Employees' Pension Trust v. Guebert*, 751 F. Supp. 1333, 1340 (C.D. Ill. 1990), for the proposition that an actual plaintiff's testimony can be relevant. *Branch-Hess*, however, was not a class action or a fraud-on-the-market case. It concerned the sale of securities to four pension funds by the financial advisor who created the pension funds. The specific representations he made to the funds, and facts surrounding

the securities transactions, were thus more relevant to the issue of materiality than are individual investors' reactions to alleged market-wide manipulation of stock price.[5]

The Court **grants** the MIL.

**Plaintiffs' MIL 17 (Doc. 507).** Plaintiffs seek to preclude Defendants from presenting evidence, argument, or testimony relating to purported "good acts" of any defendant, such as any charitable donations, membership or affiliation with community or non-profit organizations, civic or military service, or the Company's mission to provide clean energy. Plaintiffs contend that such evidence is irrelevant, unfairly prejudicial under Rule 403, and improper character evidence under Rules 404 and 608.

These are matters that must be decided at trial. The Court agrees that it would be inappropriate to present evidence simply for the purpose of showing that Defendants are good people. That is not an issue in this case and such evidence could run afoul of Rules 403 and 404. But evidence of Defendants' actions may be relevant for other purposes, such as showing why Defendants took particular actions on particular days or responding to attacks on a Defendant's character for truthfulness. Fed. R. Evid. 608. And the Court cannot conclude at this point that First Solar's mission to provide clean energy is irrelevant. The MIL is **denied**. The Court will consider objections made during trial.

**Plaintiffs' MIL 18 (Docs. 483 (lodged), 508 (public)).** Plaintiffs seek to preclude Defendants from offering evidence or argument concerning the social, economic, or environmental value of solar energy, or Defendants' commitment to the promotion of renewable energy sources. Plaintiffs contend that such evidence is irrelevant and unfairly prejudicial. The Court reaches the same conclusion as in the previous motion. These are matters that must be decided at trial. The Court agrees that it would be inappropriate to present evidence simply for the purpose of showing that First Solar is a good company or

---

[5] Defendants' other case, *U.S. S.E.C. v. Pirate Investor LLC*, 580 F.3d 233, 241 (4th Cir. 2009), was an SEC enforcement action, not a class action or a fraud-on-the-market case. The court of appeals held that the district court did not commit clear error in finding that the defendant's misrepresentations were material, and simply noted in passing that some victims of the misrepresentation testified that they relied on it. The case does not hold that a lead plaintiff's actions in a class action are relevant to the objective inquiry of materiality.

Defendants are good people, but evidence of First Solar's business objectives may be relevant for other purposes. The Court cannot draw fine lines outside the context of trial. The MIL is **denied**.

**Plaintiffs' MIL 19 (Doc. 509).** Plaintiffs seek to preclude Defendants from introducing evidence or comment disparaging plaintiffs' counsel, class action lawsuits generally, Plaintiffs' contingency fee arrangement with counsel, or Plaintiffs' perceived motivations in bringing this litigation. Defendants largely agree that such evidence or comment would be inappropriate, but suggest that there is nothing yet for the Court to rule on, although Defendants do argue that motive may be relevant to credibility. Doc. 616.

The Court **grants** the MIL. Attacks on counsel are always inappropriate, and attacks on class action lawsuits generally or on contingency fee arrangements are also irrelevant and inadmissible. If Defendants believe evidence covered by this MIL becomes relevant, they may raise the issue with the Court outside the hearing of the jury.

**Plaintiffs' MIL 20 (Docs. 484 (lodged), 510 (public)).** Plaintiffs seek to preclude Defendants from offering evidence or argument concerning the personal lives, socioeconomic or political views, or arrest records of Plaintiffs' expert witnesses. The Court can see no situation in which an expert's arrest record would be relevant or admissible, and **grants** the MIL with respect to such evidence. Otherwise, the MIL is imprecise and will be denied. The Court instructs counsel on both sides, however, that any evidence or argument related to a witness's personal life or socioeconomic or political views should be raised with the Court before being presented to the jury.

**Defendants' MIL 1 (Docs. 512 (lodged), 513 (public)).** Defendants seek to preclude Plaintiffs from presenting evidence or argument suggesting that a relationship exists between First Solar's cost-per-watt metric (CpW) and any alleged fraud, including any connection with the LPM and heat degradation issues. Plaintiffs' first amended complaint alleged that "defendants artificially lowered their manufacturing costs, which in turn caused First Solar's cost-per-watt metric to be understated." Doc. 93, ¶ 27. This allegation appeared in the section of the complaint describing Defendants' alleged

"fraudulent scheme." *Id.* ¶ 20. In their motion for summary judgment, Defendants identified 62 alleged misstatements in Plaintiffs' first amended complaint relating to CpW (Doc. 327-1 at 215-30), and asserted that Plaintiffs had no evidence that CpW had been misrepresented or that any Defendant had knowledge of misstatements about CpW. Doc. 311 at 54. After full briefing, the Court agreed, and held that Plaintiffs failed to produce evidence concerning the effects on CpW of the LPM and hot climate issues:

> Plaintiffs have failed to provide evidence from which a reasonable jury could conclude that CpW should have contained costs related to the LPM or hot climate defects. There is no evidence that First Solar ever included prior or future costs in CpW. Although the two defects were occurring simultaneously with new manufacturing, there is no evidence that new modules were being manufactured with less efficiency due to defects in previously-manufactured modules.
>
> * * *
>
> It is undisputed that CpW was an important metric, but Plaintiffs do not connect any wrongdoing to the Individual Defendants. . . . The record is devoid of evidence from which a reasonable jury could find that Defendants improperly manipulated CpW with the intent to mislead investors.

Doc. 401 at 45.

Plaintiffs' response to the MIL argues that evidence regarding CpW is necessary to show materiality at trial:

> [T]hroughout the Class Period defendants excluded LPM-related costs from the CpW calculation. Moreover, defendants did not disclose the effect of hot climate de-rating on CpW. Again, given the importance that market observers placed on CpW, it is axiomatic that the incorporation of LPM costs into that metric "would have negatively impacted analysts' views on First Solar's ability to lower its cost position, its ability to drive lower cost per watt, and its ability to gain market share."
>
> * * *
>
> The "importance of CpW to investors" and the "effect that LPM or heat degradation had on CpW", by their very nature, have a tendency to prove whether or not a reasonable investor would consider the LPM and heat degradation issues to be important – i.e., materiality.

Doc. 560 at 3.

In other words, Plaintiffs want to present evidence that the LPM and hot climate problems, if included in CpW, would have affected market investors, and that Defendants failed to include them. These are the very allegations eliminated by summary judgment. The Court does not agree that they can be brought back into the case to prove the materiality of the LPM and hot climate issues. Defendants MIL is **granted**. Plaintiffs shall not present evidence or argument suggesting that a relationship exists between CpW and any alleged fraud, including any connection with the LPM and heat degradation issues.

**Defendants' MIL 2 (Docs. 514 (lodged), 515 (public)).** Defendants seek to preclude Plaintiffs from presenting (1) evidence or argument that former CEO Rob Gillette left First Solar because of alleged fraud, and (2) unfairly prejudicial evidence or argument related to the reasons for Mr. Gillette's departure, including exhibits bearing Bates numbers DIRS00000011, DIRS00003700, DIRS00004274, FEINSTEIN0204496, FEINSTEIN0204621, FSLR-02356140, and FSLR02356415.

The Court granted summary judgment on Plaintiffs' claim that Gillette's departure was related to the alleged fraud and that the 25% decline in First Solar's stock price on the day of his departure was therefore caused by the fraud. Doc. 401 at 27. The Court explained: "Plaintiffs have presented no evidence that he left First Solar because of Defendants' alleged fraud. . . . The Court rejects Plaintiffs' argument that a jury could simply infer a connection between Gillette's departure and the alleged fraud." *Id.*

Plaintiffs assert that the evidence addressed in the MIL is relevant because "Gillette promptly learned of the [LPM] debacle and, as a result, held a gun to First Solar's head by demanding a new compensation package amidst First Solar's meltdown." Doc. 561 at 1 (brackets and quotation marks omitted). Plaintiffs further argue that Gillette knew his stock was worthless, refrained from selling it for this reason, understood his compensation would increase in value if the price of First Solar's stock increased, and was motivated to inflate First Solar's stock price in order to boost his own compensation package." *Id.* at 2. In other words, Plaintiff's assert that Gillette's departure was related to the fraud – the precise point on which the Court granted summary judgment. The Court **grants** the MIL.

- 16 -

Plaintiffs assert that Defendants will argue at trial that Gillette's purchase and retention of First Solar stock negates any inference of scienter, and will argue that Plaintiffs' theory of fraud is implausible because then-CEO Michael Ahearn and four other senior executives would not have turned the reins of the Company over to a new and unknown CEO if they had fraudulent intentions. If Plaintiffs believe that Defendants' evidence and argument before the jury make relevant any of the evidence or arguments subject to this MIL, they may raise the issue with the Court outside the presence of the jury and the Court will consider whether trial developments have made the evidence relevant and admissible.

**Defendants' MIL 3 (Docs. 516 (lodged), 517 (public)).** Defendants seek to preclude Plaintiffs from presenting evidence or argument that all Defendants, collectively, are responsible for all allegations of fraud in this case, in particular with respect to alleged fraud before April 4, 2011 for Mark Widmar. Plaintiffs do not dispute that Defendants Mark Widmar, Bruce Sohn, Jens Meyerhoff, and Robert Gillette either joined or left First Solar during the Class Period, or that the Court found that Widmar could not be held liable for concealing LPM because he joined First Solar after the existence of the defect had been publicly disclosed. Plaintiffs assert that "[a]ll of these facts will be made plain at trial and clearly represented in the evidence produced to the jury." Doc. 573 at 2. Plaintiffs further state that they "have no intention of implying that 'some Defendants are liable for conduct they could not have committed,' as defendants suggest." *Id.* at 3.

The Court **denies** the MIL. The Court will not attempt to script when Plaintiffs may use the word "Defendants." During trial, Defendants may object if they believe Plaintiffs are unfairly lumping Defendants together in arguments and evidence they present to the jury. The Court will rule when objections are made.

**Defendants' MIL 4 (Docs. 518 (lodged), 519 (public)).** Defendants seek to preclude Plaintiffs from presenting evidence or argument that any decline in First Solar's stock price is related to fraud, except as to the five alleged corrective disclosure events that survived Defendants' motion for summary judgment. Plaintiffs respond that they "will

only seek damages arising from the fraud-related declines on the dates that survived summary judgment: July 30, 2010, February 25, 2011, May 4, 2011, December 14, 2011, February 29, 2012, and March 1, 2012." Doc. 562 at 1. "Plaintiffs are not seeking damages for any other stock price declines on any other dates." *Id.*

Defendants express concern that Plaintiffs' expert may opine that the alleged fraud likely affected stock prices on other dates and that his damages estimate is therefore conservative. But such testimony would not constitute an attempt to collect damages for those other dates in violation of the Court's summary judgment ruling, and the Court cannot at this stage conclude that such testimony by the expert would be unfounded or inadmissible. The MIL is **denied**.

**Defendants' MIL 5 (Doc. 520).** Defendants seek an order that the parties may not use with their experts any exhibits, including demonstrative exhibits, that were not included with those experts' disclosures served in 2018. As Plaintiffs note, however, the parties submitted a stipulation to the Court which provided that the "[c]urrent version of Federal Rules of Civil Procedure shall apply to expert discovery, *except as stipulated below*." Doc. 141, ¶ 1 (emphasis added). The stipulation then stated: "In addition to the written expert report setting forth the expert's opinion in accordance with Fed. R. Civ. P. 26(a)(2), the parties shall produce, for each testifying expert, *only* the following: . . ." *Id.*, ¶ 4 (emphasis added). The list that follows does not include exhibits or demonstrative exhibits. *Id.* The Court adopted the stipulation in an order. Doc. 142. As Plaintiffs note, Rule 29(b) provides that "procedures governing or limiting discovery" may be modified by stipulation.

Defendants cite an exchange with the Court during the August 2, 2018 status conference, in which the Court stated its general view that Rule 26 requires experts to include demonstrative exhibits with their expert reports. Doc. 520 at 2, 8. At the time, however, the Court did not recall the parties' stipulation and counsel did not mention it. The Court did not intend to override the stipulation. The MIL is **denied**.

**Defendants' MIL 6 (Docs. 521 (lodged), 522 (public)).** Defendants seek to preclude Plaintiffs from presenting evidence or argument concerning any alleged

misstatements that were not identified by Plaintiffs before the Court's summary judgment decision, including new statements added to the list of 60 alleged misrepresentations served by Plaintiffs on August 31, 2018. The parties have since agreed that statements 9, 14, 31, and 36 are not at issue. Doc. 636. With respect to the remaining statements at issue, the materials submitted by the parties are difficult to parse. Plaintiffs shall prepare and file, **by December 16, 2019**, a table that shows the number of each statement at issue (17, 20, 22, 26, 38, 42, 46, 50, or 56), quotes the exact language of the statement, and quotes the exact language of the complaint or other discovery response (before August 31, 2018) that disclosed the statement to Defendants as an alleged misrepresentation or omission. The Court will address this table with the parties at the final pretrial conference.

**Defendants' MIL 7 (Docs. 523 (lodged), 525 (public)).** Defendants seek to preclude Plaintiffs from using the terms "insider trading," "insider," "illegal trades," or substantially similar phrases to refer to the Individual Defendants' transactions in First Solar stock. This motion led to a discussion during a conference call with the parties last week and to additional briefing on whether Plaintiffs have asserted a § 10(b) insider trading claim in this case. *See* Doc. 626. The Court has reviewed the additional briefing (Docs. 635, 637) and concludes that Plaintiffs have not asserted an insider trading claim.

The Ninth Circuit holds that § 10(b) and Rule 10b-5 "make it illegal in some circumstances for those possessing inside information about a company to trade in that company's securities unless they first disclose the information." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1000 (9th Cir. 2002). "This type of prohibition is known as an 'abstain or disclose' rule, because it requires insiders either to abstain from trading or to disclose the inside information that they possess." *Id.* The claim includes a contemporaneous trading requirement:

> In *Neubronner v. Milken*, 6 F.3d 666, 669 (9th Cir.1993), the Ninth Circuit adopted a contemporaneous trading requirement for Section 10(b) and Rule 10b–5 actions [based on insider trading]. *See also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 (9th Cir. 1994). *Neubronner* explained that two reasons animate this rule: First, "noncontemporaneous traders do not require the protection of the 'disclose or abstain' rule because they do not

suffer the disadvantage of trading with someone who has superior access to information." 6 F.3d at 669-70 (quoting *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 94 95 (2d Cir. 1981)). Second, the contemporaneous trading requirement puts reasonable limits on Section 10(b) and Rule 10b-5's reach; without such a limitation, an insider defendant could be liable to a very large number of parties. *Id.* at 670.

*Brody*, 280 F.3d at 1001.

The Ninth Circuit has not established a precise time frame for contemporaneous trading, but it has rejected the suggestion that trades within two months of the insider's sales can be considered contemporaneous. *Id.* at 1002 ("a contemporaneous trading period of two months would gut the contemporaneous trading rule's premise – that there is a need to filter out plaintiffs who could not possibly have traded with the insider, given the manner in which public trades are transacted").

Plaintiffs allege in their first amended complaint that the Individual Defendants engaged in insider trading and sold stock worth more than $400 million during the class period. *See* Doc. 93, ¶¶ 211-16. But the complaint cites these trades as evidence of scienter, alleging that the trading "raises a strong inference that defendants knew that they were deceiving the public." *Id.*, ¶ 211. The complaint does not assert that the trading was deceptive to those who engaged in contemporaneous transactions. Indeed, the complaint never mentions contemporaneous transactions.

Plaintiffs cite other references to insider trading in discovery and summary judgment briefing, but the Court cannot conclude that they have ever clearly asserted an insider trading claim based on contemporaneous trades. The undersigned judge has presided over this case for more than seven years, ruling on motions to dismiss, certifying the class, ruling on summary judgment, certifying a question to the circuit, and resolving numerous discovery disputes, and yet has never heard the suggestion that Plaintiffs were asserting an insider trading claim based on contemporaneous trades until last week.

What is more, the class in this case was certified with no mention of an insider trading claim and with no effort to tailor the class or a subclass to the contemporaneous

trading requirement of such a claim. The class is based on a § 10(b) misrepresentation claim and includes all who purchased First Solar stock between April 30, 2008 and February 28, 2012. Plaintiffs cannot plausibly suggest that all members of this four-year class traded First Solar stock within less than two months of the Individual Defendants' trades. And the Court cannot accept Plaintiffs' assertion that "contemporaneous" includes the period of time from a misrepresentation and insider trade to the end of the class period, particularly in light of the Ninth Circuit's holding that two months is too far removed. Nor can the Court accept Plaintiffs' assertion that their damages expert, who bases his analysis on misrepresentations and their effect on stock prices during the class period, can apply the same damages analysis to a contemporaneous insider trading claim.

The Court holds, therefore, that there is no insider trading claim in this case. This is a § 10(b) misrepresentation case, as alleged in the first amended complaint. Defendants' sales of First Solar stock will be relevant to the question of scienter and perhaps for other purposes, but not to a separate insider trading claim.

Even with this ruling, however, the Court will not grant the MIL. The Court will not limit Plaintiffs' ability to refer to the Individual Defendants' stock sales as insider sales or insider trades. The jury will not be confused as there will be no insider trading claim in argument or instructions. And the Court does not view the term "insider" as so pejorative as to raise Rule 403 concerns. The MIL is **denied**. Defendants may, as always, object if they believe improper evidence or argument is presented.

**Defendants' MIL 8 (Docs. 526 (lodged), 527 (public)).** Defendants seek to preclude Plaintiffs from referring to heat degradation or the hot climate issue as a "defect," or referring to LPM and heat degradation as the "two defects." Defendants contend that references to "defects" during trial would be unfairly prejudicial and should be precluded under Rule 403. The MIL is **denied**. Defendants will have a full and fair opportunity at trial to explain their view of the hot climate and LPM issues that arose in First Solar panels. The Court cannot conclude that the word "defect" is either a factually inaccurate statement of Plaintiffs' allegations or an inflammatory word that is likely to draw an emotional

response from the jury under Rule 403.  Nor does the Court find that use of the word will lengthen the trial or confuse the jury.

**Defendants' MIL 9 (Docs. 529 (lodged), 530 (sealed)).**  Defendants seek to preclude Plaintiffs from referring to the total proceeds of stock sales by Defendants as "profits."  Defendants contend that references to "profits" during trial would be unfairly prejudicial and should be precluded under Rule 403.  The MIL is **denied**.  Defendants will have a full and fair opportunity at trial to explain their view of proceeds from Defendants' stock sales.  The Court cannot conclude that the word "profits" is either a factually inaccurate statement of Plaintiffs' allegations or an inflammatory word that is likely to draw an emotional response from the jury under Rule 403.  Nor does the Court find that use of the word will lengthen the trial or confuse the jury.

**Defendants' MIL 10 (Doc. 531).**  Defendants seek to preclude Plaintiffs from presenting evidence or argument that compares the allegations in this case to alleged or actual corporate wrongdoing at other companies.  Plaintiffs respond that Defendants intend to compare First Solar's performance to less successful solar power companies and to extol the virtues of the solar power industry generally, and that such evidence will open to door to Plaintiffs showing the less favorable side of the industry.  The Court cannot decide this issue outside the context of trial and therefore **denies** the MIL.  The Court notes, however, that it intends to focus this trial on the relevant events and minimize references to extraneous matters, and normally would be inclined to exclude evidence of other companies' wrongdoing.  If Plaintiffs intend to present such evidence, they should raise it with the Court outside the hearing of the jury.

**Defendants' MIL 11 (Docs. 533 (lodged), 534 (public)).**  Defendants seek the following ruling:  When presenting evidence or argument about Individual Defendants' stock sales, Plaintiffs may not present evidence or argument about an Individual Defendant's state of mind at the time of a stock sale made pursuant to a Rule 10b5-1 trading plan, rather than state of mind at the time the Rule 10b5-1 plan was put in place.  The Court will not script Plaintiffs' presentation as Defendants suggest.  Scienter is a question of fact

for the jury. Plaintiffs may make factual arguments regarding the Rule 10b5-1 plans and their effect, if any, on the claims in this case, and Defendants can argue that only Defendants' intent when the plans were created should be considered by the jury. The MIL is **denied**.

**Defendants' MIL 12 (Docs. 535 (lodged), 536 (public)).** Defendants seek to preclude Plaintiffs from presenting evidence or argument about the SEC investigation into selective disclosure of nonpublic information by former First Solar employee Larry Polizzotto, except for the limited purpose of addressing issues of loss causation and damages with respect to the decline in First Solar's stock price on March 1, 2012, after First Solar disclosed the investigation. Defendants intend to introduce the SEC action themselves to show that the stock price drop on March 1, 2012 was not attributable to the disclosure of information related to the LPM and hot climate issues. Defendants further state: "Because it was an investigation by the SEC, jurors also need to know that it involved a violation of Reg FD, not securities fraud (and that those are different); that First Solar self-reported the Reg FD violation; that the SEC credited First Solar for its cooperation; and that neither First Solar nor any Individual Defendants was sanctioned in any way." Doc. 535 at 2. If Defendants intend to present this evidence, the Court cannot conclude that Plaintiffs should be limited to adopting Defendants' narrative about the SEC action. Cross-examination on the evidence Defendants elicit will be relevant, and the Court will not at this time attempt to limit what Plaintiffs can ask or argue. The MIL is **denied**.

**Defendants' MIL 13 (Doc. 537).** Defendants seek to preclude Plaintiffs from presenting evidence or argument about the reasons for the departure from First Solar of nonparty witnesses who are former First Solar employees. But why a witness left First Solar could be relevant. For example, if a witness was terminated because she objected to the nondisclosures at issue in this case, the termination clearly would be relevant. While Plaintiffs have not identified any such witness, the Court cannot conclude that other reasons for departing are not relevant to issues in the case, including witness credibility. The Court

will rule on objections during trial, when the context and relevancy of evidence is better understood.  The MIL is **denied**.

**Defendants' MIL 14 (Doc. 539).**  Defendants seek to preclude Plaintiffs from presenting evidence or argument concerning the Defendants' personal wealth.  But Plaintiffs allege that Defendants failed to disclose material information about the company in order to maintain its stock price and sell their own shares for substantial sums.  Plaintiffs are entitled to present their theory to the jury, including the sums Defendants' received when they sold their shares.  The Court will not preclude Plaintiffs from eliciting testimony about amounts Defendants received when they sold their shares as alleged in the first amended complaint; it is relevant to motive and scienter.  The Court has difficulty seeing the relevancy of other evidence of Defendants' wealth, such as their net worth or lifestyle independent of the stock sales alleged in the complaints, and thinks that such evidence would present a risk of unfair prejudice that would outweigh its marginal relevance.  The Court therefore **grants** the MIL with respect to evidence of wealth independent of sums Defendants received for the stock sales alleged in the complaint.  If Plaintiffs believe such excluded evidence becomes relevant during trial, they may raise the issue with the Court outside the hearing of the jury.

**Defendants' MIL 15 (Doc. 540).**  Defendants seek to preclude Plaintiffs from presenting video clips of stock analyst interviews, in particular a February 28, 2012 video from the CNBC program "Fast Money" in which the hosts interview stock analyst Gordon Johnson about First Solar.  Defendants contend that the video is hearsay and unfairly prejudicial under Rule 403.  Plaintiffs respond that the evidence is not being offered to prove the truth of the matter asserted and therefore does not fall within the hearsay rule.  Plaintiffs argue that the evidence is offered to prove the materiality of, and the market's reaction to, First Solar's public disclosures, as well as loss causation.  Doc. 585 at 3.  The Court agrees that the video clip, independent of the truth of what is said by the commentators (or even reported about German problems), is relevant to show the market's reaction to the February 28, 2012 disclosures, their materiality, and loss causation.  When

offered for these purposes and not for the truth of the matters asserted, the clip is not barred by the hearsay rule. *See* Fed. R. Evid. 801(c)(2). At the parties' request, the Court will instruct the jury on the limited purpose for which the clip is offered. The Court also concludes that the clip's probative value is not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The MIL is **denied**.

**Defendants' MIL 16 (Doc. 541).** Defendants seek to preclude Plaintiffs from presenting evidence or argument concerning the safety of First Solar's thin-film solar panels or the cadmium they contain, including references to them as toxic, dangerous, unsafe, carcinogenic, or words to that effect. Plaintiffs respond, rather imprecisely, that the risks presented to First Solar by the toxic nature of cadmium in the panels must be explained to the jury to place the LPM and hot climate issues in context. Doc. 569 at 2. The Court is not persuaded. This case is not about potential health effects of the solar panels or how those health risks affected the market for First Solar stock.

The only specific relevancy identified by Plaintiffs concerns an October 2009 email from Jens Meyerhoff. The Court is unable to review this email, however, because Plaintiffs' cite to the record is incorrect (Doc. 569 at 3, citing to Doc. 473, Ex. 11 at 54).

The Court **grants** the MIL. If Plaintiffs believe information about the health risks of First Solar panels becomes relevant during trial to explain the email or counter other evidence presented by Defendants, they may raise the issue with the Court outside the hearing of the jury.

**Defendants' MIL 17 (Doc. 542).** Defendants seek to preclude Plaintiffs from presenting evidence or argument concerning other actions against Defendants involving allegations similar to those alleged by Plaintiffs in this action, in particular, the federal derivative action, the state derivative action and the *Maverick* action. This evidence is irrelevant and barred by Rule 403. The MIL is **granted**. If Plaintiff believe Defendants open the door to such evidence during trial, they may raise the issue with the Court outside the hearing of the jury.

**Defendants' MIL 18 (Docs. 543 (lodged), 544 (public)).** Defendants seek to preclude Plaintiffs from presenting evidence or argument about Defendants' interlocutory appeal in this case, including the Ninth Circuit decision and the Supreme Court certiorari proceedings. This evidence is irrelevant. The MIL is **granted**. The Court will instruct the jury on the law. Witnesses should not testify regarding their understanding of the law from the Ninth Circuit's decision in this case. If any party believes a clarifying instruction is needed during trial, they may request it.

Dated this 9th day of December, 2019.

David G. Campbell
Senior United States District Judge