1

2
ROBBINS GELLER RUDMAN & DOWD LLP
Daniel S. Drosman (CA SBN 200643) (Admitted *pro hac vice*)
Luke O. Brooks (CA SBN 212802) (Admitted *pro hac vice*)

3
Ellen Gusikoff Stewart (CA SBN 144892) (Admitted *pro hac vice*)
Jessica T. Shinnefield (CA SBN 234432) (Admitted *pro hac vice*)

4
Darryl J. Alvarado (CA SBN 253213) (Admitted *pro hac vice*)
Christopher D. Stewart (CA SBN 270448) (Admitted *pro hac vice*)

5
Hillary B. Stakem (CA SBN 286152) (Admitted *pro hac vice*)
J. Marco Janoski Gray (CA SBN 306547) (Admitted *pro hac vice*)

6
Ting H. Liu (CA SBN 307747) (Admitted *pro hac vice*)
655 West Broadway, Suite 1900

7
San Diego, CA  92101
Telephone:  619/231-1058

8
619/231-7423 (fax)
dand@rgrdlaw.com

9
lukeb@rgrdlaw.com
elleng@rgrdlaw.com

10
jshinnefield@rgrdlaw.com
dalvarado@rgrdlaw.com

11
cstewart@rgrdlaw.com
hstakem@rgrdlaw.com

12
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com

13
Lead Counsel for Plaintiffs

14
[Additional counsel appear on signature page.]

15

UNITED STATES DISTRICT COURT

16

DISTRICT OF ARIZONA

17

18

Mark Smilovits, Individually and on Behalf ) 
of All Others Similarly Situated, )

No. 2:12-cv-00555-DGC

19

Plaintiff, )

CLASS ACTION

20

vs. )

LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

21

First Solar, Inc., Michael J. Ahearn, Robert )
J. Gillette, Mark R. Widmar, Jens )

22

Meyerhoff, James Zhu, Bruce Sohn and )
David Eaglesham, )

23

24

Defendants. )
_____ )

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    OVERVIEW OF THE LITIGATION ................................................................. 2

III.   TERMS OF THE SETTLEMENT .................................................................... 4

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS
       WARRANTED ..................................................................................................... 6

       A.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the
             Class ........................................................................................................... 7

       B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length
             Negotiations by Informed, Experienced Counsel Who Were Aware
             of the Risks of the Litigation ................................................................... 8

       C.    The Settlement Provides Adequate Relief for the Class ........................ 9

             1.    The Costs, Risks and Delay of Trial and Appeal Support
                   Approval of the Settlement .............................................................. 10

             2.    The Proposed Method for Distributing Relief Is Effective .............. 12

             3.    Attorneys' Fees ................................................................................ 12

       D.    The Proposed Plan of Allocation Treats Class Members Equitably
             and Does Not Confer Preferential Treatment ......................................... 13

       E.    The Remaining Ninth Circuit Factors Support Preliminary Approval
             of the Settlement ..................................................................................... 14

             1.    The Extent of Discovery Completed and the Stage of the
                   Proceedings at Which the Settlement Was Achieved Strongly
                   Supports Preliminary Approval ....................................................... 14

             2.    Risk of Maintaining Class Action Status Through Trial ................. 14

             3.    Experience and Views of Counsel .................................................. 15

V.     THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE
       TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P.
       23, THE PSLRA, AND DUE PROCESS ......................................................... 15

VI.    CONCLUSION .................................................................................................. 17

4818-3556-0627.v2

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Cheng Jiangchen v. Rentech, Inc.*,

5

    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ............................................................... 10

6

*Ciuffitelli v. Deloitte & Touche LLP*,

    2019 WL 1441634 (D. Or. Mar. 19, 2019) ................................................................. 14

7

8

*Dusek v. Mattel, Inc.*,

    2003 WL 27380800 (C.D. Cal. Sept. 29, 2003) ......................................................... 13

9

*Eisen v. Carlisle & Jacquelin*,

10

    417 U.S. 156 (1974) .................................................................................................... 16

11

*Franklin v. Kaypro Corp.*,

12

    884 F.2d 1222 (9th Cir. 1989) ...................................................................................... 6

13

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 7

14

*Hefler v. Wells Fargo & Co.*,

15

    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................................................... *passim*

16

*In re Banc of California Sec. Litig.*,

17

    2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ............................................................ 8, 9

18

*In re Bluetooth Headset Prods. Liab. Litig.*,

19

    654 F.3d 935 (9th Cir. 2011) ...................................................................................... 13

20

*In re Broadcom Corp. Sec. Litig.*,

    2005 WL 8153006 (C.D. Cal. Sept. 12, 2005) ........................................................... 13

21

22

*In re Charles Schwab Corp. Sec. Litig.*,

    2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ........................................................... 14

23

*In re Extreme Networks, Inc. Sec. Litig.*,

24

    2019 WL 3290770 (N.D. Cal. July 22, 2019) .............................................................. 8

25

*In re Hyundai & Kia Fuel Econ. Litig.*,

26

    926 F.3d 539 (9th Cir. 2019) ........................................................................................ 6

27

*In re MGM Mirage Sec. Litig.*,

    708 Fed. Appx. 894 (9th Cir. 2017)) .............................................................. 8, 13, 16

28

4818-3556-0627.v2

**Page**

*In re Omnivision Techs., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................... 15

*In re Zynga Inc. Sec. Litig.,*
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ............................ 5, 10, 11, 13

*Mauss v. NuVasive, Inc.,*
2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ...................... 10, 13

*Maverick Fund, L.D.C. v. First Solar, Inc.,*
No. 2:15-cv-01156-DGC (D. Ariz.).................... 5

*Mineworkers' Pension Scheme et al. v. First Solar Inc.,*
No. 15-80155 (9th Cir.) ...................... 3

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
339 U.S. 306 (1950)........................ 17

*Pataky v. Brigantine, Inc.,*
2018 WL 3020159 (S.D. Cal. June 18, 2018)................ 9

*Redwen v. Sino Clean Energy, Inc.,*
2013 WL 12129279 (C.D. Cal. Mar. 13, 2013)............ 7

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ................ 6, 15, 16

*Van Bronkhorst v. Safeco Corp.,*
529 F.2d 943 (9th Cir. 1976) .................. 6

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir. 2002) ................ 13

*Weeks v. Kellogg Co.,*
2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)............ 11

*Young v. LG Chem Ltd.,*
783 Fed. Appx. 727 (9th Cir. 2019)................ 6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b)........................ 2
§78t(a)........................ 2
§78u-4(a)(4) .................. 5, 16, 17

4818-3556-0627.v2

Page

28 U.S.C.
§1292(b) ................................................................................................. 3

Federal Rules of Civil Procedure
Rule 23 ................................................................................................. 16
Rule 23(c)(1) ......................................................................................... 14
Rule 23(c)(2)(B) .................................................................................... 15
Rule 23(e) ............................................................................................ 2, 6
Rule 23(e)(1) ........................................................................................... 6
Rule 23(e)(1)(B) .................................................................................... 15
Rule 23(e)(1)(B)(ii) ................................................................................. 6
Rule 23(e)(2) .................................................................................. 6, 7, 15
Rule 23(e)(2)(A) ...................................................................................... 7
Rule 23(e)(2)(B) ...................................................................................... 8
Rule 23(e)(2)(C)(i) ................................................................................ 10
Rule 23(e)(2)(C)(ii) ............................................................................... 12
Rule 23(e)(2)(C)(iii) .............................................................................. 13
Rule 23(e)(2)(D) .................................................................................... 13
Rule 23(e)(3) ..................................................................................... 7, 10
Rule 23(h)(1) ........................................................................................ 17

Federal Rules of Evidence
Rule 702 ................................................................................................. 4

17 C.F.R.
§240.10b-5 ......................................................................................... 2, 10

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2019 Full-Year
Review* (NERA Jan. 21, 2020) ............................................................ 10

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlements – 2018 Review and Analysis*
(Cornerstone Research 2019) ................................................................. 9

4818-3556-0627.v2

## I.     INTRODUCTION

After more than seven years of vigorous litigation and extensive arm's-length negotiations, on the eve of trial, the Settling Parties[1] reached a proposed Settlement of this securities class action in exchange for $350,000,000 in cash.  Lead Plaintiffs now request the Court to preliminarily approve the proposed Settlement.  As set forth below, the Settlement is the product of good-faith, arm's-length negotiations between experienced counsel with the assistance of the Honorable Layn Phillips (Ret.) and Phillips ADR Enterprises, a highly respected mediation firm that has extensive experience in complex securities litigation.  The Settlement, which represents approximately 34% of the estimated maximum possible damages in this case, is an excellent result for the Class and falls well within the range of possible approval.

The Settling Parties reached the Settlement just days prior to their trial date, at a time when each side had an appreciation for the strengths and weaknesses of its respective case.  By the time the Settlement was reached, Lead Plaintiffs had, for example: (i) filed a detailed First Amended Complaint for Violation of the Federal Securities Laws ("Complaint"); (ii) litigated Defendants' motion to dismiss the Complaint; (iii) completed extensive fact discovery involving the exchange of more than 515,000 documents and more than 20 fact depositions; (iv) successfully obtained class certification; (v) distributed notice of the pendency of this Action to potential Class members; (vi) briefed, argued and defeated Defendants' motion for summary judgment, appeal from the Court's order denying the motion, and petition for certiorari to the United States Supreme Court; (vii) completed expert discovery, involving the exchange of 15 expert reports and 10 expert depositions; (viii) briefed and received rulings on nine *Daubert* motions and 38 motions *in limine*; and (ix) attended a final pretrial conference on December 18, 2019.  As set forth below, the Settlement recovers an exceptional percentage of Lead Plaintiffs' estimated Class damages as compared to the median recovery percentage for securities class actions.

---

[1]     Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated February 13, 2020 ("Stipulation"), submitted herewith.

The Settlement meets all the requirements for preliminary approval under Rule 23(e), as amended on December 1, 2018, and the Court should grant such approval so that notice of the Settlement may be provided to the Class.

## II.      OVERVIEW OF THE LITIGATION

The initial complaint in this action was filed on March 15, 2012.  ECF 1.  On July 23, 2012, the Court appointed Mineworkers' Pension Scheme and British Coal Staff Superannuation Scheme as Lead Plaintiffs and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.  ECF 89.

Lead Plaintiffs filed the Complaint on August 17, 2012, alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. ECF 93.  The Complaint asserted claims on behalf of all persons who purchased or otherwise acquired First Solar's publicly traded securities between April 30, 2008 and February 28, 2012, inclusive.  *Id.* at 1.  Defendants moved to dismiss the Complaint.  ECF 102, 113.  After Lead Plaintiffs opposed Defendants' motion (ECF 109), the Court denied Defendants' motion in its entirety on December 17, 2012.  ECF 114.

Defendants answered the Complaint on January 29, 2013 (ECF 123), and the parties began formal fact discovery.  ECF 120.  Discovery was hard-fought; the parties held technical and exhaustive discussions about the method and form of Defendants' productions, including the search terms and techniques that Defendants would employ in responding to Lead Plaintiffs' discovery requests, and briefed several discovery disputes for decision by the Court.  Ultimately, Lead Plaintiffs' and Class Counsel's efforts led to the production of 515,000 documents from nearly 40 custodians with Defendants and 30 third parties as well as sworn interrogatory responses and admissions from Defendants, and took 21 fact witness depositions.  Lead Plaintiffs also responded to Defendants' discovery, including by sitting for deposition, and providing responses to document requests and interrogatories, and producing documents.

On October 8, 2013, after briefing and argument from the parties, the Court certified a Class of all persons who purchased or otherwise acquired the publicly-traded securities of

First Solar between April 30, 2008 and February 28, 2012.  ECF 171.  The Court appointed Lead Plaintiffs as Class Representatives and appointed Robbins Geller Rudman & Dowd LLP as Class Counsel.  *Id.*  Class Counsel, in accordance with the Court's December 3, 2013 order, distributed notice of the Class Action to potential Class members.  ECF 193.  It received 231 timely requests to opt-out of the Litigation.  *Id.*

On March 27, 2015, Defendants moved for summary judgment on all of Lead Plaintiffs' claims (ECF 311) and Lead Plaintiffs moved for summary judgment on 18 of Defendants' affirmative defenses.  ECF 309, 310.  After full briefing and argument from the parties, on August 11, 2015, the Court denied Lead Plaintiffs' motion, but struck twelve of Defendants' affirmative defenses, and denied in part and granted in part Defendants' motion for summary judgment.  ECF 401.  The Court also certified the issue of what test for loss causation is correct in the Ninth Circuit for immediate appeal under 28 U.S.C. §1292(b).  ECF 401 at 48-49.

Defendants appealed the Court's summary judgment decision on August 20, 2015.  *See Mineworkers' Pension Scheme et al. v. First Solar Inc., et al*, ECF 1-1, No. 15-80155 (9th Cir.).  On March 14, 2017, after interim briefing before the Ninth Circuit, Lead Plaintiffs filed their answering brief.  No. 15-17282 ("Appeal"), ECF 28.  After full briefing and hearing argument by the parties on October 18, 2017, on January 31, 2018, the Ninth Circuit upheld the Court's summary judgment order.   Appeal, ECF 60-1.  The Ninth Circuit's formal mandate was issued on June 26, 2018.  Appeal, ECF 77.  On March 16, 2018, Defendants petitioned the Ninth Circuit for panel rehearing and rehearing *en banc* (Appeal, ECF 65), which were both denied on May 7, 2018.  Appeal, ECF 70.

On August 6, 2018, Defendants petitioned the U.S. Supreme Court for a writ of certiorari, which Lead Plaintiffs opposed on September 5, 2018.  *First Solar, Inc., et al. v. Mineworkers' Pension Scheme and British Coal Staff Superannuation Scheme*, No. 18-164.  On October 9, 2018, the Supreme Court issued an order calling for the views of the Solicitor General on the matters raised in Defendants' petition.  The Solicitor General recommended

that the Supreme Court deny the Defendants' petition on May 15, 2019, and on June 24, 2019, the Supreme Court denied Defendants' petition.

While Defendants' petition to the Supreme Court was pending, the parties conducted extensive expert discovery on issues including loss causation, damages, market analysis, solar technology and accounting.  In total, the parties produced 15 expert reports from 11 experts, took 10 expert depositions, and produced numerous expert-related documents.

Following the Supreme Court's decision, the Court set a trial date of January 7, 2020. ECF 463.  The parties' trial preparation included briefing on 38 motions *in limine* and nine motions to exclude expert testimony under *Daubert* and Federal Rules of Evidence 702, negotiation and submission of a proposed joint pretrial order to the Court, and attending a final pretrial conference.

During the course of the Litigation, the parties engaged a neutral third-party mediator, the Hon. Layn Phillips (Ret.), and held direct settlement discussions.  Lead Counsel met in person with the mediator and Defendants' Counsel on multiple occasions, and convened various teleconferences.  On January 5, 2020, the Settling Parties agreed to settle the Litigation for $350,000,000 subject to approval by the Court.

## III.    TERMS OF THE SETTLEMENT

This Settlement requires Defendants to pay, or cause to be paid, $350,000,000 to the Escrow Agent, which amount, plus all interest and accretions thereto, comprises the Settlement Fund.  Stipulation, ¶2.2.  The Settlement was deposited into the Escrow Account on January 24, 2020, and is currently earning interest for the benefit of the Class.

Notice to the Class and the cost of settlement administration will be funded by the Settlement Fund.  *Id.*, ¶2.11.  Lead Plaintiffs propose a nationally recognized class action settlement administrator, Gilardi & Co. LLC, which previously distributed notice of the class action following class certification in 2013, to be retained subject to the Court's approval. The proposed notice plan and plan for claims processing is discussed below in §V and in the Declaration of Michael Joaquin Regarding Notice and Claims Process ("Joaquin Declaration"), submitted herewith.

- 4 -

1    The Notice provides that Lead Counsel will move for final approval of the Settlement

2    and: (a) an award of attorneys' fees in the amount of no more than 19% of the Settlement

3    Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation

4    not in excess of $6 million; and (c) any interest on such amounts at the same rate and for the

5    same period as earned by the Settlement Fund.  Further, as explained in the Notice, Lead

6    Plaintiffs intend to request an amount not to exceed $100,000 in the aggregate pursuant to 15

7    U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

8    Once Notice and Administration Expenses, Taxes, Tax Expenses and Court-approved

9    attorneys' fees and expenses and any award to Lead Plaintiffs pursuant to 15 U.S.C. §78u-

10    4(a)(4) in connection with their representation of the Class have been paid from the

11    Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed

12    pursuant to the Court approved Plan of Allocation to Authorized Claimants who are entitled

13    to a distribution of at least $10.  Stipulation, ¶5.10.  These distributions shall be repeated

14    until the balance remaining in the Settlement Fund is *de minimis*.  *Id.*  Any *de minimis*

15    balance that still remains in the Net Settlement Fund after such allocation(s) and payments,

16    which is not feasible or economical to reallocate shall be donated to an appropriate charitable

17    organization unaffiliated with any party or their counsel serving the public interest.[2]  *Id.*  The

18    Plan of Allocation treats all Class Members equitably based on the timing of their First Solar

19    common stock purchases, acquisitions and sales.

20    In exchange for the benefits provided under the Stipulation, all Class Members –

21    except those who previously requested exclusion pursuant to the Notice of Pendency of

22    Class Action provided in December 2013 and the plaintiffs in the *Maverick* action[3] – will

23    release any and all claims and causes of action of every nature and description, whether

---

24    [2]    This *cy pres* provision is, as another court in this Circuit described a nearly identical
provision, "a fallback plan."  *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *11 (N.D.
25    Cal. Oct. 27, 2015) ("[I]n light of the possibility of such a small amount of the funds being
directed to a charitable organization, the Court is satisfied with the conditions that the
26    organization be unaffiliated with either party and, in any event, subject to later court
approval.").

27

28    [3]    *Maverick Fund, L.D.C. v. First Solar, Inc. et al.*, No. 2:15-cv-01156-DGC (D. Ariz.).

known or unknown, whether arising under federal, state, common or foreign law, that Lead Plaintiffs or any other members of the Class asserted or could have asserted in any forum that arise out of or are based upon (a) the allegations, transactions, facts, matters or occurrences, representations or omissions referred to in the Complaint, and (b) the purchase or acquisition of First Solar publicly-traded securities during the Class Period.  Stipulation, ¶1.22.

## IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

Courts recognize that public policy strongly favors settlements to resolve disputes, "'particularly where complex class action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019);[4] *see also Young v. LG Chem Ltd.*, 783 Fed. Appx. 727, 737 (9th Cir. 2019) (same).  Moreover, courts should defer to "the private consensual decision of the parties" to settle and advance the "'overriding public interest in settling and quieting litigation.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action.  Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  As to Rule 23(e)(1)(B)(ii), the Court need not determine whether it could certify a class here because it has already certified the Class.

Rule 23(e)(2) provides:

(2)  ***Approval of the Proposal.***  If the proposal would bind class members, the court may approve it only if after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:  (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

---

[4]  All citations are omitted unless otherwise noted.

appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition, the Ninth Circuit considers the following factors, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[5]

As discussed below, the proposed Settlement here easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit factors, such that Notice of the proposed Settlement should be sent to the Class in advance of the final Settlement Hearing.

### A.   Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class

As described above, Lead Plaintiffs and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation for more than seven years, until the eve of a multi-week trial.  These vigorous efforts on behalf of the Class unquestionably satisfy the requirements of Rule 23(e)(2)(A).  *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) ("*Hefler*") (reiterating, in finding Rule 23(e)(2)(A) satisfied for purposes of finally approving settlement, that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) ("*Extreme Networks*") (same).

---

[5]   Because notice of the Settlement has not yet been provided to the Class, the Court does not yet have the benefit of the Class's reaction.  *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013).

1
2

**B.  The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation**

3    Rule 23(e)(2)(B) asks whether a proposed settlement is procedurally adequate, *i.e.*,

4    whether "the proposal was negotiated at arm's length."  The use of an experienced mediator

5    to reach the settlement is an "important factor" supporting a finding this requirement is

6    satisfied.  *See In re Banc of California Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec.

7    4, 2019) ("*Banc of California*"); *Extreme Networks*, 2019 WL 3290770, at *7 (settlement

8    procedurally fair where it was the product of "mediation sessions and follow-up

9    communications supervised by an experienced mediator").

10    Here, the proposed Settlement was only achieved after multiple attempts at mediation,

11    including three prior in-person mediation sessions with Judge Phillips where Lead Counsel

12    and Defendants' Counsel prepared and presented submissions concerning their respective

13    views on the merits of the litigation, along with supporting evidence obtained through

14    discovery.  In the last, successful round of mediation, Judge Phillips issued a recommended

15    range of negotiation based on his analysis of the case, as well as the positions expressed by

16    Lead Counsel and Defendants' Counsel through multiple phone calls and email

17    communications, and detailed a set of procedures for negotiations to proceed.   The

18    negotiations were at all times adversarial and performed at arm's length, and produced a

19    result that is in the Class's best interests.  The protracted negotiations under the supervision

20    of a neutral experienced mediator evidence that the $350,000,000 Settlement was reached at

21    arm's length.  *See Hefler*, 2018 WL 6619983, at *6 ("[T]he Settlement was the product of

22    arm's length negotiations through two full-day mediation sessions and multiple follow-up

23    calls supervised by former U.S. District Judge Layn Phillips."); *In re MGM Mirage Sec.*

24    *Litig.*, 708 Fed. Appx. 894, 897 (9th Cir. 2017) ("*MGM*") (district court appropriately

25    approved settlement reached "after extensive negotiations before a nationally recognized

26    mediator, retired U.S. District Judge Layn R. Phillips").

27    Additionally, "[a] settlement is presumed to be fair if reached in arms-length

28    negotiations after relevant discovery has taken place." *Pataky v. Brigantine, Inc.*, 2018 WL

1    3020159, at *3 (S.D. Cal. June 18, 2018); *see also Banc of California*, 2019 WL 6605884, at

2    *2 (that settlement had occurred after "the parties have grappled with significant discovery

3    throughout the case," and "plaintiffs successfully opposed Defendants' motions to dismiss,

4    obtained class certification, and underwent two full days of in-person mediation" "tend[ed]

5    to show that the settlement is based on a sufficient understanding of what's at stake in this

6    case").  Here, not only had Lead Plaintiffs completed exhaustive fact and expert discovery at

7    the time they negotiated the Settlement on behalf of the Class, but as the Settlement was

8    reached a mere two days prior to trial beginning, the contours of the trial – including which

9    witnesses would be permitted to testify, what types of evidence generally would be

10   permitted, and even what expert demonstratives would be presented to the jury – were also

11   known.  In sum, Lead Counsel, experienced securities litigators, were armed with extensive

12   information generated through seven years of litigation at the time they and Lead Plaintiffs

13   negotiated the Settlement.  The result, as discussed below, is the recovery of a substantial

14   portion of the Class' potential damages.

15        **C.    The Settlement Provides Adequate Relief for the Class**

16        The $350 million recovery achieved by the Settlement is undeniably an excellent

17   result for the Class.  The Settlement Amount recovers approximately 34% of the estimated

18   maximum recoverable damages as calculated by Plaintiffs' damages expert, Dr. Steven

19   Feinstein, and 122% of a maximum to Plaintiffs' calculation of damages described by

20   Defendants' expert, Dr. Allan Kleidon.[6]  The 34% of damages recovered is over 15 times the

21   median percentage recovery for cases settled with estimated damages of $1 billion or more in

22   2018, and approximately 16 times the median ratio of settlements to investor losses in 2019.

23   *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action*

24   *Settlements – 2018 Review and Analysis* at 6, Figure 5 (Cornerstone Research 2019) (median

25   settlements as a percentage of estimated damages was 2% in 2018 for Rule 10b-5 cases

26   involving over $1 billion in damages); Janeen McIntosh and Svetlana Starykh, *Recent*

---

27   [6]   Dr. Kleidon's expert opinion was that damages were $0, which presented litigation risk to

28   Plaintiffs.

*Trends in Securities Class Action Litigation: 2019 Full-Year Review* at 20, Figure 13 (NERA Jan. 21, 2020) (median ratio of settlements to investor losses was 2.1% in 2019); *Hefler*, 2018 WL 6619983, at *8 (15% recovery weighed in favor of approving settlement, as it was "higher than recoveries achieved in other securities fraud class actions of similar size (over $1 billion in estimated damages), which settled for median recoveries of 2.5 percent between 2008 and 2016 and 3 percent in 2017"); *Zynga*, 2015 WL 6471171, at *11 (14% recovery "exceeds the typical recovery" in securities fraud class action settlements); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) ("A 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases.").

As discussed below, the benefits conferred on Class Members by the Settlement outweigh the costs, risks and delay of further litigation and the attorneys' fees to be requested are reasonable.[7]   Accordingly, the relief provided by the Settlement is adequate and supports approval.

### 1.   The Costs, Risks and Delay of Trial and Appeal Support Approval of the Settlement

Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning the "strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and "the amount offered in settlement," are also satisfied because the $350,000,000 recovery provides a significant and immediate benefit to the Class, especially in light of the costs, risks and delay posed by continued litigation.   *Hefler*, 2018 WL 6619983, at *3. "'[S]ecurities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'"   *Id.* at *13; *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) ("*NuVasive*") (noting that "[s]ecurities class actions are complex actions to litigate" and involve "a complex and highly risky trial and likely post-trial appeals and motion practice").

---

[7]   There are no other agreements that have been entered into as part of the proposed settlement that are required to be identified under Rule 23(e)(3).

4818-3556-0627.v2

While Lead Plaintiffs remain confident in their ability to ultimately prove the Class' claims at trial, Lead Plaintiffs would be required to prove all elements of their claims to prevail, while Defendants need only succeed on one defense to potentially defeat the entire action.

Here, Defendants advanced several arguments disputing both liability and damages. For example, Defendants raised numerous challenges disputing the falsity of their alleged misstatements and vigorously disputed scienter.  Defendants also challenged Plaintiffs' theory of loss causation and damages, arguing that it does not match their liability allegations and so could not support a jury verdict in Plaintiffs' favor.  *See Zynga*, 2015 WL 6471171, at *9 ("[I]n 'any securities litigation case, it is difficult for plaintiff to prove loss causation and damages at trial.'").  Defendants intended to proffer expert testimony that ***no*** damages could be properly attributed to the alleged fraud, and that even if the jury found some liability and damages, the maximum provable damages were less than ***20%*** of the damages Plaintiffs claimed.  These arguments, plus the sheer complexity of the subjects at issue – solar technology, accounting, and complex statistics – and the fact that Defendants engaged competing expert witnesses to testify in support of Defendants' major defenses were substantial obstacles to Plaintiffs' success at trial.  *See, e.g.*, *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) ("The fact that this issue, which is at the heart of plaintiffs' case, would have been the subject of competing expert testimony suggests that plaintiffs' ability to prove liability was somewhat unclear; this favors a finding that the settlement is fair.").

Barring settlement, this case would require the expenditure of substantial additional sums of money, with no guarantee that any additional benefit would be provided to the Class.  Even if Lead Plaintiffs succeeded at trial, Defendants would almost certainly file an appeal – a process that could further extend the litigation for years, as the parties in this case have already seen, and risk reversal of the verdict in favor of Defendants.  Defense counsel also indicated that Defendants may push for a "Phase Two" of the litigation after trial, where Defendants would seek to rebut the presumption of reliance for absent Class Members.  *See,*

1   *e.g.*, ECF 611 at 2 n.2 ("Issues of individual reliance for **absent** class members – who have

2   not yet been identified – naturally must follow trial.") (emphasis in original).  Such a process

3   can be lengthy, complex, and extremely costly.   Conversely, the settlement confers a

4   substantial and immediate benefit on the Class, and avoids the risks associated with

5   obtaining a wholly speculative, but potentially larger, sum several years from now.

6       The Settlement balances the risks, costs and delay inherent in complex cases evenly

7   with respect to all parties.  Given the risks of continued litigation and the time and expense

8   that would be incurred to prosecute the Litigation through trial, the $350 million Settlement

9   is a meaningful recovery that is in the Class's best interests.

10              **2.       The Proposed Method for Distributing Relief Is Effective**

11      As demonstrated below in §V and in the Joaquin Declaration submitted herewith, the

12   method and effectiveness of the proposed notice and claims administration process (Rule

13   23(e)(2)(C)(ii)) are effective.  The notice plan includes direct mail notice to all those who

14   can be identified with reasonable effort supplemented by publication of the Summary Notice

15   in *The Wall Street Journal* and once over a national newswire service.   In addition, a

16   settlement-specific website will be created where key documents will be posted.  Joaquin

17   Decl., ¶18.

18      The claims process is also effective and includes a standard claim form that requests

19   the information necessary to calculate a claimant's claim amount pursuant to the Plan of

20   Allocation ("Plan").  The Plan will govern how Class Members' claims will be calculated

21   and, ultimately, how money will be distributed to Authorized Claimants.  The Plan was

22   prepared with the assistance of Lead Plaintiffs' damages expert and is based primarily on the

23   expert's event study and analysis estimating the amount of artificial inflation in the price of

24   First Solar common stock during the Class Period.  A thorough claim review process, is also

25   explained in the Joaquin Declaration, ¶¶25-27.

26              **3.       Attorneys' Fees**

27      Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

28   including timing of payment."  As discussed above (*supra* §IV.C.3.), Lead Counsel intends

- 12 -

to seek an award of attorneys' fees of no more than 19% of the Settlement Amount and expenses in an amount not to exceed $6 million, plus interest on both amounts.  This fee request is in line with other settlements approved in the Ninth Circuit.  *See MGM*, 708 Fed. Appx. at 897 (upholding fee award of 25% in $75 million settlement); *Hefler*, 2018 WL 6619983 at *13 (granting fee award of 20% of $480 million settlement); *Dusek v. Mattel, Inc.*, 2003 WL 27380800, at *6-*7 (C.D. Cal. Sept. 29, 2003) (class counsel's request for 27% fee award from $127 million settlement was reasonable); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153006, at *4 (C.D. Cal. Sept. 12, 2005) (granting requested fee of 25% of $150 million settlement).  Moreover, the requested fee is less than the 25% "benchmark" that the Ninth Circuit has held is reasonable for fee awards in class action cases.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (upholding 28% fee award of $97 million cash settlement fund).  In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.

### D.   The Proposed Plan of Allocation Treats Class Members Equitably and Does Not Confer Preferential Treatment

Rule 23(e)(2)(D) asks whether the proposal, here the Plan, treats class members equitably relative to each other.  Drafted with the assistance of Lead Plaintiffs' damages expert, the Plan of Allocation is fair, reasonable, and adequate; it does not treat the Lead Plaintiffs or any other Class Member preferentially.  *See Zynga*, 2015 WL 6471171, at *10. Specifically, the Plan provides formulas for calculating the recognized claim of each Class Member, based on each such person's purchases or acquisitions of First Solar common stock on the open market during the Class Period and when they sold.  "'A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'" *NuVasive*, 2018 WL 6421623, at *4.

Each Authorized Claimant, including the Lead Plaintiffs, will receive a distribution pursuant to the Plan.  Lead Plaintiffs will be subject to the same formula for distribution of the Settlement.  *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or.

Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a *pro rata* distribution based [sic] of the Settlement Fund based on their net losses").

### E. The Remaining Ninth Circuit Factors Support Preliminary Approval of the Settlement

#### 1. The Extent of Discovery Completed and the Stage of the Proceedings at Which the Settlement Was Achieved Strongly Supports Preliminary Approval

The extent of discovery completed and the stage of the proceedings also support preliminary approval of the Settlement. Lead Plaintiffs' decision to enter into the Settlement was based on an understanding of the strengths and weaknesses of the Class' claims and Defendants' defenses. Indeed, as the Settlement was reached just days before trial was due to start, both sides had a thorough understanding of the arguments, evidence, and witnesses that would be presented. There can be no question that, at the time the Settlement was reached, Lead Plaintiffs were able to knowledgably evaluate the Settlement. *See In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at \*5 (N.D. Cal. Apr. 19, 2011) ("[T]he class settlements were reached on the eve of trial when class counsel . . . were thus well aware of the issues and attendant risks involved in going to trial as well as the adequacy of the amount of the class settlement.").

#### 2. Risk of Maintaining Class Action Status Through Trial

Lead Counsel believes the risk of maintaining class action status through trial was minimal, given the imminence of trial at the time the Settlement was reached. Nevertheless, Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits, meaning that the Defendants could have moved to decertify the Class or shorten the Class Period up until the time the jury reached a verdict. *See Rodriguez*, 563 F.3d at 966.

4818-3556-0627.v2

### 3.     Experience and Views of Counsel

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *See Hefler*, 2018 WL 6619983, at *9 ("That counsel advocate in favor of this Settlement weighs in favor of its approval."). Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* www.rgrdlaw.com. Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Lead Counsel actively litigated this case since being appointed by this Court, defeating Defendants' motions to dismiss, obtaining class certification, aggressively pursuing discovery critical to the claims asserted, and defeating Defendants' motion for summary judgment and subsequent appeals. At the time the Settlement was reached, with trial only days away, Lead Counsel and Lead Plaintiffs had a firm understanding of the strengths and weaknesses of the claims, and supplemented their understanding with the assistance of sophisticated experts where appropriate.

In sum, each factor identified under rule 23(e)(2) and by the Ninth Circuit is satisfied. The Settlement is fair, adequate and reasonable, and meets each of the applicable factors such that notice of the Settlement should be sent to the Class.

### V.     THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."). Courts evaluating proposed notice documents have held that "'[n]otice is satisfactory if it "generally describes the terms of the settlement in sufficient

1   detail to alert those with adverse viewpoints to investigate and to come forward and be

2   heard.'"" *Rodriguez*, 563 F.3d at 962.

3         Here, the Settling Parties propose to mail, by first class mail, postage prepaid,

4   individual copies of the Notice, together with a copy of the Proof of Claim, to all potential

5   Class Members who can reasonably be identified and located.   Joaquin Decl., ¶12.   In

6   addition, the Summary Notice will be published in *The Wall Street Journal* and over

7   newswire.[8]  *Id.*, ¶14.  The proposed methods of providing notice satisfy the requirements of

8   Rule 23, the PSLRA, and due process.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173

9   (1974); *MGM*, 708 F. App'x at 896; *Hefler*, 2018 WL 6619983, at *5 (finding notice

10  sufficient where potential class members were mailed notice packets and notice was

11  published in *The Wall Street Journal*, the *Los Angeles Times* and over the *PR Newswire*).

12        The proposed Notice provides detailed information in plain English.  It includes all of

13  the information required by the PSLRA, Federal Rules of Civil Procedure and Due Process.

14  The proposed Notice describes the proposed Settlement and sets forth, among other things:

15  (1) the nature, history and status of the Litigation; (2) the definition of the Class and who is

16  excluded; (3) the reasons the parties have proposed the Settlement; (4) the amount of the

17  Settlement Fund; (5) the estimated average distribution per damaged share; (6) the Class'

18  claims and issues; (7) the parties' disagreement over damages and liability; (8) the maximum

19  amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with

20  final Settlement approval; (9) the maximum amount Lead Plaintiffs will request pursuant to

21  15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class; (10) the plan for

22  allocating the Settlement proceeds to the Class; and (11) the date, time, and place of the Final

23  Approval Hearing.  The content of the proposed Notice and Summary Notice are "reasonably

24  calculated, under all the circumstances, to apprise interested parties of the pendency of the

25  action and afford them an opportunity to present their objections."   *Mullane v. Cent.*

26  *Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

27  _____

28  [8]    The Notice and Summary Notice are annexed as Exhibits A-1 and A-3 to the Stipulation.

4818-3556-0627.v2

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 19% of the Settlement Amount and litigation expenses not to exceed $6 million, to be paid from the Settlement Fund. The Notice also notes the application for an award of no more than $ 100,000 to Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

The notice program proposed in connection with the Settlement and the form and content of the Notice and Summary Notice thus satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA. Accordingly, in granting preliminary approval of the Settlement, the Court should also approve the proposed form and method of giving notice to the Class, and the schedule set forth in Exhibit 1 hereto.

## VI.    CONCLUSION

For each of the foregoing reasons, the Court should enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice, which will: (a) preliminarily approve the Settlement; (b) approve the form and manner of providing notice of this Settlement to the Class; and (c) set a Settlement Hearing date to consider final approval of the Settlement and related matters.

DATED:  February 14, 2020                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP


                                           s/ Daniel S. Drosman
                                          DANIEL S. DROSMAN

4818-3556-0627.v2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel S. Drosman
Luke O. Brooks
Ellen Gusikoff Stewart
Jessica T. Shinnefield
Darryl J. Alvarado
Christopher D. Stewart
Hillary B. Stakem
J. Marco Janoski Gray
Ting H. Liu
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

BONNETT FAIRBOURN FRIEDMAN
  & BALINT, P.C.
Andrew S. Friedman (AZ005425)
Kevin Hanger (AZ027346)
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

Liaison Counsel for Plaintiffs

4818-3556-0627.v2