ROBBINS GELLER RUDMAN & DOWD LLP
Daniel S. Drosman (CA SBN 200643) (Admitted *pro hac vice*)
Luke O. Brooks (CA SBN 212802) (Admitted *pro hac vice*)
Ellen Gusikoff Stewart (CA SBN 144892) (Admitted *pro hac vice*)
Jessica T. Shinnefield (CA SBN 234432) (Admitted *pro hac vice*)
Darryl J. Alvarado (CA SBN 253213) (Admitted *pro hac vice*)
Christopher D. Stewart (CA SBN 270448) (Admitted *pro hac vice*)
Hillary B. Stakem (CA SBN 286152) (Admitted *pro hac vice*)
J. Marco Janoski Gray (CA SBN 306547) (Admitted *pro hac vice*)
Ting H. Liu (CA SBN 307747) (Admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
lukeb@rgrdlaw.com
elleng@rgrdlaw.com
jshinnefield@rgrdlaw.com
dalvarado@rgrdlaw.com
cstewart@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Smilovits, Individually and on Behalf of All Others Similarly Situated, | No. 2:12-cv-00555-DGC |
| Plaintiff, | CLASS ACTION |
| vs. | LEAD PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION |
| First Solar, Inc., Michael J. Ahearn, Robert J. Gillette, Mark R. Widmar, Jens Meyerhoff, James Zhu, Bruce Sohn and David Eaglesham, | |
| Defendants. | |

1

# TABLE OF CONTENTS

2

**Page**

3

I.     INTRODUCTION...............................................................................1

4

II.    PROCEDURAL AND FACTUAL BACKGROUND .............................................3

5

III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
       SETTLEMENTS ...............................................................................5

6

7

     A.    The Proposed Settlement Satisfies the Requirements of Rule
             23(e)(2).........................................................................7

8

          1.    Lead Plaintiffs and Their Counsel Have Adequately
                   Represented the Class ................................................7

9

          2.    The Proposed Settlement Was Negotiated at Arm's-Length
                   After Mediation With an Experienced Mediator ..............8

10

11

          3.    The Proposed Settlement Is Adequate in Light of the Costs,
                   Risk and Delay of Trial and Appeal.............................9

12

          4.    The Proposed Method for Distributing Relief Is Effective.............11

13

          5.    The Proposed Plan of Allocation Treats Class Members
                   Equitably ...........................................................12

14

15

     B.    The Remaining Ninth Circuit Factors Are Satisfied...................................13

16

          1.    Discovery Completed and Stage of the Proceedings ......................13

17

          2.    Counsel View This Good-Faith Settlement as Fair,
                   Reasonable, and Adequate ......................................13

18

          3.    The Reaction of Class Members to the Settlement.........................14

19

          4.    The Settlement Amount ....................................................15

20

IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION................15

21

V.     NOTICE TO THE CLASS SATISFIES DUE PROCESS....................................16

22

VI.    CONCLUSION .................................................................17

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

**CASES**

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ........................................................... 6, 9

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .......................................................... 15

*de Rommerswael on Behalf of Puma Biotechnology,
Inc. v. Auerbach*,
   2018 WL 6003560 (C.D. Cal. Nov. 5, 2018) ...................................... 8

*Dennis v. Kellogg Co.*,
   697 F.3d 858 (9th Cir. 2012) ............................................................ 12

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ......................................................................... 10

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .............................................................. 7

*Gribble v. Cool Transps. Inc.*,
   2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ................................... 14

*Hayes v. Magna Chip Semiconductor Corp.*,
   2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21, 2016) ............... 17

*Herman v. Andrus Transp. Servs., Inc.*,
   2018 WL 6307902 (C.D. Cal. May 30, 2018) ...................................... 6

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)............................... 15, 16

*In re Celera Corp. Sec. Litig.*,
   2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ................................... 11

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales
Practices & Prods. Liab. Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) ........................................ 7

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019)...................................... 13

- ii -

Page

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ........................ 5

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................ 13, 14

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. June 18, 1994) ............ 16

*In re Volkswagen "Clean Diesel" Mktg., Sales
Practices, and Prods. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018),
   *cert. denied*, 139 S. Ct. 2645 (2019) ............... 6

*In re Wells Fargo Collateral Prot. Ins. Litig.*,
   2019 WL 6219875 (C.D. Cal. Nov. 4, 2019) ........... 14

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008) .................... 17

*Juvera v. Salcedo*,
   2013 WL 6628039 (D. Ariz. Dec. 17, 2013) .......... 5

*Kmiec v. Powerwave Techs., Inc.*,
   2016 WL 5938709 (C.D. Cal. July 11, 2016) ......... 13

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..................... 7

*Mineworkers' Pension Scheme et al. v. First Solar Inc., et al.*,
   No. 15-80155 (9th Cir.) ............................ 4

*Morgan v. Childtime Childcare, Inc.*,
   2020 WL 218515 (C.D. Cal. Jan. 6, 2020) ........... 14

*Nachsin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ..................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................... 11, 13

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ...................... 9

- iii -

**Page**

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......................................................... 7, 13, 17

*Schulein v. Petroleum Dev. Corp.*,
2015 WL 12698312 (C.D. Cal. Mar. 16, 2015)........................................ 6, 15

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .................................................................. 12

*Sudunagunta v. NantKwest, Inc.*,
2019 WL 2183451 (C.D. Cal. May 13, 2019) ............................................... 8

*Taylor v. Shippers Transp. Express, Inc.*,
2015 WL 12658458 (C.D. Cal. May 14, 2015) ............................................. 8

*Vinh Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .............................................. 16

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b).......................................................................................................... 3
§78t(a).......................................................................................................... 3
§78u-4(a)(7) .............................................................................................. 17

28 U.S.C.
§1292(b)....................................................................................................... 4

Federal Rules of Civil Procedure
Rule 23 ....................................................................................................... 17
Rule 23(e).................................................................................................. 1, 5
Rule 23(e)(1)(B)........................................................................................... 17
Rule 23(e)(2)........................................................................................... 5, 6, 7
Rule 23(e)(2)(A) ........................................................................................... 8
Rule 23(e)(2)(C)............................................................................................ 9
Rule 23(e)(2)(C)(i)........................................................................................ 9
Rule 23(e)(2)(C)(ii)..................................................................................... 11

Federal Rule of Evidence
Rule 702 ....................................................................................................... 5

Internal Revenue Code
§501(c)(3) .................................................................................................. 12

1

**Page**

2

17 C.F.R.

3
    §240. 10b-5 ................................................................................................................. 3

4 **SECONDARY AUTHORITIES**

5 Janeen McIntosh & Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation:*
6 *2019 Full-Year Review*

7    (NERA Jan. 21, 2020) ................................................................................................ 15

8 Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlements: 2018 Review and Analysis,*
9 (Cornerstone Research 2018)

10    Appendix 3 ................................................................................................................. 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4818-7702-5209.v1

## I.      INTRODUCTION

Pursuant to Federal Rules of Civil Procedure Rule 23(e), Lead Plaintiffs Mineworkers' Pension Scheme and British Coal Staff Superannuation Scheme (the "Schemes" or "Lead Plaintiffs"), on behalf of themselves and the Class, respectfully submit this memorandum in support of their motion for: (1) final approval of the Settlement of this Litigation for $350 million in cash, and (2) approval of the Plan of Allocation.  The terms of the Settlement are set forth in the Stipulation of Settlement dated February 14, 2020 ("Stipulation").[1]  ECF 701.

The Settlement is the fifth largest PSLRA recovery ever obtained in the Ninth Circuit and comes after over seven years of hard-fought litigation, on the literal eve of trial.  As more fully detailed in the accompanying Declaration of Daniel S. Drosman in Support of (1) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Drosman Decl."), during the course of this Litigation, Lead Counsel drafted a detailed complaint which withstood Defendants' motion to dismiss; obtained class certification; conducted extensive fact and expert discovery; defeated Defendants' motion for summary judgment and the appeals thereof; briefed motions *in limine* and *Daubert* motions and prepared for a four-week jury trial.  Drosman Decl., ¶6.  There is no question that as a result of these efforts and arm's-length settlement negotiations that took place over five years, Lead Plaintiffs and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the Class' claims prior to reaching this settlement.

While Lead Counsel believes that the Class' claims are strong and they would prevail at trial, from the outset Defendants adamantly denied liability and asserted they possessed absolute defenses to the Class' claims.  *See* Drosman Decl., ¶¶18, 58, 87-94.  During lengthy settlement negotiations, including multiple in-person mediations with the Hon. Layn R. Phillips (Ret.) and a number of follow-up discussions over five years, Lead Counsel made it

---

[1]   All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

clear that while it was prepared to fairly assess the strengths and weaknesses of this case, it would continue to litigate (and, in fact, did) rather than settle for less than fair value.  Indeed, Lead Plaintiffs and their counsel persisted for nearly six years from the initial mediation until they achieved an amount they believe is in the best interest of the Class.

Lead Counsel is highly experienced in prosecuting securities class actions, and has concluded that the Settlement, which recovers more than one-third of the estimated maximum damages, is an excellent result and in the best interest of the Class based on an analysis of all the relevant factors present here, including, *inter alia*:  (a) the substantial risk, expense, and uncertainty in continuing the Litigation through trial and likely post-trial motion(s), and appeal(s); (b) the relative strengths and weaknesses of the claims and defenses asserted; (c) a complete analysis of the evidence obtained and the legal and factual issues presented; (d) past experience in litigating complex actions similar to this Litigation; and (e) the serious disputes between the parties concerning the merits and damages. Importantly, the Settlement is fully supported by Lead Plaintiffs, who are the type of institutional investor favored to serve as lead plaintiff by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2]

The reaction of the Class thus far also supports the Settlement and Plan of Allocation. Pursuant to the Order Granting Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (ECF 709), over 780,000 copies of the Notice were sent to potential Class Members and nominees, and notice was published over *Business Wire* and in *The Wall Street Journal*.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Distribution of the Net Settlement Fund, dated April 23, 2020 ("Murray Decl."), ¶¶5-12, submitted herewith.  While the June 9, 2020 deadline to object to the fee and expense application has not expired, to date, only one objection has been received, and that submission contained no substantive basis for the objection.[3]

---

[2]    *See* Declaration of Paul McCormick in Support of Settlement ("McCormick Decl."), ¶¶2, 6, submitted herewith.

[3]    Should any further objections be received, Lead Counsel will address them in its reply papers.

- 2 -

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members. The Plan of Allocation governs how claims will be calculated and how settlement proceeds will be distributed among Authorized Claimants. It was prepared in consultation with Lead Plaintiffs' damages expert, and is based on the out-of-pocket measure of damages, *i.e.*, the difference between what Class Members paid for their First Solar, Inc. ("First Solar" or the "Company") common stock during the Class Period and what they would have paid had the alleged misstatements and omissions not been made. It is fair, reasonable, and adequate, and should be approved.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The initial complaint in this action was filed on March 15, 2012. ECF 1. After extensive factual investigation by Lead Counsel, Lead Plaintiffs filed the operative complaint on August 17, 2012, alleging that First Solar and certain of its senior executives violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. ECF 93 at 1. Defendants moved to dismiss the Complaint (ECF 102, 113), which Lead Plaintiffs opposed (ECF 109). The Court denied Defendants' motion in its entirety on December 17, 2012. ECF 114.

Defendants answered the Complaint on January 29, 2013 (ECF 123) and the parties began formal fact discovery (ECF 120), including exhaustive negotiations concerning the method and form of Defendants' productions and the search terms and techniques to be employed in Defendants' responses to Lead Plaintiffs' discovery requests. Lead Counsel briefed several discovery disputes for the Court. Ultimately, Lead Counsel's efforts led to the production and analysis of 515,000 documents from nearly 40 First Solar-affiliated custodians and 30 third parties; sworn interrogatory responses and admissions from Defendants; and 23 fact witness depositions. Lead Counsel also helped Lead Plaintiffs respond to Defendants' discovery, including by preparing them for deposition, assisting them in providing responses to document requests and interrogatories and reviewing documents for privilege and responsiveness before production.

On October 8, 2013, after briefing and argument from the parties, the Court certified a

4818-7702-5209.v1

1   Class of all persons who purchased or otherwise acquired the publicly-traded securities of

2   First Solar between April 30, 2008 and February 28, 2012.  ECF 171.  Lead Counsel,

3   pursuant to the Court's December 3, 2013 order, distributed notice of the Class Action to

4   potential Class members and received 231 timely requests to opt-out of the Litigation.

5       On March 27, 2015, Defendants moved for summary judgment on all of Lead

6   Plaintiffs' claims (ECF 311) and Lead Plaintiffs moved for summary judgment on 18 of

7   Defendants' affirmative defenses.  ECF 309, 310.  After full briefing and argument from the

8   parties, on August 11, 2015, the Court denied Lead Plaintiffs' motion but struck 12 of

9   Defendants' affirmative defenses.  ECF 401.  Defendants' motion for summary judgment

10  was denied in part and granted in part, and the Court certified the issue of the correct test for

11  loss causation for immediate appeal under 28 U.S.C. §1292(b).  *Id.* at 48-49.

12      Defendants appealed the Court's summary judgment decision on August 20, 2015.

13  *See Mineworkers' Pension Scheme et al. v. First Solar Inc.*, *et al.*, ECF 1-1, No. 15-80155

14  (9th Cir.).  On March 14, 2017, after interim briefing before the Ninth Circuit, Lead

15  Plaintiffs filed their answering brief.  No. 15-17282 ("Appeal"), ECF 28.  After full briefing

16  and hearing argument by the parties on October 18, 2017, on January 31, 2018, the Ninth

17  Circuit affirmed the Court's summary judgment order.  Appeal, ECF 60-1.  Defendants

18  petitioned the Ninth Circuit for panel rehearing and rehearing *en banc* on March 16, 2018.

19  Both were denied on May 7, 2018.  Appeal, ECF 65, 70.  The Ninth Circuit's formal

20  mandate was issued on June 26, 2018.  Appeal, ECF 77.

21      Then, on August 6, 2018, Defendants petitioned the U.S. Supreme Court for a writ of

22  certiorari, which Lead Plaintiffs opposed on September 5, 2018.  *First Solar, Inc., et al. v.*

23  *Mineworkers' Pension Scheme and British Coal Staff Superannuation Scheme*, No. 18-164.

24  On October 9, 2018, the Supreme Court issued an order calling for the views of the Solicitor

25  General on the matters raised in Defendants' petition.  The Solicitor General recommended

26  that the Supreme Court deny the petition on May 15, 2019.  On June 24, 2019, the Supreme

27  Court did so.

28      While Defendants' Supreme Court petition was pending, the parties conducted

4818-7702-5209.v1

1   extensive expert discovery on issues including loss causation, damages, market analysis,

2   accounting and solar technology.  In total, the parties produced 16 expert reports from 12

3   experts, took 11 expert depositions, and produced numerous expert-related documents.

4        Following the Supreme Court's decision, the Court set a trial date of January 7, 2020.

5   ECF 463.  The parties' preparation for the four-week trial included briefing on 38 motions *in*

6   *limine* and nine motions to exclude expert testimony under *Daubert* and Federal Rule of

7   Evidence 702, negotiation and submission of a proposed joint pretrial order to the Court, and

8   attending a final pretrial conference.  Lead Counsel also, *inter alia*, meeting with expert

9   witnesses, selecting trial exhibits and preparing witness examinations, preparing trial

10  demonstratives, designating deposition testimony, analyzing juror questionnaires, negotiating

11  jury instructions and crafting Plaintiffs' opening statement.

12       Trial was only two days away when the parties, with the assistance of the Hon. Layn

13  Phillips (Ret.) as mediator, reached a tentative agreement in principle to settle the Litigation

14  for $350,000,000, subject to the Court's approval.  After further negotiation between Lead

15  Counsel and Defendants' Counsel as to particular terms, the parties signed a Stipulation of

16  Settlement on February 13, 2020.  On March 2, 2020, having received briefing and argument

17  from Lead Counsel, the Court granted preliminary approval of the Settlement, provided for

18  notice to be sent to the Class, and set a schedule for further briefing seeking final approval of

19  the settlement and an award of attorneys' fees and costs. ECF 709.

20  **III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
           SETTLEMENTS**

21

22       Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of

23  claims brought as a class action.  The Court may approve a proposed settlement only "after a

24  hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P.

25  23(e)(2).  The Ninth Circuit recognizes a "'strong judicial policy that favors settlements,

26  particularly where complex class action litigation is concerned.'"  *In re Hyundai and Kia*

27  *Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Juvera v. Salcedo*, 2013 WL

28  6628039, at *9 (D. Ariz. Dec. 17, 2013) ("The Ninth Circuit has declared that a strong

- 5 -

judicial policy favors settlement of class actions.").[4]

Rule 23(e)(2) requires the Court to consider whether:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account [among other things,]: the costs, risks, and delay of trial and appeal; and
>
> (D)  the proposal treats class members equitably relative to each other.

In addition, courts in the Ninth Circuit consider the following factors, most of which overlap with Rule 23(e)(2): "'(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; . . . and (8) the reaction of the class members to the proposed settlement.'" *Schulein v. Petroleum Dev. Corp.*, 2015 WL 12698312, at *2 (C.D. Cal. Mar. 16, 2015) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

As the Ninth Circuit recently emphasized:

> Deciding whether a settlement is fair is ultimately "an amalgam of delicate balancing, gross approximations and rough justice," best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings – the whole gestalt of the case. Accordingly, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge."

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2645 (2019).

Because "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements,'" courts should not convert settlement approval into an inquiry into the merits. *Herman v. Andrus Transp. Servs., Inc.*,

---

[4]   All citations are omitted and emphasis added throughout unless otherwise stated.

2018 WL 6307902, at *2 (C.D. Cal. May 30, 2018) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (the Ninth Circuit "has long deferred to the private consensual decision of the parties").

This Court's Preliminary Approval Order considered the Rule 23(e)(2) and Ninth Circuit factors in assessing the Settlement and found that it was fair, reasonable and adequate, subject to further consideration at the Final Approval Hearing. ECF 709, ¶1. The Court's conclusion on preliminary approval is equally true now as little, if anything, has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now").

Lead Plaintiffs respectfully submit that the proposed Settlement satisfies both Rule 23(e)(2) and the relevant Ninth Circuit factors and warrants approval as fair, reasonable and adequate.

### A. The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)

#### 1. Lead Plaintiffs and Their Counsel Have Adequately Represented the Class

As described in the Drosman Declaration, Lead Plaintiffs and Lead Counsel have more than adequately represented the Class by diligently prosecuting this Litigation for over seven years and negotiating an outstanding settlement on the Class' behalf. *See generally* Drosman Decl. Lead Plaintiffs have claims that are typical and coextensive with those of other Class Members, all of which are based on a common course of alleged wrongdoing by Defendants. Lead Plaintiffs have no interests antagonistic to the interests of other members of the Class. To the contrary, Lead Plaintiffs share a common interest with all Class Members in obtaining the largest possible recovery from Defendants. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a sharing of interest" between representatives and absent

- 7 -

class members).  *See also* Class Certification Order at 4 (ECF 171) ("There is no evidence that Plaintiffs or their counsel have a conflict of interest with other class members, and the Court previously concluded that Lead Plaintiffs 'made a *prima facie* showing of adequacy,' including in their choice of counsel.").  Lead Counsel is highly qualified and experienced in securities litigation.  *See* Declaration of Luke O. Brooks Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. G, and actively pursued the claims of First Solar investors in this Court.  Lead Plaintiffs and Lead Counsel stood ready to, and at all times did, advocate for the best interests of the Class, and were 48 hours from jury selection at the time the proposed Settlement was reached.  Thus, Lead Plaintiffs satisfy Rule 23(e)(2)(A).

## 2. The Proposed Settlement Was Negotiated at Arm's-Length After Mediation With an Experienced Mediator

In the Ninth Circuit, a "'strong presumption of fairness'" attaches to a class action settlement reached through arm's-length negotiations between "experienced and well-informed counsel."  *de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018); *Taylor v. Shippers Transp. Express, Inc.*, 2015 WL 12658458, at *10 (C.D. Cal. May 14, 2015) ("'A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.'").

Over the course of the Litigation the parties attended three all-day, in-person mediation sessions with Judge Phillips.  *See* Drosman Decl., ¶¶79-83.  Settlement negotiations were undertaken by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of their respective claims and defenses.  *See Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("'The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery [has] taken place create a presumption that the agreement is fair.'").  The first mediation, in August 2014 was unsuccessful and the parties continued to aggressively litigate the case.  Drosman Decl., ¶80.  The second mediation, on December 5, 2018 was likewise unsuccessful.  *Id.*, ¶81.  A

few weeks before trial was scheduled to begin, the parties met with Judge Phillips for a third time, but did not reach an agreement, and trial preparations continued. *Id.*, ¶82. The parties continued conversations with Judge Phillips, and on January 5, 2020, two days before jury selection, the parties accepted a mediator's proposal to resolve the Litigation for $350 million. *Id.*, ¶83. It is unquestionable that this Settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risk and Delay of Trial and Appeal

Both Rule 23(e)(2)(C) and district courts in the Ninth Circuit consider the substantive adequacy of the proposed Settlement in determining final approval. Rule 23(e)(2)(C)(i) considers "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case; [and] the risk, expense, complexity, and likely duration of further litigation." *Churchill*, 361 F.3d at 575.

While Lead Plaintiffs believe their claims have significant merit and would prevail at trial, they also recognize the numerous risks and uncertainties in proceeding to trial. As discussed below, and in the Drosman Declaration, ¶¶87-94, the risks of trial, including the consideration that key trial witnesses remained employed by First Solar, retained relationships with one or more Defendants, or were Defendants themselves, when weighed against the substantial and certain recovery for the Class, confirm the reasonableness of the Settlement.

### a. The Risks of Proving Falsity and Scienter

Throughout the Litigation, Defendants asserted that nothing they said was materially false or misleading, and they did not possess the requisite scienter. For example, Defendants maintained throughout the Litigation, and would argue at trial, among other things, that: First Solar never corrected, retracted, or restated its publicly-issued statements or financial results; the Department of Justice never indicted First Solar; the SEC never commenced an enforcement action against the Company; PwC never resigned as the Company's auditor or

1   withdrew its unqualified audit opinions; and the Individual Defendants relied in good faith

2   on the estimates and information provided to them from engineers and technologists within

3   the Company, whom they claimed were most knowledgeable about LPM and heat

4   degradation.[5]  Drosman Decl., ¶89.

5          Lead Plaintiffs faced the very real risk that the jury could have accepted Defendants'

6   arguments that they had failed to establish falsity and scienter.

7          **b.      Risks Related to Proving Loss Causation and
                       Damages**

8

9          Lead Plaintiffs also faced risk in proving loss causation and damages.  To establish

10  these elements, Lead Plaintiffs would have to prove that the revelation of fraud-related

11  information proximately caused the declines in First Solar's stock price during the Class

12  Period and that those fraud-related causes could be parsed out from any potential non-fraud

13  related news or publicly released information.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S.

14  336, 345-46 (2005) (plaintiffs bear the burden of providing "that the defendant's

15  misrepresentations 'caused the loss for which the plaintiffs seeks to recover'").  Lead

16  Plaintiffs believe that they would bring forth sufficient evidence to support both the finding

17  of loss causation and damages at trial.  However, Defendants would argue (with the help of

18  their experts) that the First Solar stock price declines alleged in the Complaint were not due

19  (even in part) to the revelation of the alleged fraud.

20         Dr. Allan Kleidon, Defendants' damages and causation expert, was prepared to testify

21  at trial that there was no evidence that any Company-specific disclosures caused First Solar's

22  stock price to decline on the alleged corrective disclosures dates, but rather widespread

23  macroeconomic and industry factors were to blame.  Drosman Decl., ¶88.  Another expert

24  planned to testify for Defendants that various industry-wide and macroeconomic factors

25  ravaged the entire solar industry, and thin-film module manufacturers like First Solar

26  specifically, during the Class Period.  *Id.*

27

28  ---
    [5]   Defendants would also present evidence that First Solar's counsel reviewed Defendants'
    corporate disclosures and stock-sale plans during the Class Period.  *Id.*, ¶90.

4818-7702-5209.v1

Because the determination of loss causation and damages is a complicated process requiring expert testimony (for which five experts total were designated in this case), the jury's loss causation and damage assessments of the expert evidence could vary substantially at trial, reducing this crucial element to a "battle of experts." *See In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to the "battle of the experts" weighed in favor of settlement approval).

### c.    The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation

This action settled on the eve of a four-week trial.  Once the trial was over, the losing party would invariably file post-trial motions and appeals.  Each of these steps is complex and expensive and the case likely would not be resolved until several years down the road. Moreover, many hours of the Court's time and resources have also been spared as a result of the Settlement.  The $350 million Settlement, at this juncture, results in an immediate, substantial and tangible recovery, without the considerable risk, expense and delay of trial and post-trial litigation.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("'[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'").

### 4.    The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiffs and Lead Counsel have taken substantial efforts to insure that the Class is notified about the proposed Settlement. Pursuant to the Preliminary Approval Order, more than 780,300 copies of the Notice and Proof of Claim were mailed to potential Class Members; the Summary Notice was published in *The Wall Street Journal* and over the *Business Wire*; and the case-specific website contains key documents, including the Stipulation, Notice, Proof of Claim and Preliminary Approval Order.  Murray Decl., ¶¶11-12, 14.[6]

The claims process, which is similar to that commonly used in securities class action

---

[6]    The briefs and declarations filed in support of approval of the Settlement, Plan of Allocation and the fee and expense application will be posted on the website once they are filed with the Court.

settlements, is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  (*See* §IV below for a more detailed discussion of the Plan of Allocation.)  The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  Upon the Effective Date and the conclusion of claims administration, the entirety of the Net Settlement Fund will be distributed to Authorized Claimants.

Lead Plaintiffs propose that any *de miminis* residual settlement funds be donated to CII Research and Education Fund ("CII-REF") (www.ciiref.org), a nonpartisan, tax exempt organization under §501(c)(3) of the Internal Revenue Service Code.  CII-REF is an appropriate recipient of any such funds because there is "a driving nexus between the plaintiff class and the *cy pres* beneficiaries."  *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011).  According to its website, CII-REF "focuses on educating the public, investors, corporations, and other financial market participants and policymakers about topical issues, including corporate governance, shareholder rights, investment, capital markets, accounting standards and securities litigation."  As it is both "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members" (*Nachsin*, 663 F.3d at 1039), it is the paradigmatic recipient of any residual funds in this shareholder class action alleging violations of the federal securities laws.  *See also Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990).

### 5. The Proposed Plan of Allocation Treats Class Members Equitably

The Plan of Allocation, discussed in more detail in §IV below, and which is set out in the Notice, details how the settlement proceeds will be distributed among Authorized Claimants.  It provides a formula for calculating the recognized claim of each Class Member, based on each such person's purchases of First Solar common stock during the Class Period and when they sold.  It is fair, reasonable and adequate because it does not treat Lead Plaintiffs

- 12 -

1   or any other Class Member preferentially.  *See In re Extreme Networks, Inc. Sec. Litig.*, 2019

2   WL 3290770, at *8 (N.D. Cal. July 22, 2019) ("Under the Agreement, class members who

3   have submitted timely claims will receive payments on a *pro rata* basis based on the value of

4   their original claim and the number of claims filed.").  Each eligible Class Member, including

5   Lead Plaintiffs, will receive a distribution pursuant to the Plan.  Lead Plaintiffs, just like all

6   other Class Members, will be subject to the same formulas for distribution of the Settlement.

### B.      The Remaining Ninth Circuit Factors Are Satisfied

### 1.      Discovery Completed and Stage of the Proceedings

9          That the parties reached the Settlement on the eve of the trial after over seven years of

10  litigation shows that Lead Plaintiffs and Lead Counsel had sufficient information to evaluate

11  the case and properly assess the value of the Settlement.  *See Kmiec v. Powerwave Techs.,*

12  *Inc.*, 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016) ("[T]he fact that the parties did not

13  settle until after the conclusion of fact discovery indicates that Plaintiffs were well aware of

14  the merits of their case and the difficulties awaiting them at trial.").  Before reaching the

15  Settlement, Lead Plaintiffs deposed more than 20 witnesses, reviewed and analyzed more

16  than 3.7 million pages of documents, exchanged detailed expert reports with Defendants

17  pertaining to liability and damages issues, and litigated countless motions.  Thus, at the time

18  the Settlement was reached, the parties' respective positions were clear and known, as was

19  the evidence they would use to prove their case.  This factor strongly weighs in favor of this

20  Court's approval of the Settlement.

### 2.      Counsel View This Good-Faith Settlement as Fair, Reasonable, and Adequate

22         As the Ninth Circuit observed in *Rodriguez*, "[t]his circuit has long deferred to the

23  private consensual decision of the parties" and their counsel in settling an action.  563 F.3d at

24  965.  Courts have recognized that "'[g]reat weight' is accorded to the recommendation of

25  counsel, who are most closely acquainted with the facts of the underlying litigation."

26  *DIRECTV*, 221 F.R.D. at 528; *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

27  1043 (N.D. Cal. 2008) ("'The recommendations of plaintiffs' counsel should be given a

4818-7702-5209.v1

1    presumption of reasonableness.'").  Indeed, in a case like this which has progressed to trial,

2    "'[g]reat weight is accorded to the recommendation of counsel, who are most closely

3    acquainted with the facts of the underlying litigation.'"  *Gribble v. Cool Transps. Inc.*, 2008

4    WL 5281665, at \*9 (C.D. Cal. Dec. 15, 2008).

5          Lead Counsel has many years of experience in securities and other complex class

6    action litigation and has negotiated scores of substantial class action settlements throughout

7    the country.  *See* www.rgrdlaw.com and Brooks Decl., Ex. G.  Having carefully considered

8    and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims

9    asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense,

10   and the likely appeals and subsequent proceedings necessary if Lead Plaintiffs did prevail at

11   trial, Lead Counsel has concluded that the Settlement is an outstanding result for the Class.

12   Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is

13   reasonable."  *In re Omnivision*, 559 F. Supp. 2d at 1043.  Importantly, Lead Plaintiffs, who

14   were active in the Litigation, authorized counsel to settle it and support the reasonableness of

15   the Settlement.  *See* McCormick Decl., ¶6.

16          **3.      The Reaction of Class Members to the Settlement**

17          The reaction of the Class to the Settlement also supports approving the Settlement.

18   *See In re Wells Fargo Collateral Prot. Ins. Litig.*, 2019 WL 6219875, at \*4 (C.D. Cal.

19   Nov. 4, 2019) ("This small percentage [of opt outs and objections] shows a positive class

20   reaction to the settlement agreement and further supports a finding that the settlement is fair,

21   reasonable, and adequate."); *In re Omnivision*, 559 F. Supp. 2d at 1043 ("'[T]he absence of a

22   large number of objections to a proposed class action settlement raises a strong presumption

23   that the terms of a proposed class settlement action are favorable to the class members.'").

24   780,314 Notice and Proof of Claim forms were mailed to potential Class Members and

25   nominees and the Summary Notice was published in the national edition of *The Wall Street*

26   *Journal* and electronically via *Business Wire.*  Murray Decl., ¶¶11-12.  The deadline to

27   object to any aspect of the Settlement is June 9, 2020.  To date, no substantive objections

28   have been received.  *Id.*; *see also Morgan v. Childtime Childcare, Inc.*, 2020 WL 218515, at

1  *2 (C.D. Cal. Jan. 6, 2020) ("Lack of objection speaks volumes for a positive class reaction

2  to the settlement.").  Lead Plaintiffs will address any objections, if any, in their reply.

### 4.    The Settlement Amount

4  Defendant's payment of $350 million in cash provides an immediate, tangible,

5  significant recovery to the Class and eliminates the risk that the Class could recover less than

6  the Settlement Amount, or nothing at all, following trial.  Importantly, this recovery far

7  exceeds the median securities settlement as a percentage of estimated damages.  Specifically,

8  the Settlement represents approximately 34% of the Class' reasonably recoverable damages

9  supported by a more traditional theory of damages.  *Cf. Schulein*, 2015 WL 12698312, at *5

10  ("As discussed, Plaintiffs' counsel got a sizeable recovery, representing 16% to 20% of the

11  alleged damages, for the class.").  This percentage greatly exceeds the median settlement as a

12  percentage of estimated damages in the Ninth Circuit of 5.1% from 2009 through 2018, and

13  2018's 2% median settlement in cases involving over $1 billion in damages.  *See* Laarni T.

14  Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2018*

15  *Review and Analysis* at 19, Appendix 3 (Cornerstone Research 2018).  And according to

16  NERA, in 2019 the median ratio of settlements to NERA-defined Investor Losses was 2.1%,

17  which further supports that the Settlement here is an outstanding recovery for the Class.  *See*

18  Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation:*

19  *2019 Full-Year Review* at 20 (NERA Jan. 21, 2020).[7]

20  ## IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

21  Lead Plaintiffs also seek approval of the Plan of Allocation.  Assessment of a plan of

22  allocation of settlement proceeds is governed by the same standards of review applicable to

23  the settlement as a whole – the plan must be fair and reasonable.  *See Class Plaintiffs v. City*

24  *of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *In re Amgen Inc. Sec. Litig.*, 2016 WL

25  10571773, at *7 (C.D. Cal. Oct. 25, 2016).  An allocation formula need only have a

---

[7]    NERA is an economic consulting firm that, among other things, applies statistical
analysis to examine trends in securities class action resolutions.  "NERA-defined Investor
Losses is a proprietary variable used as a proxy to measure the aggregate loss to investors
from the purchase of a defendant's stock using publicly available data."  *Id.* at 18.

1   "'reasonable, rational basis, particularly if recommended by experienced and competent

2   counsel.'" *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May

3   6, 2014).   "A plan of allocation that reimburses class members based on the extent of their

4   injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal.

5   June 18, 1994).

6        The Plan of Allocation here provides an equitable basis to allocate the Net Settlement

7   Fund among all Authorized Claimants (Class Members who submit an acceptable Proof of

8   Claim and who have a recognized loss under the Plan of Allocation).   The Plan of Allocation

9   was developed by Lead Counsel with the assistance of Lead Plaintiffs' damages expert and is

10   "grounded in a formula that will compensate class members for the losses related to their"

11   purchases of First Solar common stock.   *Amgen*, 2016 WL 10571773, at *8.   Individual

12   claimants' recoveries will depend upon when during the Class Period they bought First Solar

13   stock, and whether and when they sold their shares.   Authorized Claimants will recover their

14   proportional "pro rata" amount of the Net Settlement Fund based on their recognized loss,

15   calculated under the Plan of Allocation using the transactional information provided by

16   claimants in their claim forms.   As a result, the Plan of Allocation will result in a fair

17   distribution of the available proceeds among Class Members who submit valid claims.   There

18   have been no objections to the Plan of Allocation filed by Class Members.

19   **V.     NOTICE TO THE CLASS SATISFIES DUE PROCESS**

20        Lead Plaintiffs have provided the Class with adequate notice of the Settlement.   The

21   Claims Administrator has disseminated 780,314 copies of the Court-approved Notice to

22   potential Class Members and their nominees who could be identified with reasonable effort,

23   from multiple sources.   *See* Murray Decl., ¶11.   In addition, the Court-approved Summary

24   Notice was published in the national edition of *The Wall Street Journal*, and published

25   electronically over the *Business Wire*.   *Id*., ¶12.   The Claims Administrator also provided all

26   information regarding the Settlement online through the Settlement website.   *Id*., ¶14.   This

27   method of giving notice, previously approved by the Court, is appropriate because it directs

28   notice in a "reasonable manner to all class members who would be bound by the propos[ed

- 16 -

1    judgment]." Fed. R. Civ. P. 23(e)(1)(B).

2         The Notice provides the necessary information for Class Members to make an

3    informed decision regarding the proposed Settlement, as required by the PSLRA.  *See* 15

4    U.S.C. §78u-4(a)(7).  The Notice further explains that the Net Settlement Fund will be

5    distributed to eligible Class Members who submit valid and timely Proof of Claim forms

6    under the Plan as described in the Notice.

7         The Notice is sufficient because it "'generally describes the terms of the settlement in

8    sufficient detail to alert those with adverse viewpoints to investigate and to come forward

9    and be heard.'"  *Rodriguez*, 563 F.3d at 962; *see also In re Wireless Facilities, Inc. Sec.*

10   *Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008).  The notice program here fairly apprises Class

11   Members of their rights with respect to the Settlement, is the best notice practicable under

12   the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule

13   of Civil Procedure 23, the PSLRA, and due process.  *See, e.g.*, *Hayes v. Magna Chip*

14   *Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *15 (N.D. Cal. Nov. 21, 2016).

15   **VI.    CONCLUSION**

16        Based on the foregoing and the entire record, Lead Plaintiffs and Lead Counsel

17   respectfully request that the Court approve the Settlement and the Plan of Allocation.

18   Proposed orders will be submitted to the Court at the time reply briefs are filed.

19   DATED:  April 24, 2020                    Respectfully submitted,

20                                             ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
21                                             Daniel S. Drosman

22                                             Luke O. Brooks
                                               Ellen Gusikoff Stewart
23                                             Jessica T. Shinnefield
                                               Darryl J. Alvarado
24                                             Christopher D. Stewart
                                               Hillary B. Stakem
25                                             J. Marco Janoski Gray
                                               Ting H. Liu
26

27                                                    s/ Luke O. Brooks

28                                                   Luke O. Brooks

4818-7702-5209.v1

1

2              655 West Broadway, Suite 1900
               San Diego, CA  92101
3              Telephone:  619/231-1058
               619/231-7423 (fax)

4              Lead Counsel for Plaintiffs

5              BONNETT FAIRBOURN FRIEDMAN
                 & BALINT, P.C.
6              Andrew S. Friedman (AZ005425)
               Kevin Hanger (AZ027346)
7              2325 E. Camelback Road, Suite 300
               Phoenix, AZ  85016
8              Telephone:  602/274-1100
               602/274-1199 (fax)

9
               Liaison Counsel for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4818-7702-5209.v1

1

## CERTIFICATE OF SERVICE

2   I hereby certify under penalty of perjury that on April 24, 2020, I authorized the

3 electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system

4 which will send notification of such filing to all counsel of record.

5

6                 s/ Luke O. Brooks
                   LUKE O. BROOKS

7                  ROBBINS GELLER RUDMAN

8                    & DOWD LLP
                  655 West Broadway, Suite 1900

9                  San Diego, CA  92101-8498
                  Telephone:  619/231-1058

10                 619/231-7423 (fax)

11                 E-mail:  lukeb@rgrdlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28